**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **ROBERT EARL COUNCIL AKA KINETIK JUSTICE**, *et al.*, | ) ) ) | |
| *Plaintiffs*, | ) ) | |
| **v.** | ) ) | **Case No. 2:23-cv-00712-CLM-JTA** |
| **KAY IVEY**, *et al.*, | ) ) | |
| *Defendants*. | ) | |

## <u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MASONITE CORPORATION'S MOTION TO DISMISS</u>

George R. Parker
BRADLEY ARANT BOULT CUMMINGS LLP
445 Dexter Avenue, Ste. 9075
Montgomery, AL 36104
Phone: (334) 956-7607
gparker@bradley.com

J. Thomas Richie
W. Chadwick Lamar, Jr.
BRADLEY ARANT BOULT CUMMINGS LLP
1819 5th Avenue North
Birmingham, AL 35203-2119
Phone: (205) 521-8348
trichie@bradley.com
clamar@bradley.com

*Counsel for Masonite Corporation*

# Table of Contents

Page

INTRODUCTION ...................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND.............................................4

LEGAL STANDARD...............................................................................................5

ARGUMENT ............................................................................................................6

I.    THE COURT LACKS JURISDICTION TO ENTERTAIN ANY CLAIMS FOR PROSPECTIVE RELIEF .........................................................6

II.   THE COMPLAINT IS A SHOTGUN PLEADING THAT IMPERMISSIBLY LUMPS MULTIPLE DEFENDANTS TOGETHER AS TO THE CRITICAL FACTUAL ISSUES ...............................................8

III.  PLAINTIFFS FAIL TO STATE A CLAIM FOR RELIEF...............................10

    A.    Plaintiffs do not plausibly allege TVPRA liability (Count I). ...............10

        1.    Plaintiffs have not plausibly alleged Masonite's knowledge. ...................11

        2.    Plaintiffs have not plausibly alleged Cole's coercion or causation............13

        3.    The TVPRA does not apply to the labor of Cole, a duly convicted state prisoner ...............................................................15

    B.    Plaintiffs do not plausibly allege RICO liability (Count II) ..................17

    C.    Plaintiffs fail to state a claim for involuntary servitude (Count III). .....................19

        1.    Plaintiffs lack a valid cause of action ........................................19

        2.    Plaintiffs' claim fails on its merits ..........................................20

    D.    Plaintiffs fail to state a claim for failure to prevent wrongs of a KKK Act conspiracy (Count XI)..........................................22

    E.    Plaintiffs fail to state a claim for unjust enrichment (Count XII).........................23

CONCLUSION.........................................................................................................25

CERTIFICATE OF SERVICE .................................................................................26

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................5, 6, 14, 15, 21, 23, 24

*Am. Dental Ass'n v. Cigna Corp.*,
   605 F.3d 1283 (11th Cir. 2010) ....................................................................15, 23

*Am. United Life Ins. Co. v. Martinez.*,
   480 F.3d 1043 (11th Cir. 2007) ..............................................................................18

*A.D. v. Holistic Health Healing Inc.*,
   No. 2:22-cv-641-JES-NPM, 2023 WL 3004546 (M.D. Fla. Apr. 19, 2023)....................12

*Barrientos v. CoreCivic, Inc.*,
   951 F.3d 1269 (11th Cir. 2020) ....................................................................16, 17

*Barrientos v. CoreCivic, Inc.*,
   No. 4:18-cv-70 (CDL), 2023 WL 2666852 (M.D. Ga. Mar. 28, 2023)....................15

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................5, 6, 19

*BFP v. Resolution Tr. Corp.*,
   511 U.S. 531 (1994)........................................................................................16, 17

*Bistline v. Parker*,
   918 F.3d 849 (10th Cir. 2019) ..............................................................2, 11, 16

*Brandon v. Lotter*,
   157 F.3d 537 (8th Cir. 1998) ..................................................................................23

*Brooks v. Kiser*,
   No. 1:21-cv-541-ECM-SMD, 2022 WL 2155037 (M.D. Ala. May 13, 2022)....................21

*Burrell v. Staff*,
   60 F.4th 25 (3d Cir. 2023) ..........................................................................13, 18, 22

*Byrdsong v. A&E Television Networks*,
   No. 4:21-cv-607-CLM, 2022 WL 1749251 (N.D. Ala. May 31, 2022) ............24, 25

*B.M. v. Wyndham Hotels & Resorts, Inc.*,
   No. 20-cv-00656-BLF, 2020 WL 4368214 (N.D. Cal. July 30, 2020)....................12

*Calderwood v. United States*,
   623 F. Supp. 3d 1260 (N.D. Ala. 2022) ............................................................1, 7

*California v. Texas*,
   593 U.S. 659 (2021) ..............................................................................................8

*Cisneros v. Petland, Inc.*,
   972 F.3d 1204 (11th Cir. 2020) ....................................................................18, 19

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ..............................................................................................7

*Clark v. Clabaugh*,
   20 F.3d 1290 (3d Cir. 1994) ...............................................................................23

*Clifford v. Federman*,
   855 F. App'x 525 (11th Cir. 2021) .............................................................1, 2, 9

*Cramer v. Florida*,
   117 F.3d 1258 (11th Cir. 1997) ............................................................................8

*Crowder v. Delta Air Lines, Inc.*,
   963 F.3d 1197 (11th Cir. 2020) ............................................................................6

*Davis v. FEC*,
   554 U.S. 724 (2008) ..............................................................................................6

*Daves v. Dallas Cnty.*,
   22 F.4th 522 (5th Cir. 2022 (*en banc*) ................................................................7

*Doe #1 v. Red Roof Inns, Inc.*,
   21 F.4th 714 (11th Cir. 2021) ........................................................2, 9, 11, 12, 14

*Frank v. Gaos*,
   139 S. Ct. 1041 (2019) ......................................................................................1, 6

*Friends of the Earth, Inc. v. Laidlaw Ent'l Servs. (TOC), Inc.*,
   528 U.S. 167 (2000) ...........................................................................................6, 7

*Fuller v. Ga. State Bd. of Pardons & Paroles*,
   851 F.2d 1307 (11th Cir. 1988) ..........................................................................14

*Gendron v. Connelly*,
   No. 22-13865, 2023 WL 3376577 (11th Cir. May 11, 2023) ...............................8

*Jacobson v. Fla. Sec'y of State*,
   974 F.3d 1236 (11th Cir. 2020) ....................................................................1, 6, 7

*Johnson v. United States*,
    576 U.S. 591 (2015)..................................................................................13

*Joseph v. Bernstein*,
    612 F. App'x 551 (11th Cir. 2015) .........................................................8, 9

*Kansas v. Garcia*,
    140 S. Ct. 791 (2020)...............................................................................17

*Kornegay v. Beretta USA Corp.*,
    614 F. Supp. 3d 1029 (N.D. Ala. 2022)...................................................24

*Lawrence v. Dunbar*,
    919 F.2d 1525 (11th Cir. 1990) .................................................................5

*Lewis v. Casey*,
    518 U.S. 343 (1996)............................................................................3, 17

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)...............................................................................5, 6

*Loper v. Lifeguard Ambulance Serv.*,
    No. 2:19-cv-583-CLM, 2021 WL 4458873 (N.D. Ala. 2021).........................20, 24

*Magluta v. Samples*,
    256 F.3d 1282 (11th Cir. 2001) .........................................................2, 8, 9

*Maryland Shall Issue, Inc. v. Hogan*,
    971 F.3d 199 (4th Cir. 2020) ..............................................................14, 15

*Matador Holdings, Inc. v. HoPo Realty Inv., LLC*,
    77 So. 3d 139 (Ala. 2011)........................................................................24

*Mathis v. City of Lakewood*,
    No. 22-12426, 2023 WL 2568814 (11th Cir. Mar. 20, 2023)....................9

*May v. Sasser*,
    666 F. App'x 796 (11th Cir. 2016) ...........................................................9

*Menocal v. GEO Grp., Inc.*,
    882 F.3d 905 (10th Cir. 2018) ............................................................11, 15

*Mojsilovic v. State of Okla. ex rel. Bd. of Regents for Univ. of Okla.*,
    841 F.3d 1129 (10th Cir. 2016) ...........................................................2, 16

*Nunag-Tanedo v. E. Baton Rouge Parish Sch. Bd.*,
    No. SACV 10-1172-AG (MLGx), 2011 WL 13153190 (C.D. Cal. May 12,
    2011) ......................................................................................................2, 16

*Owino v. CoreCivic, Inc.*,
    60 F.4th 437 (9th Cir. 2022) ..............................................................15

*O'Shea v. Littleton*,
    414 U.S. 488 (1974)..............................................................................7

*Park v. City of Atlanta*,
    120 F.3d 1157, 1162 (11th Cir. 1997) .............................................3, 23

*Rapanos v. United States*,
    547 U.S. 715, 738 (2006)..................................................................2, 17

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993).............................................................................19

*Shinn v. Ramirez*,
    596 U.S. 366 (2022).........................................................................2, 17

*Skelly Oil Co. v. Phillips Petroleum Co.*,
    339 U.S. 667 (1950)..............................................................................8

*Smith v. City of Oak Hill*,
    587 F. App'x 524 (11th Cir. 2014) .....................................................22

*S.J. v. Choice Hotels Int'l, Inc.*,
    473 F. Supp. 3d 147 (E.D.N.Y. 2020) ...........................................12, 13

*Thole v. U.S. Bank, N.A.*,
    140 S. Ct. 1615 (2020).........................................................................6

*Turner v. Ivey*,
    --- So. 3d ----, 2023 WL 4672503 (Ala. July 21, 2023)....................22

*Tyler v. Hennepin Cnty.*,
    598 U.S. 631, 636 (2023)......................................................................4

*United States v. Godwin*,
    765 F.3d 1306 (11th Cir. 2014) ..........................................................19

*United States v. Hansen*,
    599 U.S. 762 (2023)............................................................................17

*United States v. Kalu*,
    791 F.3d 1194 (10th Cir. 2015) .................................................2, 11, 15

*United States v. Kozminski*,
    487 U.S. 931 (1988)........................................................................3, 21

*United States v. Reynolds*,
    235 U.S. 133 (1914) .................................................................................22

*United States v. Shackney*,
    333 F.2d 475 (2d Cir. 1964) ....................................................................22

*United States v. Starrett*,
    55 F.3d 1525 (11th Cir. 1995) .................................................................19

*Vibe Micro, Inc. v. Shabanets*,
    878 F.3d 1291 (11th Cir. 2018) ..................................................................8

*Villarreal v. Woodham*,
    113 F.3d 202 (11th Cir. 1997) .................................................................17

*Voisine v. United States*,
    579 U.S. 686 (2016) .................................................................................21

*Weiland v. Palm Beach Cnty. Sheriff's Dep't*,
    792 F.3d 1313 (11th Cir. 2015) ..................................................................8

*West Virginia v. EPA*,
    597 U.S. 697 (2022) .................................................................................17

*Williams v. Town of Morris*,
    No. 2:18-cv-01307-AKK, 2019 WL 2058716 (N.D. Ala. May 9, 2019) ...............20

**Constitutional Provisions and Statutes**

1 U.S.C. § 1 .......................................................................................................16

18 U.S.C. § 1589 ................................................................................10, 11, 14, 18

18 U.S.C. § 1591 ................................................................................................10

18 U.S.C. § 1595 ..........................................................................................10, 11

18 U.S.C. § 1961 ................................................................................................18

18 U.S.C. § 1962 ..........................................................................................18, 19

18 U.S.C. § 1964 ................................................................................................18

22 U.S.C. § 7101 ................................................................................................10

42 U.S.C. § 1985 ..........................................................................................22, 23

42 U.S.C. § 1986 .................................................................................................3, 22, 23

Ala. Code § 15-22-26 ............................................................................................14, 22

Ala. Const. of 1901 .....................................................................................................20

Ala. Const. of 2022, Art. I, § 32 ...............................................................................3, 20

U.S. Const., art. III, § 2 .................................................................................................5

**Other Authorities**

A. SCALIA & B. GARNER, READING LAW (2012) ....................................................20, 21

JAMES MADISON, THE FEDERALIST NO. 39 (C. ROSSITER ED. 1961) .............................17

William D. Bales, *et al., An Assessment of the Effectiveness of Prison Work*
    *Release Programs on Post-Release Recidivism and Employment*,
    U.S. Dep't of Just. (Dec. 1, 2015) ..........................................................................13

Masonite Corporation submits this memorandum in support of its motion to dismiss Plaintiffs' complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## INTRODUCTION

This action asserts sweeping challenges to the constitutional and statutory adequacy of Alabama's parole system and work-release program. Plaintiffs' claims against Masonite are limited to its alleged participation at the final step: the private work-release program. Plaintiffs allege that Masonite benefited from the receipt of unlawfully coerced labor of Plaintiff Jerame Aprentice Cole, the only named Plaintiff who ever worked for Masonite. (Doc. 1 ¶ 148). Because the allegations do not support any claims against Masonite, the Court should dismiss the complaint.

Plaintiffs assert five claims against Masonite: violation of the Trafficking Victims Protection Reauthorization Act (TVPRA) (Count I); violation of the Racketeer Influenced and Corrupt Organizations Act (RICO) (Count II); violation of Alabama's Constitution (Count III); failure to prevent wrongs of a KKK Act conspiracy (Count XI); and unjust enrichment (Count XII). The claims fail for various jurisdictional, procedural, and substantive reasons.

*First*, Plaintiffs lack standing to pursue any prospective relief—*i.e.*, an injunction or prospective declaratory relief. When Plaintiffs filed their complaint, no named Plaintiff was working for Masonite or had plans to do so. *Calderwood v. United States*, 623 F. Supp. 3d 1260, 1274–77 (N.D. Ala. 2022) (Maze, J.). Nor does any organizational Plaintiff allege any threat of prospective injury. *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1249–50 (11th Cir. 2020). And the potential standing of unnamed class-members is irrelevant: "federal courts lack jurisdiction if no named plaintiff has standing." *Frank v. Gaos*, 139 S. Ct. 1041, 1046 (2019).

*Second*, the complaint is a shotgun pleading that impermissibly "lumps together" the employer defendants without explaining how each is liable. *Clifford v. Federman*, 855 F. App'x

525, 528 (11th Cir. 2021). Plaintiffs gloss over that these far-flung employers cannot have: (1) engaged in secretive-yet-coordinated action alongside Alabama's highest officials; and (2) participated in the work-release program and benefited from the coercion of labor of different prisoners with *no* individualization. *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001).

      ***Third***, Plaintiffs have not plausibly alleged liability for any of their substantive claims.

      **TVPRA.** Plaintiffs have not plausibly alleged that Masonite had "constructive or actual knowledge" that Cole's labor was unlawfully coerced. *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 719 (11th Cir. 2021). Nor have they plausibly alleged that Cole was unlawfully coerced to work for Masonite. *Id.* (requiring a violation of "*as to the plaintiff*"); *United States v. Kalu*, 791 F.3d 1194, 1212 (10th Cir. 2015) (victim "would have declined to perform" labor absent coercion). Most fundamentally, Plaintiffs cannot show that the TVPRA reaches—and *criminalizes*—the administration of work-release programs for duly convicted prisoners in state custody: the alleged primary offenders are immune state officials[1]; the TVPRA as a matter of text does not apply to states or public agencies[2]; and Congress's enactment of the TVPRA—a human trafficking statute—does not override states' sovereign authority to administer their state prison systems.[3]

---

[1] *See Bistline v. Parker*, 918 F.3d 849, 871 (10th Cir. 2019) ("a claim against a primary offender . . . is a necessary element for venture liability"); *Mojsilovic v. State of Okla. ex rel. Bd. of Regents for Univ. of Okla.*, 841 F.3d 1129, 1134 (10th Cir. 2016) (sovereign immunity from TVPRA suit).

[2] *See Nunag-Tanedo v. E. Baton Rouge Parish Sch. Bd.*, No. SACV 10-1172-AG (MLGx), 2011 WL 13153190, at *11–12 (C.D. Cal. May 12, 2011) (TVPRA does not "extend to governmental entities").

[3] *See Shinn v. Ramirez*, 596 U.S. 366, 376 (2022) (Thomas, J.) ("The power to convict and punish criminals lies at the heart of the States' 'residuary and inviolable sovereignty.'"); *Rapanos v. United States*, 547 U.S. 715, 738 (2006) (plurality op.) ("We ordinarily expect a 'clear and manifest' statement from Congress to authorize an unprecedented intrusion into traditional state authority.").

Holding otherwise would be "gross overreaching by a federal district court" that "simply cannot be tolerated in our federal system": "Principles of federalism and separation of powers dictate that *exclusive responsibility for administering state prisons* resides with the State and its officials." *Lewis v. Casey*, 518 U.S. 343, 364 (1996) (Thomas, J., concurring) (emphasis added).

**RICO.** Plaintiffs' derivative RICO claim fails with their predicate TVPRA claim. It also fails because Plaintiffs have not plausibly alleged that Masonite was part of an association-in-fact enterprise or that Masonite sufficiently participated in that enterprise.

**Alabama Constitution of 2022, Art. I, § 32.** Plaintiffs cannot bring a state constitutional claim because no claim exists for monetary relief, they lack standing for prospective relief, and declaratory relief is improper to adjudicate past conduct. Even if they could, their claim fails because they have not shown that Cole—a duly convicted prisoner with no right to early release— was the victim of "compulsion of services." *United States v. Kozminski*, 487 U.S. 931, 948 (1988).

**Failure to prevent wrongs of KKK Act conspiracy.** Plaintiffs' claim that Masonite failed to prevent wrongful acts of a KKK Act conspiracy, 42 U.S.C. § 1986, should also be dismissed. Plaintiffs have not plausibly alleged a predicate conspiracy, that Masonite had actual knowledge of it, or that Masonite could have aided in preventing any such wrongful acts. *See Park v. City of Atlanta*, 120 F.3d 1157, 1162 (11th Cir. 1997).

**Unjust enrichment.** Plaintiffs' unjust enrichment claim should be dismissed because Plaintiffs have not plausibly alleged that Cole worked for Masonite with a reasonable expectation of being compensated more than he was, in fact, paid.

## FACTUAL AND PROCEDURAL BACKGROUND[4]

Plaintiffs are ten current or former prisoners in the custody of the Alabama Department of Corrections (ADOC) and three organizations. (Doc. 1 ¶ 1). They allege broad injuries arising from the allegedly discriminatory administration of the parole system and forced participation in Alabama's work-release program. (*Id.* ¶¶ 1, 6).

They sued several state officials who in varying degrees administer the parole system. (*Id.* ¶¶ 160–64). They also sued an array of entities—including a public agency, municipalities, and private entities—that participated in the work-release program, (*id.* ¶¶ 165–83), which Plaintiffs collectively label "employer Defendants," (*id.* ¶ 142). Each entity entered a contract with ADOC to participate in the program, (*id.* ¶¶ 3, 11, 135), which Plaintiffs correctly acknowledge required compliance with "all requirements of the Fair Labor Standards Act," (*id.* ¶ 23).

Masonite manufactures doors for residential and commercial buildings at its facility in Haleyville, Alabama. (*Id.* ¶ 178). According to Plaintiffs, Masonite has participated in the work-release program for a few years, (*id.* ¶ 135), and has employed more than 100 incarcerated individuals, (*id.* ¶ 178). Plaintiffs' details about Masonite's participation largely end there. They do not describe any interaction between Masonite and the State Defendants or facts about its hiring, compensation, working conditions, or benefits, other than a single remark about a wage deduction for safety glasses. (*Id.* ¶ 148; *see id.* ¶ 4 (listing the State Defendants)). Everything else in the complaint comes in the form of lumped-together assertions about undifferentiated groups of defendants, including every allegation about knowledge—the lynchpin of Plaintiffs' claims.

---

[4] For purposes of this motion only, Masonite is constrained by the legal fiction that the well-pleaded facts alleged in Plaintiffs' complaint are to be taken as true. *Tyler v. Hennepin Cnty.*, 598 U.S. 631, 636 (2023).

Jerame Aprentice Cole is the only named Plaintiff who ever worked for Masonite. (*Id.* ¶ 148). Plaintiffs allege that "Cole has worked multiple jobs through the work-release program" (at least five) and that one was "at Masonite, building doors." (*Id.*). Cole was not working for Masonite when the complaint was filed nor did he have future plans to work for Masonite. (*See id.*). The *only* alleged detail about Cole's employment with Masonite is that "Masonite deducted $225 from his wages for 'safety glasses' required for use to perform his job." (*Id.*). Plaintiffs do not describe Cole's motivation to seek employment with Masonite; his hiring process; the nature or terms of his employment; its duration; working conditions; compensation; the reason he stopped working for Masonite; or how he was allegedly coerced into working for Masonite. (*Id.*). Although Plaintiffs do offer a vague allegation that, at some unspecified time, "Cole was advised directly by an ADOC warden that if he were to withhold labor, he would be 'put behind the wall,'" (*id.*), they do not tie that allegation to Masonite or Cole's time working at Masonite in any way.

## LEGAL STANDARD

***Rule 12(b)(1).*** Article III limits the federal judicial power to "Cases" and "Controversies." U.S. Const. art. III, § 2. "[A]n essential and unchanging part of the case-or-controversy requirement of Article III" is that the plaintiff must have standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). For a facial jurisdictional challenge, the Court accepts the plaintiff's well-pleaded allegations as true. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).

***Rule 12(b)(6).*** "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S.

at 556). The Court accepts a plaintiff's well-pleaded allegations as true and makes reasonable inferences in his favor. *Crowder v. Delta Air Lines, Inc.*, 963 F.3d 1197, 1202 (11th Cir. 2020). But those "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and the Court must disregard both "conclusory statements" and "[t]hreadbare recitals of the elements of a cause of action," *Iqbal*, 556 U.S. at 678.

## ARGUMENT

The Court should dismiss Plaintiffs' claims against Masonite. No named Plaintiff has Article III standing to seek any prospective relief against Masonite. The complaint is an impermissible shotgun pleading. And Plaintiffs otherwise fail to state a claim against Masonite.

## I.    The Court lacks jurisdiction to entertain any claims for prospective relief.

Without establishing standing, Plaintiffs cannot open the door to federal court. *Lujan*, 504 U.S. 555, 560 (1992). The plaintiff must establish standing "for each claim he seeks to press and for each form of relief that is sought," *Davis v. FEC*, 554 U.S. 724, 734 (2008) (quotations omitted). To establish standing, the plaintiff must plausibly allege "(1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Thole v. U.S. Bank, N.A.*, 140 S. Ct. 1615, 1618 (2020).

Four other contours of standing are distinctly relevant here. *First*, Plaintiffs must have had standing as of the day the suit was filed. *Friends of the Earth, Inc. v. Laidlaw Ent'l Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). *Second*, injury to an unnamed class member will not suffice; rather, at least one named Plaintiff must have standing. *Frank*, 139 S. Ct. at 1046. *Third*, standing must be established for each form of relief. *Davis*, 554 U.S. at 734. For prospective relief, they must show "that their threatened injuries are 'certainly impending.'" *Jacobson*, 974 F.3d at 1245 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013)). And *fourth*, standing must be

6

established as to each defendant. *Daves v. Dallas Cnty.*, 22 F.4th 522, 542 (5th Cir. 2022) (*en banc*). With this backdrop, this Court should conclude that it lacks jurisdiction to consider any prospective claims against Masonite: Plaintiffs have not plausibly alleged any prospective injury that is traceable to Masonite and redressable by a favorable judgment. *See Calderwood*, 623 F. Supp. 3d at 1274–75 (Maze, J.) (dismissing claims for prospective relief).

Plaintiffs seek prospective declaratory and injunctive relief against Masonite. (Doc. 1 at 124 ¶¶ 1, 2(c)). But, by the time of filing, no Plaintiff was working for Masonite or had any plans to begin. Thus, Plaintiffs cannot show that any of them has a "certainly impending" threat of future injury. *Jacobson*, 974 F.3d at 1245. Plaintiffs allege that Cole had worked for Masonite in the past, (Doc. 1 ¶ 148), but a past wrong is insufficient absent "continuing, present adverse effects" which Plaintiffs do not allege. *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). The Court cannot entertain any prospective claims because "there is no non-speculative risk that [Cole] will bear these harms again in the imminent future." *Calderwood*, 623 F. Supp. 3d at 1279 (Maze, J.).

No organizational Plaintiff has prospective standing, either. An organization has associational standing if it shows that its members would have standing. *Jacobson*, 974 F.3d at 1249 (quoting *Friends of the Earth*, 528 U.S. at 181). But none of the organizations alleges that it has any members who have worked or will work for Masonite. (Doc. 1 ¶¶ 155–57). Nor does any organizational Plaintiff allege a certainly impending prospective injury to the organization itself. *Jacobson*, 974 F.3d at 1249. For example, a diversion of resources can represent an injury if it impairs the organization's activities and is incurred to counteract the defendant's allegedly unlawful conduct. *Id.* at 1249–50. But, again, there is no allegation that any organizational Plaintiff has spent money or will spend money to counteract any allegedly unlawful conduct by Masonite.

Lastly, that Plaintiffs bring suit under the Declaratory Judgment Act does not support prospective standing. (Doc. 1 ¶ 185). The Act does not extend the Article III jurisdiction of federal courts and, thus, declaratory relief cannot be issued unless prospective standing already exists. *California v. Texas*, 593 U.S. 659, 672 (2021); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–73 (1950). But no Plaintiff has standing to seek prospective relief against Masonite, and the Court should dismiss any claims for prospective relief.

## II.    The complaint is a shotgun pleading that impermissibly lumps multiple defendants together as to the critical factual issues.

The complaint is a shotgun pleading that violates "the minimum standard of Rule 8." *Joseph v. Bernstein*, 612 F. App'x 551, 555 (11th Cir. 2015). The Court should heed the Eleventh Circuit's repeated directions to dismiss the complaint or, at minimum, order Plaintiffs to provide a more definite statement. *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018); *Weiland v. Palm Beach Cnty. Sheriff's Dep't*, 792 F.3d 1313, 1321 n.10 (11th Cir. 2015).

The Eleventh Circuit has "repeatedly condemned shotgun pleadings." *Gendron v. Connelly*, No. 22-13865, 2023 WL 3376577, at *1 (11th Cir. May 11, 2023). Such pleadings "exact an intolerable toll on the trial court's docket, lead to unnecessary and unchanneled discovery, and impose unwarranted expense on the litigants, the court and the court's parajudicial personnel and resources." *Cramer v. Florida*, 117 F.3d 1258, 1263 (11th Cir. 1997).

A complaint is a shotgun pleading if it "indiscriminately lumps together multiple defendants" and fails to explain how each is responsible. *Clifford v. Federman*, 855 F. App'x 525, 528 (11th Cir. 2021). The Eleventh Circuit has often affirmed dismissals of such complaints. *See Magluta*, 256 F.3d at 1284 (affirming dismissal of complaint "replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the fourteen defendants charged, though geographic and temporal realities make plain that all of the defendants could not

have participated in every act"); *Mathis v. City of Lakewood*, No. 22-12426, 2023 WL 2568814, at *4 (11th Cir. Mar. 20, 2023); *Joseph*, 612 F. App'x at 555. That is exactly what Plaintiffs do.

Plaintiffs indiscriminately lump together 13 distinct, so-called "employer Defendants" without any effort to explain how each is liable. (Doc. 1 ¶¶ 159, 210, 278, 279, 282). But that lumping glosses over the true breadth of Plaintiffs' conspiracy-themed allegations. Taken at face value, Plaintiffs allege that a Wendy's in Montgomery, a KFC in Pell City, and a building products manufacturer in Haleyville, among others, had exactly the same knowledge and engaged in a coordinated plot to deprive Alabama prisoners of their rights without an inkling of individualization, despite the obvious geographic, temporal, economic, and logical problems with their theory. *Magluta*, 256 F.3d at 1284. The self-evident factual differences regarding participation in the work-release program make such a scheme implausible to the point of impossibility: each employer defendant necessarily interacted separately with state officials and employed different prisoners, in different locations, at different times, in different industries, in different markets, and with different business objectives.

Yet Plaintiffs gloss over these practical impossibilities with nothing more than a defined term, an adverb, and a verb. (Doc. 1 ¶ 210). Plaintiffs' TVPRA claims, for example, require showing a violation as to *each* Plaintiff, but they do not even try to allege facts specific to each prisoner's allegedly coerced labor or each defendant's knowledge and receipt of it. *Red Roof Inns., Inc.*, 21 F.4th at 726. They instead offer only indiscriminate allegations directed at the "Defendants" or "employer Defendants" *writ large*. That will not do. "The plaintiff is the master of the complaint." *May v. Sasser*, 666 F. App'x 796, 798 (11th Cir. 2016). Plaintiffs' choice to sue numerous defendants does not absolve them of their duty to specify how each is responsible. *Clifford*, 855 F. App'x at 528. The Court should dismiss Plaintiffs' shotgun pleading.

**III.    Plaintiffs fail to state a claim for relief.**

Plaintiffs assert five claims against Masonite. None survives motion-to-dismiss scrutiny.

**A.    Plaintiffs do not plausibly allege TVPRA liability (Count I).**

Plaintiffs bring a TVPRA "beneficiary" claim based on Masonite's alleged benefiting from the alleged unlawful coercion of Cole's labor. *See* 18 U.S.C. §§ 1589, 1595. But Plaintiffs have not plausibly alleged that Masonite had constructive or actual knowledge that Cole's labor was unlawfully coerced. Nor have they plausibly alleged that Cole was unlawfully coerced to work for Masonite at all. And the TVPRA does not reach the labor of Cole, a duly convicted state prisoner.

Enacted in 2000 and reauthorized in 2008, the TVPRA was enacted "to combat trafficking in persons." 22 U.S.C. § 7101(a). To target those practices, Congress enacted criminal provisions for perpetrators of forced labor, sex trafficking, and human trafficking for labor. *See, e.g.*, 18 U.S.C. §§ 1589–91. One of them—the forced-labor provision—provides criminal liability for:

> Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means—
>
> (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
>
> (2) by means of serious harm or threats of serious harm to that person or another person;
>
> (3) by means of the abuse or threatened abuse of law or legal process; or
>
> (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.

18 U.S.C. § 1589(a). That provision also criminalizes "knowingly benefit[ing] . . . from participation in a venture" that provides or obtains labor by the proscribed means. *Id.* § 1589(b).

Congress also provided "victim[s]" of any TVPRA "violation" with a civil cause of action:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that

person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

*Id.* § 1595(a). As the text makes clear, a civil TVPRA claim under § 1595 must be based on a predicate violation of one of the TVPRA's criminal provisions. *Id.* And it permits a claim against: (1) the "primary offender" of the predicate violation, *Bistline*, 918 F.3d at 871; or (2) a knowing "beneficiary" of that violation, *Red Roof Inns, Inc.*, 21 F.4th at 723.

Plaintiffs bring a "beneficiary" claim against Masonite under § 1595 based on its alleged benefiting from coercion prohibited by § 1589. They allege that the State Defendants, **not** Masonite, unlawfully coerced labor of prisoners, (Doc. 1 ¶¶ 206–09), and that the "Employer Defendants knowingly benefitted, financially and otherwise, from participation in ADOC's work-release and work-center programs, knowing or in reckless disregard of the fact that their lucrative joint venture with ADOC has engaged in the providing or obtaining of labor or services from Plaintiffs and the Forced Labor Class," (*id.* ¶ 210). That claim fails as a matter of law.

A § 1589 beneficiary claim has four essential elements: Plaintiffs must plausibly allege that Masonite (1) knowingly benefited (2) from participation in a common undertaking involving risk and potential profit (3) that violated the TVPRA as to the plaintiff, and (4) that Masonite had constructive or actual knowledge of the violation as to the plaintiff. *Red Roof Inns, Inc.*, 21 F.4th at 726. The TVPRA also contains a causation element. *See Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 918 (10th Cir. 2018) ("to show a § 1589 violation, plaintiffs must prove that an unlawful means of coercion caused them to render labor"); *Kalu*, 791 F.3d at 1212. As explained below, Plaintiffs have failed to state a TVPRA claim against Masonite.

### 1. Plaintiffs have not plausibly alleged Masonite's knowledge.

The critical starting point is that Plaintiffs bear the burden to plausibly allege a TVPRA claim specific to Cole: that an "undertaking . . . violated the TVPRA **as to the plaintiff**" and that

11

Masonite "had constructive or actual knowledge that" Cole's labor was unlawfully coerced. *Red Roof Inns., Inc.*, 21 F.4th at 726 (emphasis added). In *Red Roof Inns, Inc.*, the court repeatedly reiterated the need for plaintiff-specific coercion, *id.* at 726 ("as to the plaintiff"); *id.* at 723 ("as to the Does"), and this focus on specific plaintiffs is consistent with how other courts analyze the TVPRA. *See B.M. v. Wyndham Hotels & Resorts, Inc.*, 20-cv-00656-BLF, 2020 WL 4368214, at *6 (N.D. Cal. July 30, 2020) ("Plaintiff must allege facts showing these Defendants knew or should have known of *her* trafficking – and she fails to do so in her Complaint." (emphasis added)).

Plaintiffs have not plausibly alleged that Masonite "had constructive or actual knowledge" that Cole's labor was coerced. *Red Roof Inns., Inc.*, 21 F.4th at 726; *see also A.D. v. Holistic Health Healing Inc.*, No. 2:22-cv-641-JES-NPM, 2023 WL 3004546, at *4 (M.D. Fla. Apr. 19, 2023) (requiring plaintiff-specific knowledge). Their conclusory allegation about knowledge holds no weight, and they do not allege facts to support this element.

Instead of identifying Masonite's knowledge in short and plain statements, Plaintiffs offer only an assortment of allegations about "media coverage" and "public knowledge"—relating to violence, labor strikes, parole disparities, and poor conditions inside Alabama's prison systems—that cannot establish that Masonite had constructive or actual knowledge that Cole's labor was coerced. (Doc. 1 ¶¶ 140–42). These allegations suggest nothing about the coercion of labor—much less *Cole*'s labor. Indeed, "general knowledge" about Alabama's prison conditions and parole system "is insufficient to demonstrate" that Masonite "should have known about" Cole's allegedly coerced labor. *J.M.*, 2022 WL 10626493, at *5; *see also S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020) (holding that "abstract awareness," "knowledge[,] or willful blindness of a general sex trafficking problem in low-budget lodgings does not satisfy the *mens rea* requirements of the TVPRA"). Permitting a TVPRA claim based on these allegations would

criminalize accepting a prisoner–applicant when there is general public knowledge about possibly poor prison conditions, and it would require an incorrect holding that general knowledge about prison conditions necessarily implies awareness of unlawfully coerced labor. But such a broad application of the TVPRA raises serious due process concerns about vagueness as applied. *See, e.g.*, *Johnson v. United States*, 576 U.S. 591, 595 (2015). And it undoubtedly would dissuade potential employers from participating in work-release programs, thus foreclosing the demonstrable benefits that work-release programs provide: key sources of educational and vocational training, diminished recidivism, increased post-release employment opportunities, and higher likelihood of successful transition back into society.[5]

Nor does anything else Plaintiffs allege support a finding of constructive or actual knowledge. Although Masonite entered a contract with ADOC, (Doc. 1 ¶ 135), there is nothing suspect about that contract as alleged nor anything in it that is atypical, suspect, or plausibly could give rise to knowledge of coerced labor—much less knowledge specific to Cole. This case also lacks allegations—like "extremely poor working conditions" and "nearly free labor"—that suggest that nobody would provide labor under those conditions absent coercion. *Burrell v. Staff*, 60 F.4th 25, 38, 40 (3d Cir. 2023). Plaintiffs' TVPRA claim should be dismissed for lack of any plausible allegation that Masonite knew, or should have known, that Cole was unlawfully coerced.

### 2.    Plaintiffs have not plausibly alleged Cole's coercion or causation.

Plaintiffs' TVPRA claim also fails because they have not plausibly alleged that Cole's labor for Masonite was unlawfully coerced. *Red Roof Inns., Inc.*, 21 F.4th at 726. The complaint contains only "recitation[s] of the elements" of their claim, (Doc. 1 ¶¶ 148, 203–11), which should

---

[5] *See* William D. Bales, *et al.*, *An Assessment of the Effectiveness of Prison Work Release Programs on Post-Release Recidivism and Employment*, U.S. Dep't of Just. (Dec. 1, 2015) (assessing Florida work-release programs).

be ignored under *Iqbal*, 556 U.S. at 678. Plaintiffs make no effort to explain how Cole's labor *for Masonite* was the product of prohibited coercion. (*See* Doc. 1 ¶ 148). The only Masonite-specific allegations are that, among "multiple" other jobs, Cole "has worked . . . at Masonite," where he allegedly "buil[t] doors," and that Masonite deducted $225 from his wages for glasses. (*Id.*). None of that remotely suggests that the State Defendants unlawfully coerced him to work for Masonite.

Plaintiffs abstractly assert that Alabama prisoners, apparently including Cole, were "discriminatorily den[ied] parole" for the purpose of compelling their labor. (*Id.* ¶¶ 142, 207). But they allege no non-conclusory factual content explaining how **Cole** himself was a victim of parole discrimination—much less that any parole discrimination caused him to work for Masonite. Plaintiffs' generalized statistical allegations about parole disparities do not suffice. *Fuller v. Ga. State Bd. of Pardons & Paroles*, 851 F.2d 1307, 1310 (11th Cir. 1988) (requiring "exceptionally clear proof" when relying on statistics). And Plaintiffs do not plausibly allege that Cole was denied parole for some reason other than legitimate decisional factors; nor that similarly situated prisoners were treated differently. *See id.*; Ala. Code § 15-22-26 (parole factors). Plaintiffs thus fail to show that Cole was denied parole "in any manner or for any purpose for which the law was not designed" and for the purpose of "exert[ing] pressure" on Cole to work *for Masonite*. 18 U.S.C. § 1589(c)(1).

Plaintiffs' other allegations similarly fall short. They allege that Cole was once threatened by a warden, (Doc. 1 ¶ 148), but that statement has no plausible connection to his employment for Masonite. They do not even allege *when* this threat occurred. *Maryland Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 213 (4th Cir. 2020) (explaining that "[t]emporal correlation" is relevant to plausibility). Plaintiffs also allege poor conditions inside ADOC facilities, (Doc. 1 ¶¶ 43–76, 140–

42), but they have not plausibly explained how such conditions were intended to, and did in fact, coerce Cole into working for Masonite. Plaintiffs thus fail to plausibly allege any coercion.[6]

Nor can Plaintiffs satisfy the TVPRA's causation requirement. *See Menocal*, 882 F.3d at 918 ("plaintiffs must prove that an unlawful means of coercion caused them to render labor"); *Kalu*, 791 F.3d at 1212 ("would have declined to" perform labor absent coercion); *see also Owino v. CoreCivic, Inc.*, 60 F.4th 437, 446 (9th Cir. 2022) (discussing "[t]he statute's causal element"); *Barrientos v. CoreCivic, Inc.*, No. 4:18-cv-70 (CDL), 2023 WL 2666852, *3–4 (M.D. Ga. Mar. 28, 2023) (same). Plaintiffs make no effort to allege facts demonstrating that, absent unlawful coercion, Cole would have declined to work for Masonite. Thus, neither the complaint nor any reasonable inference supports the conclusion that Cole was coerced to work for Masonite.

### 3. The TVPRA does not apply to the labor of Cole, a duly convicted state prisoner.

Aside from Plaintiffs' manifest pleading defects, three other flaws in Plaintiffs' TVPRA theory separately and collectively compel dismissal: all of the alleged primary offenders are immune state officials; the TVPRA as a matter of textual interpretation does not apply to states or public agencies; and the TVPRA—an anti-trafficking statute—does not express a clear congressional intent to override states' sovereign authority to administer their state prison systems.

**a.** "[A] claim against a primary offender," *i.e.*, the State Defendants, "is a necessary element for venture liability." *Bistline*, 918 F.3d at 871. But those defendants are immune,

---

[6] This Court can "infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682). Cole's years of working "multiple" jobs supports the reasonable, obvious alternative inference that he *wanted* to work for Masonite. At a minimum, Cole's multiple jobs negate any inference that Plaintiffs would invite the Court to draw about Masonite having specific knowledge that Cole was coerced into working for Masonite.

Plaintiffs' claims are non-justiciable, or at a minimum Plaintiffs failed to plausibly allege their liability. *See Mojsilovic*, 841 F.3d at 1134 (holding sovereign immunity barred TVPRA suit). So, Plaintiffs have not stated "a claim against a primary offender," *Bistline*, 918 F.3d at 871, cannot show any TVPRA violation as to Cole, and thus cannot state a claim against Masonite.

     **b.**    There also cannot be a primary violation as to Cole because the TVPRA, as a matter of textual interpretation, does not apply to states or public agencies. *Nunag-Tanedo*, 2011 WL 13153190, at \*11–12 (holding that the TVPRA does not "extend to governmental entities"). In *Nunag*, a federal court evaluating a claim against a local school board, and relying on the Dictionary Act, 1 U.S.C. § 1, held that "neither the term 'perpetrator' nor the term 'whoever' extend to governmental entities under the TVP[R]A." *Id.* at \*12. The Eleventh Circuit held that "private, for-profit contractors operating federal immigration detention facilities" are within the scope of the TVPRA—largely because of "Congress's express inclusion of corporations and companies in the general definition of 'whoever'" in the Dictionary Act. *Barrientos v. CoreCivic, Inc.*, 951 F.3d 1269, 1280 (11th Cir. 2020). But the opposite result arises for states and public agencies—which fall outside the scope of the TVPRA as a matter of law.

     **c.**    Lastly, and most fundamentally, the TVPRA does not reach administration of a work-release program for duly convicted prisoners in state custody because Congress did not manifest a clear intent to disrupt states' sovereign authority over prison administration—including work-release programs. "[O]ur federal system demands deference to long established traditions of state regulation," *BFP v. Resolution Tr. Corp.*, 511 U.S. 531, 546 (1994), and for that reason courts "expect a 'clear and manifest' statement from Congress to authorize an unprecedented intrusion into traditional state authority," *Rapanos*, 547 U.S. at 738 (plurality op.) (quoting *BFP*, 511 U.S. at 544). This operates similarly to administrative analysis of major questions. *See, e.g., West*

*Virginia v. EPA*, 597 U.S. 697, 724 (2022) (looking for "clear congressional authorization"). There is no indication that, in enacting the TVPRA to address human trafficking, Congress *clearly* intended to disrupt the "exclusive responsibility for administering state prisons" that "resides with the State and its officials." *Lewis*, 518 U.S. at 364 (Thomas, J., concurring).

The Supreme Court has repeatedly reiterated that "criminal law enforcement has been primarily a responsibility of the States," *Shinn*, 596 U.S. at 376 (quoting *Kansas v. Garcia*, 140 S. Ct. 791, 806 (2020)), and that "[t]he power to convict and punish criminals lies at the heart of the States' 'residuary and inviolable sovereignty,'" *id.* (quoting THE FEDERALIST NO. 39, P. 245 (C. ROSSITER ED. 1961) (J. MADISON)); *see also id.* (explaining that federal habeas review "overrides the States' core power to enforce criminal law"). Similarly, it is well-settled that "inmates can be required to perform labor while in detention." *Barrientos*, 951 F.3d at 1277 (citing *Villarreal v. Woodham*, 113 F.3d 202, 207 (11th Cir. 1997)). Thus, unlike federal habeas, it cannot be said that Congress enacted the TVPRA with a "clear and manifest" intent to intrude states' sovereign authority over prison administration—including work-release programs—which forecloses application of the TVPRA as to Cole. *See Rapanos*, 547 U.S. at 738. And, separately, because Plaintiffs' unprecedented and atextual application of the TVPRA raises serious concerns about horizontal federalism and state sovereignty, the canon of constitutional avoidance counsels against their reading. *See United States v. Hansen*, 599 U.S. 762, 781 (2023). The TVPRA, as a result, does not reach the facts of this case as a matter of law.

**B.     Plaintiffs do not plausibly allege RICO liability (Count II).**

Plaintiffs next assert a civil RICO claim against Masonite. (Doc 1 ¶¶ 212–20). The RICO Act prohibits any "person employed by or associated with any enterprise" from "conduct[ing] or participat[ing], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c); *see also id.* § 1964(c) (private cause of action). The

Act defines "racketeering activity" to include "any act which is indictable under," among many others, the TVPRA's forced-labor provision, 18 U.S.C. § 1589. *See* 18 U.S.C. § 1961(1)(B). Plaintiffs' claim suffers from several pleading defects, and it should be dismissed.

First, the racketeering activity on which Plaintiffs base their claim is violation of the TVPRA. (Doc. 1 ¶ 218). Plaintiffs' RICO claim fails because their TVPRA claim fails. *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1068 (11th Cir. 2007); *Burrell*, 60 F.4th at 41 (affirming dismissal of RICO claim for defendants whose "predicate TVP[R]A claims against them fail").

Second, Plaintiffs have not plausibly alleged that Masonite was "associated with any enterprise." 18 U.S.C. § 1962(c). (Doc. 1 ¶ 215 (alleging a conclusory "association-in-fact enterprise")). To do so, Plaintiffs must show that Masonite "share[d] three structural features" with "a group of persons": (1) purpose; (2) relationship; and (3) longevity. *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211–12 (11th Cir. 2020). As to purpose, "[a]n abstract common purpose, such as a generally shared interest in making money, will not suffice." *Id.* "Rather, where the participants' ultimate purpose is to make money for themselves, a RICO plaintiff must plausibly allege that the participants shared the purpose of enriching themselves through a *particular criminal course of conduct*." *Id*. (emphasis added).

Plaintiffs fail to do so. The complaint cannot support the inference that Masonite participated in the work-release program for any "purpose sufficient to find a RICO enterprise." *Id*. Instead, it contains only conclusory allegations about Masonite's receipt of labor, (Doc. 1 ¶¶ 178, 216), and vague references to public knowledge about poor prison conditions, (*id.* ¶¶ 140–42). None of those allegations plausibly suggest that Masonite knowingly sought to profit from a criminal exploitation of labor. *See Twombly*, 550 U.S. at 557 (explaining that allegations "merely consistent with" liability are insufficient). As in *Cisneros*, Plaintiffs have not alleged facts

supporting an inference that Masonite shared with other defendants a proscribed purpose, "as opposed to the 'obvious alternative explanation,' that [it] w[as] simply trying to make money" (*i.e.*, to conduct its normal business operations) while also helping to foster the many benefits that work-release programs provide to prisoners, individually, and the community at large. 972 F.3d at 1212 (quoting *Twombly*, 550 U.S. at 567).

Third, Plaintiffs have not plausibly alleged that Masonite "conduct[ed]" or "participat[ed]" in the enterprise, even assuming one existed. 18 U.S.C. § 1962(c). To impose RICO liability under § 1962(c), the defendant "must participate in the *operation* or *management* of the enterprise." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (emphasis added). Although this test can include "even lower-rung participants" who "implement[] or mak[e] decisions related to its affairs," *United States v. Godwin*, 765 F.3d 1306, 1320 (11th Cir. 2014), the complaint does not plausibly support such an inference. At most, Plaintiffs plausibly allege that Masonite passively received the economic value of Mr. Cole's employment—that stops dispositively short of a plausible inference that Masonite was implementing an unlawful "direction of upper management." *See id.* (quoting *United States v. Starrett*, 55 F.3d 1525, 1542 (11th Cir. 1995)). Masonite is therefore a "complete 'outsider[]'" whom RICO cannot reach. *Reves*, 507 U.S. at 185.

### C.    Plaintiffs fail to state a claim for involuntary servitude (Count III).

Plaintiffs' third claim against Masonite asserts a violation of Alabama's bar on involuntary servitude, as set forth in Article I, § 32, of the Alabama Constitution of 2022: "That no form of slavery shall exist in this state; and there shall not be any involuntary servitude." It should be dismissed because: (1) there is no valid cause of action; and (2) the claim fails on its merits.

### 1.    Plaintiffs lack a valid cause of action.

Plaintiffs' involuntary servitude claim lacks a valid cause of action for damages, prospective relief, or declaratory relief.

**Damages.** Alabama law does not recognize a private cause of action for damages based on a state constitutional violation. *See Williams v. Town of Morris*, No. 2:18-cv-01307-AKK, 2019 WL 2058716, at *4 (N.D. Ala. May 9, 2019) ("Alabama law does not recognize 'a private cause of action for monetary damages based on the provisions of the Constitution of Alabama of 1901.'"). Likewise, nothing in Alabama's new Constitution expresses or implies any intent to provide for a private cause of action for monetary damages. *See* A. SCALIA & B. GARNER, READING LAW 313 (2012) ("A statute's mere prohibition of a certain act does not imply creation of a private right of action for its violation. The creation of such a right must be either express or clearly implied from the text of the statute.").

**Prospective Relief.** As already explained, no named Plaintiff has standing to pursue prospective injunctive or declaratory relief against Masonite. (*See supra* at 6–8.)

**Declaratory Relief.** Plaintiffs cannot pursue any retrospective declaratory relief. As this Court has held, it is "inappropriate" to request declaratory relief "solely to adjudicate past conduct." *Loper v. Lifeguard Ambulance Serv.*, No. 2:19-cv-583-CLM, 2021 WL 4458873, at *18 (N.D. Ala. 2021) (Maze, J.) (listing "several reasons *not* to issue a declaratory judgment").

### 2. Plaintiffs' claim fails on its merits.

Plaintiffs' claim also fails on its merits because they have not plausibly alleged that Cole was compelled to work for Masonite—much less compelled *by* Masonite.

Although Masonite is unaware of caselaw interpreting "involuntary servitude" within Alabama's state Constitutions, its ratifiers understood that term against its use in the federal Constitution and the backdrop of the Supreme Court's federal interpretations. *See Voisine v. United States*, 579 U.S. 686, 697–99 (2016) (discussing legislative backdrops); READING LAW 322. Those understandings lead to two conclusions: (1) "involuntary servitude" in the Alabama Constitution of 1901 has the same meaning as the federal Constitution, and (2) the Alabama Constitution of

2022's use of the term definitively incorporates the authoritative constructions of the Supreme Court of the United States—and that forecloses Plaintiffs' claim. The Supreme Court has held that "involuntary servitude" includes only "the compulsion of services by the use or threatened use of physical or legal coercion." *Kozminski*, 487 U.S. at 948. And, because "[c]ompulsion is a prerequisite to proof of involuntary servitude," it does not exist "[w]hen the employee has a choice, even though it is a painful one." *Brooks v. Kiser*, No. 1:21-cv-541-ECM-SMD, 2022 WL 2155037, at *4 (M.D. Ala. May 13, 2022); *Kozminski*, 487 U.S. at 943 ("[I]n every case in which this Court has found a condition of involuntary servitude, the victim had no available choice but to work or be subject to legal sanction."). Plaintiffs have not plausibly alleged such compulsion.

Looking beyond Plaintiffs' legal conclusions, *Iqbal*, 556 U.S. at 678, Plaintiffs offer nothing that would support a finding that he was unlawfully compelled to work *at all*—much less for Masonite. Plaintiffs allege that an incarcerated individual will suffer "continued confinement" or "extended incarceration" if they do not work, *i.e.*, the denial of parole. (Doc. 1 ¶¶ 148, 223). But the lawful denial of parole for a convicted prisoner cannot constitute compulsion: "using an otherwise legal process for a purpose for which it was not created or intended to be used is not, on its own, sufficient to constitute the threat of legal sanction." *Burrell*, 60 F.4th at 36. Prisoners have no right to early release, Ala. Code § 15-22-26(c), so their continued confinement is unquestionably a legal process that does not constitute involuntary servitude. *Turner v. Ivey*, --- So. 3d ----, 2023 WL 4672503, at *7 (Ala. July 21, 2023) ("[O]ur caselaw makes clear that an inmate has no liberty interest in parole.").[7] Confinement is not a product of their failure to provide

---

[7] Cases recognizing that arrest and confinement can serve as a basis for an involuntary servitude claim are distinguishable because, here, Cole was *already* serving a lawfully imposed sentence and had no liberty interest in parole; he was not arrested or confined for refusing to provide labor to Masonite. *See United States v. Shackney*, 333 F.2d 475, 486 (2d Cir. 1964) (Learned Hand, J.) ("threats to cause immediate legal confinement"); *United States v. Reynolds*, 235 U.S. 133, 146

work; rather, it is the product of their sentence. And even if Cole were subject to involuntary servitude, Plaintiffs do not plausibly allege that this deprivation was caused *by Masonite*. *See, e.g.*, *Smith v. City of Oak Hill*, 587 F. App'x 524, 527 (11th Cir. 2014) (discussing § 1983's causation).

**D.    Plaintiffs fail to state a claim for failure to prevent wrongs of a KKK Act conspiracy (Count XI).**

Plaintiffs assert a derivative claim against Masonite under 42 U.S.C. § 1986, based on its alleged failure to prevent the State Defendants from committing wrongful acts barred by § 1985. They contend that, because all of the defendants "had knowledge of the wrongs" that the State Defendants conspired to commit and had "power to prevent or aid in preventing" those wrongs, but "neglected . . . to prevent" them, *all* are liable under § 1986. (*Id.* ¶¶ 276–280). The Court should dismiss the claim because: (1) Plaintiffs' have not plausibly alleged a predicate conspiracy[8]; and (2) Plaintiffs have not otherwise plausibly alleged facts to state a claim against Masonite.

To survive dismissal, Plaintiffs must plausibly allege that Masonite: (1) had *actual* knowledge of a § 1985 conspiracy, including the wrongs conspired to be done; (2) had the power to prevent or aid in preventing those wrongs; and (3) neglected or failed to do so. *See* 42 U.S.C. § 1986; *Park*, 120 F.3d at 1162. Constructive knowledge of the conspiracy is insufficient; actual knowledge is required. *Brandon v. Lotter*, 157 F.3d 537, 539 (8th Cir. 1998); *Clark v. Clabaugh*, 20 F.3d 1290, 1295 (3d Cir. 1994); *Park*, 120 F.3d at 1162 ("If the Appellees knew . . . .").

Plaintiffs do not plausibly allege that Masonite had actual knowledge of a § 1985 conspiracy among the State Defendants. At most, Plaintiffs assert that Masonite participated in the

---

(1914) ("[c]ompulsion of . . . service by the constant fear of imprisonment under the criminal laws").

[8] Although Masonite is not claiming that it is immune, Masonite adopts the arguments of the State Defendants as to Plaintiffs' KKK Act Conspiracy claims (Counts IX, X, XI). (*See* Doc. 148 at 119–26).

work-release program despite news coverage relating to violence, labor strikes, parole disparities, and poor conditions inside of Alabama prisons. (Doc. 1 ¶¶ 140–42, 178). Those allegations do not support an inference that Masonite knew about the State Defendants' alleged agreement, plan, and intent to commit "racially discriminatory denials of parole" so as to maintain a "captive and coerced work force." (*Id.* ¶¶ 277–78). That conclusion would require ignoring the "obvious alternative explanation" that Masonite participated in the program for valid economic and ethical reasons, which "suggest lawful conduct." *Am. Dental Ass'n*, 605 F.3d at 1290. Plaintiffs' claim is implausible because the inference it asks this Court to draw—*i.e.*, Masonite's actual knowledge of a predicate conspiracy—is not "reasonable." *Iqbal*, 556 U.S. at 678.

Plaintiffs also do not plausibly allege that Masonite singularly had "power to prevent or aid in preventing the commission of" such wrongful acts. 42 U.S.C. § 1986. They allege that the defendants could have "withdraw[n]" from the program and thus "reduce[d]" the State Defendants' "incentive to deny parole." (Doc. 1 ¶ 278). But they do not explain how Masonite's withdrawal would plausibly aid in the termination of the massive conspiracy they allege. *See Iqbal*, 556 U.S. at 678 (requiring "more than a sheer possibility"). After all, Masonite is but one of 675 employers that have participated in the program, and nothing Plaintiffs allege suggests that its withdrawal would matter to the program as a whole, any other employer, or any Alabama official. (Doc. 1 ¶ 3). Nor is there a plausible allegation that Masonite's withdrawal would have prevented the commission of any wrongful act: according to Plaintiffs, if Masonite withdrew, Alabama prisoners would merely have been returned to the conditions Plaintiffs allege to exist inside Alabama's prisons, (*id.* ¶ 51), or sent to a different work-release employer, (*id.* ¶ 17).

### E.    Plaintiffs fail to state a claim for unjust enrichment (Count XII).

Plaintiffs' final claim against Masonite is for unjust enrichment, based on Cole's employment. The elements of unjust enrichment include: "(1) the defendant knowingly accepted

and retained a benefit, (2) provided by another, (3) who has a reasonable expectation of compensation." *Matador Holdings, Inc. v. HoPo Realty Inv., LLC*, 77 So. 3d 139, 145 (Ala. 2011) (quotation omitted).[9] Plaintiffs have not met their burden to plausibly allege facts satisfying these elements.

Plaintiffs' three-paragraph claim contains nothing but conclusory allegations, which cannot survive motion-to-dismiss scrutiny. *See Iqbal*, 556 U.S. at 678. If the theory is that the State Defendants somehow took more of Cole's pay than he wished or expected, then his dispute lies exclusively with the State Defendants. Masonite holds nothing that in equity and good conscience belongs to him. *See Loper*, 2021 WL 4458873, at *10 (Maze, J.) (dismissing request for disgorgement). If, on the other hand, Cole believes that he should have been compensated by Masonite more than he was paid, he has not alleged any basis for that belief. *See Byrdsong v. A&E Television Networks*, No. 4:21-cv-607-CLM, 2022 WL 1749251, at *2 (N.D. Ala. May 31, 2022) (Maze, J.) (dismissing unjust enrichment claim for lack of "facts to show that [the plaintiffs] had a reasonable expectation of payment for appearing on the show"). Plaintiffs do not explain how much Cole was paid, how much he expected to be paid, or any other factual details of his employment relationship with Masonite. Those pleading failures warrant dismissal of Plaintiffs' unjust enrichment claim against Masonite.

---

[9] In addition, an unjust enrichment plaintiff must show that the retention of the benefit was unjust, which occurs only if: (1) the donor "acted under a mistake of fact or in misreliance on a right or duty," or (2) unconscionable conduct by the recipient, "such as fraud, coercion, or abuse of a confidential relationship." *Kornegay v. Beretta USA Corp.*, 614 F. Supp. 3d 1029, 1036–37 (N.D. Ala. 2022). Plaintiffs make no attempt to allege facts to satisfy this requirement.

**CONCLUSION**

For the foregoing reasons, the Court should dismiss Plaintiffs' claims against Masonite.

Dated: March 29, 2024                              Respectfully submitted,

                                                   */s/ George R. Parker*
                                                   George R. Parker
                                                   BRADLEY ARANT BOULT CUMMINGS LLP
                                                   445 Dexter Avenue, Ste. 9075
                                                   Montgomery, AL 36104
                                                   Phone: (334) 956-7607
                                                   gparker@bradley.com

                                                   J. Thomas Richie
                                                   W. Chadwick Lamar, Jr.
                                                   BRADLEY ARANT BOULT CUMMINGS LLP
                                                   1819 5th Avenue North
                                                   Birmingham, AL 35203-2119
                                                   Phone: (205) 521-8348
                                                   trichie@bradley.com
                                                   clamar@bradley.com

**CERTIFICATE OF SERVICE**

I hereby certify that on March 29, 2024, the foregoing was served, via the Court's CM/ECF Document Filing System, upon all registered CM/ECF users in this action.

*/s/ George R. Parker*
OF COUNSEL