# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **ROBERT EARL COUNCIL, et al,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **CASE NO: 2:23-cv-712** |
| | ) | |
| **KAY IVEY, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MOTION TO DISMISS OF THE CITY OF MONTGOMERY

## **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................4

II.   WITH THE EXCEPTION OF PTOMEY'S DAMAGES CLAIMS, ALL OTHER NAMED PLAINTIFFS' CLAIMS ARE DUE TO BE DISMISSED FOR LACK OF STANDING. ..............................................4

    A.    INDIVIDUAL NAMED PLAINTIFFS' DAMAGES CLAIMS ..........4

    B.    THE INDIVIDUAL NAMED PLAINTIFFS' INJUNCTIVE RELIEF CLAIMS ARE ALL DUE TO BE DISMISSED ...................................5

III.  PLAINTIFFS HAVE NOT STATED A CLAIM FOR RELIEF AGAINST MONTGOMERY PURSUANT TO THE TVPA, 18 U.S.C. § 1859(b)..........6

    A.    THE ELEMENTS OF THE TVPA .......................................................6

    B.    THE *TWOMBLY/IQBAL* STANDARD .................................................8

IV.   PLAINTIFFS HAVE NOT STATED A RICO CLAIM AGAINST MONTGOMERY ........................................................................15

    A.    THE ALLEGED RICO CLAIM AGAINST MONTGOMERY .........15

    B.    THIS COUNT, HAVING ITS BASIS IN THE TVPA CLAIM, IS DUE TO BE DISMISSED ON THE *TWOMBLY/IQBAL* GROUNDS SET OUT ABOVE. ..............................................................................15

    C.    PLAINTIFFS' CLAIM IS LIKEWISE DUE TO BE DISMISSED BECAUSE MUNICIPALITIES ARE NOT SUBJECT TO LIABILITY FOR RICO CLAIMS. ......................................................................15

V.    THE PLAINTIFFS HAVE NOT STATED A CLAIM AGAINST MONTGOMERY PURSUANT TO ALABAMA CONSTITUTION, ART. 1 § 32 ...............................................................................................17

    A.    THE ONLY INDIVIDUAL NAMED PLAINTIFF WHO WORKED FOR MONTGOMERY HAS NO CLAIM.........................................17

B.     NO PLAINTIFF HAS STATED AN ALABAMA CONSTITUTIONAL CLAIM FOR INVOLUNTARY SERVITUDE. ...................................19

VI.    PLAINTIFFS HAVE NOT STATED A 42 U.S.C. § 1986 CLAIM AGAINST MONTGOMERY ............................................................................20

A.     THE STATUTE OF LIMITATIONS BARS PTOMEY'S CLAIM ....20

B.     PLAINTIFFS HAVE NOT SUFFICIENTLY ALLEGED THAT MONTGOMERY HAD THE REQUISITE KNOWLEDGE .............21

C.     PLAINTIFFS HAVE NOT AND CANNOT ALLEGE SUFFICIENT FACTS TO SHOW MONTGOMERY CAUSED THEIR INJURY OR COULD HAVE PREVENTED IT ......................................................23

VII.    PLAINTIFFS HAVE NOT STATED AN UNJUST ENRICHMENT CLAIM AGAINST MONTGOMERY ........................................................................24

A.     THE CLAIM ...................................................................................24

B.     PLAINTIFFS' UNJUST-ENRICHMENT CLAIM DOES NOT SATISFY THE *TWOMBLY/IQBAL* PLEADING STANDARD.........24

C.     PTOMEY'S CLAIMS ARE ALSO TIME-BARRED IF THE TWO-YEAR STATUTE OF LIMITATIONS APPLIES TO HIS CLAIM, AND IT SHOULD ............................................................................26

D.     THE PLAINTIFFS' STATE-LAW DAMAGES CLAIM IS BARRED AGAINST MONTGOMERY ...........................................................27

VIII.   ALL CLAIMS FOR PUNITIVE DAMAGES ARE DUE TO BE DISMISSED ....................................................................................................................28

IX.    INCORPORATION OF ARGUMENTS BY REFERENCE.........................28

CONCLUSION ....................................................................................................29

CERTIFICATE OF SERVICE ...........................................................................30

COMES NOW the City of Montgomery ("Montgomery") and moves to dismiss the claims pled against it for failure to state a claim pursuant to Rule 12(b)(6), Fed. R. Civ. P.

## I.    INTRODUCTION

The counts against Montgomery are the following: Count I, violation of the Trafficking Victims Protection Act (18 U.S.C. § 1589(b)); Count II, violation of the Racketeer Influenced and Corruption Act (18 U.S.C. § 1962); Count III, violation of Alabama Constitution, Art. 1, § 32 (provision prohibiting involuntary servitude); Count XI, violation of 42 U.S.C. § 1986, KKK Conspiracy Act (failure to prevent wrongs provision); and Count XII, unjust enrichment.  All claims are brought on behalf of various named individual Plaintiffs and the three organizational Plaintiffs, except Count XII (unjust enrichment), which names only the individual Plaintiffs. All counts pled against Montgomery are due to be dismissed for failure to state a claim.

## II.    WITH THE EXCEPTION OF PTOMEY'S DAMAGES CLAIMS, ALL OTHER NAMED PLAINTIFFS' CLAIMS ARE DUE TO BE DISMISSED FOR LACK OF STANDING.

### A.    INDIVIDUAL NAMED PLAINTIFFS' DAMAGES CLAIMS

Under settled precedent, the "irreducible constitutional minimum" of standing consists of three elements: the plaintiff must have suffered an injury in fact, the defendant must have caused that injury, and a favorable decision must be likely to redress it. *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 119 L.Ed.2d 351 (1992). The party invoking the jurisdiction of a federal court bears the

> burden of establishing these elements to the extent required at each stage of the litigation. *Id.* at 561, 112 S.Ct. 2130. Thus, at the motion-to-dismiss stage, [Plaintiffs] bore the burden of alleging facts that plausibly establish their standing. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–84, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009); *Salcedo v. Hanna*, 936 F.3d 1162, 1168 (11th Cir. 2019).

*Trichell v. Midland Credit Mgmt., Inc.*, 964 F. 3d 990, 996–97 (11th Cir. 2020). There is no allegation that any Plaintiff, other than Ptomey, ever worked for Montgomery. Thus, the other named Plaintiffs lack standing to bring any damages claim under any theory because they cannot show that Montgomery caused their injury.

### B.    THE INDIVIDUAL NAMED PLAINTIFFS' INJUNCTIVE RELIEF CLAIMS ARE ALL DUE TO BE DISMISSED.

Each individual named Plaintiff, including Ptomey, lacks standing to seek injunctive relief. To establish standing to seek injunctive relief, each would have to allege "a real and immediate … threat of future injury" as a result of employment with Montgomery. "Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury." *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F. 3d 1248, 1271 (11th Cir. 2015); *see also City of Los Angeles v. Lyons,* 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) ("[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if

unaccompanied by any continuing, present adverse effects." (second alteration in original) (quotation omitted)).

There is no allegation that any named Plaintiff will be assigned to work for Montgomery in the future. As a result, their injunctive relief claims against Montgomery are due to be dismissed.

## III.    PLAINTIFFS HAVE NOT STATED A CLAIM FOR RELIEF AGAINST MONTGOMERY PURSUANT TO THE TVPA, 18 U.S.C. § 1859(b).

### A.    THE ELEMENTS OF THE TVPA

The TVPA provides a private cause of action against anyone who:

knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person; (2) by means of serious harm or threats of serious harm to that person or another person; (3) by means of the abuse or threatened abuse of law or legal process; or (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.

18 U.S.C. § 1589(a) (emphasis added) (as quoted in Complaint at ¶ 204).

The TVPA also provides a private cause of action against anyone who "knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in [§ l589(a)], knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of

6

labor or services by any of such means ...." 18 U.S.C. § 1589(b) (as quoted in Complaint ¶ 205).

The Plaintiffs' TVPA claims as to the State Defendants is that they received a financial benefit from the Plaintiffs and putative class members' labor (Complaint ¶ 206 -209), which itself was obtained:

(a)    "by means of force, threats of force, physical restraint, economic duress, and threats of physical restraint" (Complaint ¶ 206);

(b)    "by means of abuse or threatened abuse of law or legal process, including in particular by abusing the parole process" through racially discriminatory and arbitrary denials and delays of parole to ensure "the availability of incarcerated labor for State and work-release employers" (Complaint ¶ 207);

(c)    through means of serious harm or threats of harm (¶ 208); and/or

(d)    through a scheme intended to cause the Plaintiffs to believe that, if they did not perform the labor, they would suffer serious harm or physical restraint (¶ 209).

At Paragraph 210, Plaintiffs state their cause of action against the Employer Defendants, which derives entirely from their TVPA claim against the State Defendants:

> Employer Defendants knowingly benefitted, financially and otherwise, from participation in ADOC's work-release and work-center programs, knowing or in reckless disregard of the fact that their lucrative joint venture with ADOC has engaged in the providing or obtaining of labor

or services from Plaintiffs and the Forced Labor Class by each of the
unlawful means alleged in paragraphs 1 through 143 above. For
Defendants City of Montgomery, City of Troy, and Jefferson County,
knowingly benefiting from participation in ADOC's work-release and
work-center programs is a matter of custom and policy.

Complaint ¶ 210.

In short, to prevail, Plaintiffs have to have plausibly pled facts sufficient to

show that Montgomery received a benefit from its use of inmate labor and did so in

"knowing or in reckless disregard of the fact" that ADOC had engaged in a violation

of § 1589(a).  Further, pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*,

the knowing or reckless disregard must be municipal custom or practice. *See* 98 S.

Ct. 2018, 2037–38 (1978).

While Montgomery concedes here that a benefit was plausibly pled, the

remaining elements have not been.

### B.    THE *TWOMBLY/IQBAL* STANDARD

The allegations in the complaint as to the TVPA claim do not satisfy the

requirements of *Twombly* or *Iqbal*.  In order to state a claim for relief under Federal

Rule of Civil Procedure 12(b)(6), a plaintiff's complaint must include "enough facts

to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*,

550 U.S. 544, 570 (2007). "A facially plausible claim must allege facts that are more

than merely possible." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Factual

allegations that are 'merely consistent with' a defendant's liability" fall short of being

facially plausible. *Id*. (quoting *Twombly,* 550 U.S. at 557). "The plausibility standard 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the defendant's liability." *Chaparro v. Carnival Corp*., 693 F. 3d 1333, 1337 (11th Cir. 2012) (quoting *Twombly*). "But if allegations are indeed more conclusory than factual, then the court does not have to assume their truth." *Id*. (citing *Mamani v. Berzain*, 654 F. 3d 1148, 1153-54 (11th Cir. 2011)).

So viewed, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Fin. Sec. Assurance, Inc. v. Stephens, Inc*., 500 F. 3d 1276, 1282–83 (11th Cir. 2007) (per curiam). Ultimately, if "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'–'that the pleader is entitled to relief.' " *Iqbal*, 556 U.S. at 679 (emphasis added)

In what might be an attempt to plausibly allege Montgomery's knowledge or reckless disregard of the fact that the ADOC violated the TVPA (assuming that even that has been plausibly alleged), the Complaint is a veritable list of articles, reports, and summaries of the lawyers' internal investigations.  The Complaint, in this respect, is a clear example of a shotgun pleading not directed to any particular Employer Defendant including Montgomery.  As such, the claims are due to be dismissed for that reason alone.

"Courts in the Eleventh Circuit have little tolerance for shotgun pleadings," which violate Rule 8's requirement that a complaint contain a short and plain statement of the claim. *Vibe Micro, Inc. v. Shabanets*, 878 F. 3d 1291, 1295 (11th Cir. 2018).

Typically, shotgun pleadings are characterized by any one of the following:

(1) multiple counts that each adopt the allegations of all preceding counts; (2) conclusory, vague, and immaterial facts that do not clearly connect to a particular cause of action; (3) failing to separate each cause of action or claim for relief into distinct counts; or (4) [combining] multiple claims against multiple defendants without specifying which defendant is responsible for which act.

*McDonough v. City of Homestead*, 771 F. App'x 952, 955 (11th Cir. 2019). These categories "do not have precise and clearly marked boundaries." *Tran v. City of Holmes Beach*, 817 F. App'x 911, 913 (11th Cir. 2020). Significantly, the "unifying characteristic" of all shotgun pleadings is that they fail "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F. 3d 1313, 1323 (11th Cir. 2015).

*Kendall v. Fulton Cnty., Georgia*, No. 1:23-CV-00416-JPB, 2024 WL 1242463, at *8–9 (N.D. Ga. Mar. 22, 2024).

The fact that the Plaintiffs' lawyers pulled together evidence that they believe supports their clients' TVPA claim against the State Defendants does not, in any respect, lead to the conclusion that Montgomery acted with knowledge or reckless disregard of their legal theories of liability.

Because of Plaintiffs' shot-gun-pleading style, it is impossible to discern what Plaintiffs contend is the basis, if any, for Montgomery's alleged reckless disregard.

To the extent that Plaintiffs contend that Montgomery should have had knowledge of all ADOC rules, that is not a plausible claim. Plaintiffs do assert that there was a contract between the ADOC and government agencies with respect to the work-center program and that the alleged contract "provides that, in supervising incarcerated workers, the public entity 'shall require [incarcerated people] to obey all rules and regulations.'" Complaint ¶ 49. The Complaint further alleges that "if an incarcerated person 'fails to follow any rule, or refuses to work as requested, notice shall be given in writing' to ADOC."

Of course, Plaintiffs do not assert what "all rules and regulations" means and certainly it cannot be expected that Montgomery received a tome of every rule applicable in the prison system or the Governor's executive orders to the prison system. Rules and regulations here can only be read to mean the rules and regulations in connection with work-center programs. And there is no allegation that these programs' regulations supposedly provided to the Government Employers contained any provision that would support the claim that Montgomery knew or recklessly disregarded the theory of Plaintiffs' case against the State Defendants alleged here.

Broad, speculative allegations which lump all Employer Defendants together abound. In one example of this implausible pleading style, each Employer Defendant was supposed to know about the Plaintiffs' alleged theory of forced work

because some work-release inmates somewhere were "forced to work" to break a prison strike and did not report to their work-release jobs. (Complaint Par. 141.) The Complaint distinguishes between work-release programs (private employers) and work-center programs (public employers), so these inmates were not even working for Government Employers like Montgomery. And nowhere does the Complaint say where these people were assigned or what the employer was told about why they were absent.

The multiple paragraphs in the Complaint about prison strikes likewise do not plausibly allege that the Government Employers knew or acted in reckless disregard of Plaintiffs' legal theory that work-center labor was coerced in violation of the TVPA. According to the Complaint, a "strike" was held to "protest the conditions inside those [prison] facilities and to demand changes to the State's broken parole system" (*see* Complaint ¶ 141), not to rally against the work-center program as some instrument of forced labor.

Another example of the pleading style is Plaintiffs assertion at Paragraph142, based on no plausible factual allegations, that Montgomery and the other employers should have known that the State Defendants were conspiring to "discriminatorily deny parole." Granted, Plaintiffs cite some media reports about racial disparities in parole outcomes but, even if some Government Defendants had been aware of the

media reports (which is not alleged), those reports in no way link the racial disparities in parole decisions to coercion of work at the work-center programs.

What is utterly lacking is any allegation that Montgomery threatened any inmate with punishment if they refused to work or that anyone from Montgomery had ever witnessed any such threat or punishment. Nor is there any allegation that the work Montgomery had inmates do was so horrible that no one would willingly do it. And, certainly, pushing a broom at the Biscuits Baseball Stadium or washing cars (two of the allegations) are not onerous tasks. In short, there simply are no facts plausibly alleged to support Montgomery's "knowledge or reckless disregard" of any involvement in a TVPA venture as required to prove the § 1589(b) claim.

The closest that Plaintiffs come is alleging that there were media reports that prison conditions were bad. Seemingly, the allegation is that it was the prison conditions themselves that resulted in coercion, *i.e., "*I must work at the work center, or I will be returned to those conditions." But that theory of liability has multiple problems. Media reports do not constitute knowledge. Neither Montgomery nor any employer has responsibility for the prison conditions. Clearly the inmates, absent the work-release/work-center program, could lawfully have been held in those same prisons. Perhaps they would have had an unconstitutional-conditions claim, but Montgomery would not be liable for that. What Plaintiffs wish to hold

Montgomery liable for is providing an opportunity for the inmates to be in a better environment than the prison.

The fact that an inmate who did not work could be returned to prison, even if the conditions there were bad, does not amount to a TVPA violation. That inmates were offered a place at a work center did not erase the State's right to return them to prison if they chose not to do the work or, presumably, for any other reason. Such a transfer would not amount to "restraint," the threat of restraint, "threatened abuse of law or legal process" or threat of "harm" that the TVPA prohibits because each inmate was already lawfully subject to his or her prison sentence; the restraint or harm at issue would be merely a result of that lawful prison sentence, regardless of how bad the conditions were, not anything Montgomery did.

Not only does this theory of liability fail to establish a TVPA claim, as a policy matter it is unworkable. Under Plaintiffs' theory, employers would be placed in a position whereby they could not offer work opportunities under lawful work programs without first monitoring the prison conditions and concluding that they were adequate. If employers are subject to TVPA liability merely because prison conditions could be deemed substandard, work-release/work-center programs for any prisoner anywhere would likely evaporate, hurting prisoners, employers and the state in a way that the writers of the TVPA certainly did not contemplate.

IV.    **PLAINTIFFS HAVE NOT STATED A RICO CLAIM AGAINST MONTGOMERY.**

A.    **THE ALLEGED RICO CLAIM AGAINST MONTGOMERY**

Plaintiffs contend that the Defendants together "constitute an association-in-fact enterprise" that conducts an "illegal racketeering scheme" with the "common purpose of illegally obtaining forced labor" in violation of the TVPA from the Plaintiffs and the members of the Forced Labor Class "for the participants' benefit." (Complaint ¶ 216.)

B.    **THIS COUNT, HAVING ITS BASIS IN THE TVPA CLAIM, IS DUE TO BE DISMISSED ON THE *TWOMBLY/IQBAL* GROUNDS SET OUT ABOVE.**

RICO claims require, as one element of several, a "racketeering" activity to survive.  Here that racketeering activity is the § 1589(b) TVPA violation alleged in Count I.   Because that claim cannot survive this Motion to Dismiss as to Montgomery, there is no underlying illegal activity in which Montgomery was involved, and the RICO claim is likewise due to be dismissed. *See Jackson v. BellSouth Telecomms.*, 372 F. 3d 1250, 1264 (11th Cir. 2004) ("A RICO enterprise exists 'where a group of persons associates, formally or informally, with the purpose of conducting illegal activity.'").

C.    **PLAINTIFFS' CLAIM IS LIKEWISE DUE TO BE DISMISSED BECAUSE MUNICIPALITIES ARE NOT SUBJECT TO LIABILITY FOR RICO CLAIMS.**

This count is also due to be dismissed on the additional and independent

ground that municipalities are not subject to RICO liability. This Court held in *Auburn Medical Center, Inc. v. Peters*, that, "as a matter of law, state agencies cannot, alone or through their agents, form the requisite state of mind necessary to sustain a RICO claim." 953 F. Supp. 1518, 1522 (M.D. Ala. 1996). *Auburn Medical Center, Inc.* relied on *Pine Ridge Recycling, Inc. v. Butts Co., Ga,* 855 F. Supp. 1264, 1272-74 (M.D. Ga. 1994). In *Pine Ridge,* the district court also held that municipalities' historical immunity to punitive damages precluded RICO liability: "In the court's best judgment, RICO's treble damages are punitive and fail to achieve either the goal of retribution or deterrence when imposed upon a municipality." *Id.*

The Second, Third, Fifth and Ninth Circuits have likewise rejected RICO claims against municipalities on the same grounds, *i.e.*, a municipality's inability to have the requisite *mens rea* to be held liable under RICO and/or the fact that municipalities are immune from punitive damages. *See Gil Ramirez Grp., L.L.C. v. Houston Indep. Sch. Dist., 786 F. 3d 400, 412, 413* & n. 13 *(5th Cir. 2015)* (rejecting plaintiff's claim against municipal entity on both punitive damages and *mens rea* grounds, citing case law describing them to be "two sides of the same concept"); *Genty v. Resolution Trust Corp.,* 937 F. 2d 899, 910-914 (3d Cir.1991) (holding that the RICO claim could not be maintained against a municipal corporation because the damages were punitive in nature and municipalities are immune from punitive damages unless such immunity is abrogated by statute); *Pedrina v. Chun*, 97 F. 3d

16

1296, 1300 (9th Cir.1996) (summarily rejecting RICO claims against a city because "government entities are incapable of forming the malicious intent necessary to support a RICO action"); *Lancaster Comm. Hosp. v. Antelope Valley Hosp.,* 940 F. 2d 397, 404 (9th Cir. 1991) (holding that municipalities cannot form malicious intent and that exemplary damages are not available against municipal corporations, because such awards would burden the very taxpayers and citizens for whose benefit the wrongdoer is being chastised, citing *Newport v. Fact Concerts, Inc.,* 101 S. Ct. 2748, 2757 (1981)); *Rogers v. City of New York*, 359 F. App'x 201, 204 (2d Cir. 2009) (citing *Pedrina, supra,* and concluding: "In addition, the district court correctly held that, because there is no municipal liability under RICO, Rogers's civil RICO claim failed to state a cause of action."); *see also Topping v. Cohen*, No. 2:14-CV-146-FTM, 2015 WL 2383630, *12 (M.D. Fla. May 19, 2015).

In short, in addition to the fact that Plaintiffs have not satisfied the *Twombly/Iqbal* pleading requirements as to their RICO claim, Count II is due to be dismissed on both the ground that the City cannot have the requisite *mens rea* and that it cannot be liable for punitive damages.

## V.    THE PLAINTIFFS HAVE NOT STATED A CLAIM AGAINST MONTGOMERY PURSUANT TO ALABAMA CONSTITUTION, ART. 1 § 32.

### A.    THE ONLY INDIVIDUAL NAMED PLAINTIFF WHO WORKED FOR MONTGOMERY HAS NO CLAIM.

Plaintiffs raise a claim under Art. I, § 32 of the Constitution of Alabama. Importantly, that provision was amended in 2022, and the changes went into effect on January 1, 2023.[1]  The statute of limitations for Alabama constitutional claims is two years. *See* Ala. Code § 6-2-38(l) ("All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years.")  As noted above, the only Plaintiff who alleges that he ever worked for Montgomery is Ptomey.  The Complaint, while not identifying the exact year during which Ptomey worked for the City, nonetheless sets out the following order of events which establishes that Ptomey worked for Montgomery either during or before 2019:

    (a) Ptomey currently works for Progressive Finishing (Complaint ¶ 149);

    (b) He previously worked for KFC, Arby's, and Metalplate (Complaint ¶ 149);

    (c) Before working for these private employers, Ptomey provided labor for the "motor pool" in Montgomery for $2.00 a day (Complaint ¶ 149).

We then learn that Ptomey had a parole hearing in September 2022, and, at that hearing, his family was told that he was denied parole because he was fired from KFC in 2019.  The Complaint then confirms that 2019 was, in fact, when Ptomey worked for KFC.

---

[1] The Complaint notes that the language was changed in November 2022 to exclude the "exemption allowing involuntary servitude for the punishment of duly convicted crimes."  (Complaint ¶ 222.) However, the effective date of that change was January 1, 2023.

Relying solely on the allegations in the Complaint, it is clear that Ptomey worked for Montgomery before he worked for KFC. Thus, he necessarily worked for Montgomery before he was fired from KFC in 2019. This date bars Plaintiff's claim under the two-year statute of limitations for constitutional claims.

In addition, the constitutional provision in effect at the time he worked for Montgomery included the language which clearly and unequivocally permitted a sentence to hard labor. *See* Complaint ¶ 222 ("Since November 2022, Article I, § 32 … has no exemption allowing involuntary servitude for punishment of duly convicted crimes.") Plaintiffs do not contend that they would have a claim under the previous version of Art. I, § 32. Thus, Ptomey has no claim against Montgomery pursuant to Art. I, § 32.

## B. NO PLAINTIFF HAS STATED AN ALABAMA CONSTITUTIONAL CLAIM FOR INVOLUNTARY SERVITUDE.

It is well-established that to prevail on an involuntary servitude claim, at least a federal involuntary servitude claim, a:

> Plaintiff must establish that given Defendant's coercion, he "had no available choice but to work" for it. *United States v. Kozminski*, 487 U.S. 931, 943–44 (1988); *accord Greenberg v. Zingale*, 138 F. App'x 197, 200 (11th Cir. 2005). "When the employee has a choice, even though it is a painful one, there is no involuntary servitude." *Brooks v. George Cnty.*, 84 F. 3d 157, 162 (5th Cir. 1996) (cleaned up).

*John Ryder v. Lifestance Health Group, Inc.,* No. 6:22-CV-2050-RBD-RMN, 2024 WL 1119821, at *8 (M.D. Fla. Feb. 12, 2024). Here work-center inmates had a

choice to work or return to prison and serve out their sentences there. While that might have been a painful choice, it was clearly a choice and not, thus, involuntary servitude. In fact, work-release programs have been analyzed in connection with the federal prohibition against involuntary servitude. It is not involuntary servitude to offer prisoners an option of participating in a work-release program, even though the choice of not working and remaining in jail might be "painful." *See, e.g., Watson v. Graves*, 909 F. 2d 1549, 1552-53 (5th Cir. 1990). There is no reason to believe that Alabama's constitutional involuntary servitude provision would be read more broadly than the federal provision.

## VI.  PLAINTIFFS HAVE NOT STATED A 42 U.S.C. § 1986 CLAIM AGAINST MONTGOMERY.

### A.    THE STATUTE OF LIMITATIONS BARS PTOMEY'S CLAIM.

At Count XI, Plaintiffs contend that Montgomery violated 42 U.S.C. § 1986, the KKK Conspiracy Act, because Montgomery allegedly: (a) "had knowledge of the wrongs that Defendants Ivey, Marshall, Gwathney, Littleton, and Simmons conspired to be committed – namely, racially discriminatory denials of parole" (Complaint ¶ 277); and (b) had the power to prevent or aid in preventing the commission of these wrongs … by withdrawing from the work-release … programs … thereby reducing Defendants['] … incentive to deny parole and maintain a larger, predominantly Black, captive and coerced work force.." (Complaint ¶ 278.)

Section 1986 claims are subject to a one-year statute of limitations. *See* 42 U.S.C.A. § 1986 ("But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued.") Because Ptomey worked for Montgomery in 2019 or before, any claim against Montgomery is time-barred.

### B. PLAINTIFFS HAVE NOT SUFFICIENTLY ALLEGED THAT MONTGOMERY HAD THE REQUISITE KNOWLEDGE.

Plaintiffs have not come close to meeting the *Twombly/Iqbal* standard with respect to 42 U.S.C. § 1986.  As noted above, in support of the first prong of this cause of action, Plaintiffs allege that Montgomery had notice of the racially discriminatory denials of parole.  (Complaint ¶ 277.)  Plaintiffs then allege that Montgomery knew the State Defendants were "deny[ing] parole" to "maintain a larger, predominantly Black, captive and coerced work force." (Complaint ¶ 278.)  But Plaintiffs' pleadings are wholly lacking in any detail to support these claims.

But, first, Plaintiffs' underlying 42 U.S.C. § 1985 claim is due to be dismissed here, and a violation of that statute is required to prove their § 1986 claim.  Section 1985 requires proof of a conspiracy, and the State Defendants cannot, as a matter of law, conspire because, pursuant to the intracorporate conspiracy doctrine, employees of state government cannot conspire with one another.[2]  Moreover, if this Court

---

[2] Under this doctrine, "a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." *Grider v. City of*

concludes that the Plaintiffs have not adequately alleged that the State Defendants were racially motivated and thus did not violate § 1985, the § 1986 claim would also fail. The same would be true if this Court found that Plaintiffs adequately pled racially motivated parole denials but not a scheme to coerce labor in connection therewith.

But even if those aspects of the § 1985 claim were adequately pled against the State Defendants, none would plausibly allege Montgomery's knowledge of any such scheme. Actual knowledge is required under §1986. The Act requires "that Appellees **knew** of a § 1985 conspiracy and, having the power to prevent or aid in preventing the implementation of the conspiracy, neglected to do so." *Park v. City of Atlanta,* 120 F. 3d 1157, 1160 (11th Cir. 1997) (emphasis added).

In *Hampton v. City of Chicago, Cook County, Ill.*, the Seventh Circuit, addressing a motion to dismiss, held:

> Liability under § 1986, however, is dependent on proof of **actual knowledge by a defendant** of the wrongful conduct of his subordinates. In their brief, plaintiffs summarize the critical charges against Daley and Conlisk by stating that the complaints allege "that due to their positions of authority and responsibility, [they] knew of the conspiracy against the plaintiffs." … We agree with the district court that those allegations are insufficient.

---

*Auburn, Ala.*, 618 F. 3d 1240, 1261 (11th Cir. 2010) (quoting *McAndrew v. Lockheed Martin Corp.*, 206 F. 3d 1031, 1036 (11th Cir. 2000) (*en banc*). *Grider* also explained that the doctrine applies to public entities and their employees, in addition to private, corporate ones. *Id.* (quoting *Denney v. City of Albany*, 247 F. 3d 1172, 1190 (11th Cir. 2001)).

484 F. 2d 602, 610 (7th Cir. 1973) (emphasis added); *see also Buck v. Board of Elections of City of New York*, 536 F. 2d 522. (2d Cir. 1976) (That defendants knew of the allegedly discriminatory act is a statutory prerequisite to suit under § 1986.

There is no plausible allegation that Montgomery had actual knowledge, but even if the standard here were constructive knowledge, Plaintiffs alleged no facts to support even that. And why would Montgomery have had knowledge of something that has only been presented to it as a convoluted theory for the first time in this lawsuit and has yet to be proven?

The mere fact that the prison may collect money from Montgomery does not in any way show that doing so amounts to some large money-making scheme, much less a racially motivated one, involving the parole system.  Housing and feeding prisoners is no cheap task.  It is inconceivable that anyone in Montgomery would have concluded that Montgomery's $13.00 contribution per work day per prisoner would cover the prisoners' room and board, much less that it was some grand, racially-motivated, money-making scheme connected to parole denials.

## C. PLAINTIFFS HAVE NOT AND CANNOT ALLEGE SUFFICIENT FACTS TO SHOW MONTGOMERY CAUSED THEIR INJURY OR COULD HAVE PREVENTED IT.

Plaintiffs have also failed to plausibly allege that Montgomery's withdrawal from the work-center program would have, in any sense, aided in preventing the alleged conspiracy between the State Defendants regarding prison labor.  First,

clearly there were multiple employers involved and, presumably, more could have been found. There are certainly no allegations to the contrary. Thus, there is no plausible allegation that, by withdrawing from the program, Montgomery could either have prevented or aided in preventing parole denials.

## VII. PLAINTIFFS HAVE NOT STATED AN UNJUST ENRICHMENT CLAIM AGAINST MONTGOMERY.

### A.    THE CLAIM

At Paragraph 282 of the Complaint, Plaintiffs allege unjust enrichment.  They write that "[t]he involuntarily coerced labor of [the Plaintiffs]… and members of the Forced Labor Class has conferred a benefit on the Employer Defendants" in the form of "decreased costs and increased profits" (Complaint ¶ 282) and that "[i]t would be unjust for Employer Defendants to retain the value of this benefit."  Why?  Because the "Employer Defendants obtained this benefit through **unconscionable conduct**, including through their knowing and voluntary participation in the State's coercive worker 'leasing' program."  (Complaint ¶ 283 (emphasis added).)

This claim is not brought on behalf of the organizational defendants.  The named individual Plaintiffs apparently seek "disgorgement" of these profits.  As noted elsewhere, only Ptomey has a potential claim against Montgomery as only he alleges working for Montgomery.

### B.    PLAINTIFFS' UNJUST-ENRICHMENT CLAIM DOES NOT SATISFY THE *TWOMBLY/IQBAL* PLEADING STANDARD.

The following explains generally what a plaintiff must show to prevail on an unjust-enrichment claim:

> To prevail on a claim of unjust enrichment under Alabama law, a plaintiff must show that: (1) the defendant knowingly accepted and retained a benefit, (2) provided by another, (3) who has a reasonable expectation of compensation.

*Portofino Seaport Vill., LLC v. Welch*, 4 So. 3d 1095, 1098 (Ala.2008).

> " 'One is unjustly enriched if his retention of a benefit would be unjust.' *Jordan v. Mitchell*, 705 So.2d 453, 458 (Ala. Civ. App. 1997) (citing Restatement of Restitution: Quasi Contracts and Constructive Trusts, § 1, Comment c. (1937)). The *Jordan* court continued:
>
>> " 'Retention of a benefit is unjust if (1) the donor of the benefit ... acted under a mistake of fact or in misreliance on a right or duty, or (2) the recipient of the benefit ... engaged in some **unconscionable conduct, such as fraud, coercion, or abuse of a confidential relationship.** In the absence of mistake or misreliance by the donor or wrongful conduct by the recipient, the recipient may have been enriched, but he is not deemed to have been unjustly enriched.' "

*Welch v. Montgomery Eye Physicians, P.C.*, 891 So. 2d 837, 843 (Ala. 2004) (emphasis added).

The Plaintiffs' claim is grounded on the unconscionable conduct prong of unjust enrichment. Here the only unconscionable conduct alleged in the count is the "knowing and voluntary participation in the State's coercive worker 'leasing' programs." (Complaint ¶ 283.) But, as explained in the previous sections of this

brief, the Plaintiffs have not plausibly alleged, as required by *Twombly* and *Iqbal*, that Montgomery was on notice that its conduct in connection with the ADOC's work-center program was in violation of any of the statutes or the Alabama Constitution, which ground their allegation of unconscionability. They have, in short, failed to plead wrongful conduct, given that the work-center programs are not themselves alleged to be either invalid or unlawful.

As the Alabama Supreme Court said in *Welch v. Montgomery Eye Physicians, P.C.*: "In the absence of … wrongful conduct by the recipient, the recipient may have been enriched, but he is not deemed to have been *unjustly* enriched." 891 So. 2d at 843 (Ala. 2004) (internal citations and quotation marks omitted) (emphasis in original).

### C.    PTOMEY'S CLAIMS ARE ALSO TIME-BARRED IF THE TWO-YEAR STATUTE OF LIMITATIONS APPLIES TO HIS CLAIM, AND IT SHOULD.

It appears to be a somewhat open question as to which statute of limitations – the tort two-year statute or the contract six-year statute – applies to unjust enrichment claims in Alabama. The last Alabama Supreme Court case that seems to have weighed in on this topic with any substance stated the following:

> The parties disagree as to the applicable statute of limitations. Specifically, without including a citation to supporting authority, Jeff maintains that the six-year statute of limitations set out in § 6–2–34(9), Ala. Code 1975, applies to implied contracts and thus governs his unjust-enrichment claim. Contrary to that position, Morgan and First Bank cite nonbinding authority in support of the proposition that,

depending on the source of the alleged unjust enrichment, either the two-year statute of limitations applicable to tort-based actions or the six-year statute of limitations applicable to contract-based claims may apply. See *Auburn Univ. v. International Bus. Machs. Corp.,* 716 F.Supp.2d 1114, 1118 (M.D.Ala.2010) ("[S]ome unjust-enrichment claims, such as claims for enrichment flowing from a breach of the corporate fiduciary duties of loyalty and due care, clearly arise from tort injuries, while other unjust-enrichment claims, such as claims for enrichment flowing from the rendering of substantial performance on a merely technically invalid contract, clearly arise from contract injuries.").

*Snider v. Morgan*, 113 So. 3d 643, 655 (Ala. 2012). The claims here, because they are based primarily on federal tort statutes and a state constitutional provision, fall into the arena of tort, rather than contract, law. Thus, under the reasoning of *Snider*, this Court should apply the two-year statute of limitation on Ptomey's claim and dismiss it.

## D. THE PLAINTIFFS' STATE-LAW DAMAGES CLAIM IS BARRED AGAINST MONTGOMERY.

There is no indication Plaintiffs complied with the mandatory notice of claims statute. Alabama Code § 11-47-192 provides: "No recovery shall be had against any city or town on a claim for personal injury received, unless a sworn statement be filed with the clerk by the party injured or his personal representative in case of his death stating substantially the manner in which the injury was received, the day and time and the place where the accident occurred, and the damages claimed." *See also* Ala. Code § 11-47-23. A plaintiff seeking to make claims against a municipality must file a notice or a lawsuit within six months or his claims are barred. *Frazier v. City*

*of Mobile*, 577 So. 2d 439 (Ala. 1991). Because Ptomey has not alleged compliance with this mandatory provisions before filing suit, his unjust-enrichment claim is due to be dismissed.

## VIII. ALL CLAIMS FOR PUNITIVE DAMAGES ARE DUE TO BE DISMISSED.

To the extent recovery is sought for punitive damages, it is well-settled that federal law prohibits such an award against a municipality. *See, e.g., Byrd v. Jones*, 2015 WL 2194697 (N.D.Ala.2015), *citing, e.g.*, *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), and *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 2099, 87 L.Ed.2d 114 (1985). Treble damages are considered punitive. *See McCullough v. City of Montgomery*, No. 2:15-CV-463 (RCL), 2019 WL 2112963, at *10 (M.D. Ala. May 14, 2019). Alabama Code § 6–11–26 similarly provides that punitive damages may not be awarded against the State of Alabama or "any municipality thereof." *See*, *e.g., Broady v. Herd*, No. 7:23-CV-01097-LSC, 2024 WL 946116, at *9 n.14 (N.D. Ala. Mar. 5, 2024) (acknowledging that punitive damages claims against a city are not viable citing *Newport*, *supra*, and Ala. Code § 6–11–26).

## IX. INCORPORATION OF ARGUMENTS BY REFERENCE

Defendant Montgomery hereby incorporates by reference all of the arguments and authorities contained in the briefs submitted by any Codefendant on

the issues posed by the claims asserted in Counts I, II, III, IX, X, XI, and XII of the Plaintiffs' Complaint.

## CONCLUSION

For the reasons set out herein, all of the Plaintiffs' claims against Montgomery are due to be dismissed for failure to state a claim.

Respectfully submitted this the 29th day of March, 2024.

s/Shannon L. Holliday
Robert D. Segall (SEG003)
Shannon L. Holliday (HOL088)
Copeland, Franco, Screws & Gill, P.A.
444 South Perry Street (36104)
P. O. Box 347
Montgomery, AL  36101-0347
Phone: (334) 834-1180
Fax:  (334) 834-3172
Email: segall@copelandfranco.com
Email: holliday@copelandfranco.com
**Attorneys for Defendant City of Montgomery**

## CERTIFICATE OF SERVICE

I hereby certify that on this the 29th day of March 2024, I have electronically filed the foregoing with the Clerk of the Court using PACER, which will send notification to the following via email:

| | |
|---|---|
| Amanda Christine Lynch<br>Barbara J. Chisholm<br>Connie K. Chan<br>Michael Rubin<br>Altshuler Berzon LLP<br>177 Post St.<br>Suite 300<br>San Francisco, CA 94108<br>**Counsel for Plaintiffs** | Janet Marie Herold<br>Justice Catalyst Law<br>40 Rector Street<br>9th Floor<br>New York, NY 10008<br>**Counsel for Plaintiffs** |
| Lauren Elaena Faraino<br>Faraino, LLC<br>2647 Rocky Ridge Lane<br>Birmingham<br>Vestavia Hills, AL 35216<br>**Counsel for Plaintiffs** | Richard Paul Rouco<br>Quinn, Connor, Weaver, Davies &<br>Rouco<br>Two North Twentieth Street; Suite 930<br>Birmingham, AL 35203<br>**Counsel for Plaintiffs** |
| Benjamin Matthew Seiss<br>Brad A. Chynoweth<br>Alabama Attorney General's Office<br>501 Washington Avenue<br>Montgomery, AL 36104<br>**Counsel for Kay Ivey and<br>Steve Marshall** | Gary Lee Willford , Jr.<br>Alabama Bureau of Pardons and<br>Paroles<br>Legal Division<br>301 S. Ripley Street<br>Montgomery, AL 36104<br>**Counsel for Leigh Gwathney, Darryl<br>Littleton, and Gabrelle Simmons** |
| Cameron Wayne Elkins<br>Tara S. Hetzel<br>State of Alabama Office of the<br>  Attorney General<br>Civil Division<br>501 Washington Avenue<br>Montgomery, AL 36104<br>**Counsel for John Hamm** | Steven A. Higgins<br>William F. Patty<br>Alabama Department of Transportation<br>1409 Coliseum Blvd.<br>Legal Bureau<br>Montgomery, AL 36110<br>**Counsel for John Cooper** |

| | |
|---|---|
| Brad A. Everhardt<br>Randall Morgan<br>Hill, Hill, Carter, Franco, Cole &<br>  Black, P.C.<br>425 South Perry Street<br>Montgomery, AL  36104<br>**Counsel for City of Troy** | Shawnna H. Smith<br>Office of the Jefferson County<br>Attorney<br>280 Jefferson County Courthouse<br>716 Richard Arrington Jr. Blvd. North<br>Birmingham, AL  35203<br>**Counsel for Jefferson County** |
| Rachel V. Barlotta<br>Kayla M. Wunderlich<br>Baker, Donelson, Bearman, Caldwell<br>  & Berkowitz, P.C.<br>420 20th Street North; Suite 1400<br>Birmingham, AL 35203<br>**Counsel for Koch Foods, LLC** | George Robert Parker<br>Bradley Arant Boult Cummings LLP<br>445 Dexter Avenue, Suite 9075<br>Montgomery, AL  36104<br>**Counsel for Masonite Corporation** |
| John Thomas Richie<br>W. Chadwick Lamar<br>Bradley Arant Boult Cummings LLP<br>One Federal Place<br>1819 5th Avenue North<br>Birmingham, AL  35203<br>**Counsel for Masonite Corporation** | Kyle T. Smith<br>Dentons Sirote PC<br>Post Office Box 55727<br>Birmingham, AL  35255-5727<br>**Counsel for Paramount Service, Inc.** |
| Allison Hawkins<br>Michael L. Lucas<br>Burr & Forman LLP<br>420 North 20th Street<br>Suite 3400<br>Birmingham, AL  35203<br><br>Ingu Hwang<br>Burr & Forman LLP<br>445 Dexter Avenue, Suite 2040<br>Montgomery, AL  36104<br><br>**Counsel for Ju-Young<br>Manufacturing<br>America, Inc., SL Alabama, LLC,<br>and<br>Hwaseung Automotive USA, LLC** | Morgan L. Allred<br>Holland & Knight LLP<br>1901 6th Avenue North<br>Suite 1400<br>Birmingham, AL  35203<br>**Counsel for Premier Kings, Inc.** |

| | |
|---|---|
| Aaron G. McLeod<br>Jonathan B. Metz<br>Adams and Reese LLP<br>1901 6th Avenue North<br>Suite 1110<br>Birmingham, AL  35203<br>**Counsel for Bama Budweiser of Montgomery, Inc.** | Taffiny S. Stewart<br>Elliot B. Monroe<br>Sarah G. Redmond<br>Lloyd, Gray, Whitehead & Monroe, P.C.<br>880 Montclair Road<br>Suite 100<br>Birmingham, AL  35203<br>**Counsel for Southeastern Meats, Inc.** |
| Josh C. Harrison<br>David Nikolic<br>Ogletree, Deakins, Nash, Smoak<br>  & Stewart, P.C.<br>420 20th Street North<br>Suite 1900<br>Birmingham, AL  35203<br>**Counsel for Progressive Finishes, Inc.** | John B. Holmes, III<br>Tom J. Butler<br>W. Brock Philips<br>Maynard Nexsen, PC<br>1901 Sixth Avenue North<br>Suite 1700<br>Birmingham, AL  35203<br>**Counsel for Cast Products, Inc.** |
| Melisa C. Zwilling<br>Carr Allison<br>100 Vestavia Parkway<br>Birmingham, AL  35216<br>**Counsel for Southeast Restaurant Group-Wen LLC** | |

s/ Shannon L. Holliday
Of Counsel