## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

|  |  |  |
|---|---|---|
| **ROBERT EARL COUNCIL, a/k/a** | ) | |
| **KINETIK JUSTICE, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **CIVIL ACTION NO.:** |
| **v.** | ) | |
| | ) | **2:23-cv-00712-CLM-JTA** |
| **KAY IVEY, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## DEFENDANTS SL ALABAMA, LLC'S, JU-YOUNG MANUFACTURING AMERICA, INC.'S AND HWASEUNG AUTOMOTIVE USA LLC'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR DISMISSAL OF PLAINTIFFS' CLASS COMPLAINT[1]

---

[1] For purposes of a Rule 12(b)(6) motion, the Automotive Defendants must accept the material factual allegations of the complaint as true.  But these may not be the true facts.

# <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ..........................................................................................1

II.     THIS COURT LACKS JURISDICTION OVER PLAINTIFFS' CLAIMS
        AGAINST THE AUTOMOTIVE DEFENDANTS. ......................................2

        A.      Named Incarcerated Worker Plaintiffs Lack Article III Standing. .......3

        B.      Named Labor Organization Plaintiffs Lack Article III Standing..........7

        C.      The Woods Foundation Lacks Article III Standing. ............................9

III.    THE COMPLAINT IS AN IMPERMISSIBLE
        SHOTGUN PLEADING ..............................................................................11

IV.     PLAINTIFFS CANNOT ESTABLISH COGNIZABLE CLAIMS
        AGAINST THE AUTOMOTIVE DEFENDANTS UNDER
        COUNT I THE TRAFFICKING VICTIMS PROTECTION ACT. .............13

        A.      Plaintiffs' Conclusory Shotgun Pleading Allegations Are
                Insufficient To State a Claim Against the Automotive
                Defendants. .......................................................................................15

        B.      Plaintiffs Fail to Establish that the Automotive Defendants
                "Participated" In Any "Venture." ......................................................17

        C.      Plaintiffs fail to plead facts that create a reasonable inference that
                the Automotive Defendants "knew or should have known" they
                were participating in conduct that violated the TVPA.......................21

V.      PLAINTIFFS CANNOT ESTABLISH COGNIZABLE RICO
        CLAIMS AGAINST THE AUTOMOTIVE DEFENDANTS.....................24

        A.      Standard of Review. ..........................................................................24

        B.      Plaintiffs Fail to Satisfy the Requisite Pleading Requirements As
                to Each Automotive Defendant Under the Rule 12(b)(6)
                Plausibility Standard. ........................................................................25

        C.      Plaintiffs Cannot Establish a Violation of Section 1962(c). ..............26

i

1. Plaintiffs Fail to Plead Facts Showing the Automotive Defendants were Part of the Alleged Enterprise.......................27

2. Plaintiffs Fail to Plead Facts Showing the Automotive Defendants Participated in the Operation or Management of the Enterprise's Affairs.........................................................30

3. Plaintiffs Fail to Allege Racketeering Activity. ......................33

D. Plaintiffs Cannot Establish Standing to Bring a Cause of Action Under 18 U.S.C. § 1962(c)...................................................34

VI. PLAINTIFFS' ARTICLE 1, SECTION 32 OF THE ALABAMA CONSTITUTION CLAIM, IS DUE TO BE DISMISSED. ........................38

VII. PLAINTIFFS' CONSPIRACY CLAIM IN VIOLATION OF THE KKK ACT CLAIM IS DUE TO BE DISMISSED. ......................................39

A. Plaintiffs' claims must fail because they cannot allege a plausible conspiracy claim under § 1985............................................40

B. Plaintiffs' § 1986 claims are time barred. ...........................................40

C. Plaintiffs cannot establish a § 1985 claim............................................41

VIII. PLAINTIFFS' UNJUST ENRICHMENT CLAIM IS DUE TO BE DISMISSED. ...........................................................................................43

IX. CONCLUSION.............................................................................................45

## I.    INTRODUCTION

Plaintiffs—former or current incarcerated individuals, labor organizations and a civil rights organization—allege that State Defendants Governor Kay Ivey, Attorney General Steve Marshall, Leigh Gwathney, Darryl Littleton, Gabrelle Simmons, John Hamm and John Cooper ("State Defendants") conspired to pass laws and alter the parole process essentially shutting down the possibility of parole for the purpose of gaining a profit from the labor services performed by incarcerated workers via the State's work release programs. Plaintiffs allege they have been "entrapped" in a system of "convict leasing" in which incarcerated people are forced to work, for little, for the benefit of the numerous government entities and private businesses that employ them. Plaintiffs also allege that the State grew these programs by favoring White over Black prisoners in parole decisions for release.

Premised on these allegations, Plaintiffs assert several claims against various private and public entities who participate in the State's work release programs. Plaintiffs allege Hwaseung Automotive USA LLC ("Hwaseung"), SL Alabama, LLC ("SL Alabama") and Ju-Young Manufacturing, LLC ("Ju-Young") (together, the "Automotive Defendants") are or were participants in the State sponsored work release programs. Against these Automotive Defendants Plaintiffs assert: a Trafficking Victims Protection Act ("TVPA") claim, (Count I); a federal Racketeer Influenced and Corrupt Organizations Act ("RICO") claim, (Count II); a violation

1

of the Alabama Constitution under Article I, Section 32 claim, (Count III); a Failure to Prevent Wrongs of KKK Act Conspiracy claim, (Count XI); and a state law claim for unjust enrichment, (Count XII).

Surprisingly, Plaintiffs assert these claims against these Automotive Defendants even though:

- Nowhere in their 126 page, 283 paragraph Class Action Complaint do Plaintiffs allege any named Plaintiff was ever employed by the Automotive Defendants;

- In their 126 page, 283 paragraph Class Action Complaint, Plaintiffs only mention by name these three Automotive Defendants nine times (Doc. 1, at ¶¶ 12, 18, 19, 133, 135, 170, 171, 172, 186);

- Plaintiffs fail to allege a single specific act by these Automotive Defendants in support of the alleged grand conspiracy; and

- Plaintiffs allege nothing more than these Automotive Defendants participated in the State's work release program.

As demonstrated below, Plaintiffs' inflammatory, conclusory and speculative allegations in their Complaint against the Automotive Defendants do not support their claims, which should be dismissed.

## II.    THIS COURT LACKS JURISDICTION OVER PLAINTIFFS' CLAIMS AGAINST THE AUTOMOTIVE DEFENDANTS.

Federal courts are of limited jurisdiction and are empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 102-03 (1998). "The 'irreducible constitutional minimum of standing' contains three requirements":

(1) "an 'injury in fact' — a harm suffered by the plaintiff that is 'concrete' and 'actual or imminent, not 'conjectural' or 'hypothetical;'" (2) "causation — a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant"; and (3) "redressability — a likelihood that the requested relief will redress the alleged injury." *Id.* (citations omitted). Beyond the constitutional requirements, the federal judiciary also has adhered to a set of prudential principles that bear on the question of standing. Thus, the Supreme Court has held that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

Plaintiffs cannot meet this benchmark. Their claims must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1). *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1234-35 (11th Cir. 2008) (affirming dismissal under Fed. R. Civ. P. 12(b)(1) for lack of standing).

## A.    Named Incarcerated Worker Plaintiffs Lack Article III Standing.

Plaintiffs cannot establish a traceable connection between their alleged injuries and the Automotive Defendants alleged constitutional, federal and state violations nor can they establish that any alleged injury is readressable by a court order against the *Automotive Defendants*.

Article III requires the party invoking the Court's authority to "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," *Gladstone Realtors v. Vill. of Bellwood,* 441 U.S. 91, 99 (1979), and that the injury can be "fairly . . . traced to the challenged action of the defendant." *Simon v. E. Ky. Welfare Rights Org*., 426 U.S. 26, 41 (1976). Plaintiffs' Complaint does not meet this standard. As supported by the express allegations in the Complaint, none of the named incarcerated Plaintiffs can establish injury as result of the alleged illegal conduct of the Automotive Defendants. None of these Plaintiffs—Council, Moore, Walker, Cole, Ptomey, McDole, Campbell, Pritchett, English and Cartwright — allege to ever have worked for the Automotive Defendants. (Doc. 1 at ¶¶ 145-54.) None of these Plaintiffs allege any specific conduct on the part of the Automotive Defendants or how such conduct could feasible harm Plaintiffs. Accordingly, these Plaintiffs cannot establish that they suffered any injury traceable to Defendants.

At most, the incarcerated Plaintiffs assert they have been injured by the Automotive Defendants because they "have the power to withdraw from the work-release program but ha[ve] continued to participate." (Doc. 1 at ¶¶ 170-72.) However, this assertion is wholly conclusory. The incarcerated Plaintiffs fail to make any allegations that show had the Automotive Defendants not participated in the alleged forced labor scheme, the incarcerated Plaintiffs would not have been

injured or that they would benefit in some tangible way should the court intervene against the Automotive Defendants. The Eleventh Circuit has consistently denied to find standing under the traceability prong when a plaintiff "would have been injured in precisely the same way" without the defendant's alleged misconduct. *See, e.g.*, *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1272 (11th Cir. 2019) ("There's no remotely plausible causal chain linking the failure to maintain an internal do-not-call list to the phone calls received by class members who <u>never</u> said to Telecel they didn't want to be called again."); *Swann v. Sec'y, Ga.*, 668 F.3d 1285, 1289 (11th Cir. 2012) ("Swann's failure to provide the address of the jail on his [absentee-ballot] application independently caused his alleged injury [—*i.e.*, not receiving a ballot]. Swann would not have received a ballot at the jail regardless of the application of the [challenged] statute by the officials."). Thus, under Eleventh Circuit precedent, a plaintiff lacks standing to sue over a defendant's action "if an independent source would have caused him to suffer the same injury." *Swann*, 668 F.3d at 1288.

Here, Plaintiffs lack standing because regardless if Automotive Defendants participated in the State release program, Plaintiffs would have suffered the same alleged injuries. None of the Plaintiffs allege that the Automotive Defendants caused them any specific harm or engaged in any conduct that is traceable to the alleged harms suffered (*i.e.* loss wages and benefits, disparate treatment, threats of force, economic duress, etc.). Plaintiffs rely on little more than sheer speculation,

unsubstantiated by allegations of fact, that their situation might have been better had the Automotive Defendants not participated in the work release program, or that their situation might improve were this Court to afford relief against the Automotive Defendants. Yet, there are no factual averments to support their assertions. Indeed, there would have still been "other approximately 560 private employers" participating in the State sponsored programs. (Doc. 1 at ¶ 12.) This is insufficient. *Baughcum v. Jackson*, 92 F.4th 1024, 1034 (11th Cir. 2024) (stating "the injury must be likely, not merely speculative, that the injury will be redressed by a favorable decision against the defendant") (citation omitted).

In the same vain, Plaintiffs cannot establish redressability because no relief may be sought from the Automotive Defendants. Plaintiffs did not work for the Automotive Defendants so Plaintiffs cannot seek any alleged lost wages or benefits. Similarly, Plaintiffs do not, and cannot allege, the Automotive Defendants played any role in the parole process that negatively impacted Plaintiffs, that the Automotive Defendants made any threats of coercion or engaged in any act or omission that would be cured by injunctive or other equitable relief against the Automotive Defendants. Simply put, the incarcerated Plaintiffs' cannot establish that any order of this Court would redress their allege injuries.

### B.     Named Labor Organization Plaintiffs Lack Article III Standing.

Plaintiffs Retail Wholesale and Department Store Union, Mid-South Council ("RWDSU") and Union of Southern Service Workers, Service Employees International Union ("USSW")—labor organization Plaintiffs—likewise cannot establish injury as result of the alleged illegal conduct of the Automotive Defendants. The labor organization Plaintiffs assert injuries on behalf of their members and based on their own injuries. Specifically, the labor organization Plaintiffs allege that Defendants' actions have caused the labor organization Plaintiffs harm by:

- Perpetuating racial discrimination, unsafe working conditions, and low wages *in the poultry processing industry*, including in facilities operated by employers where labor organization Plaintiffs operate.

- Interfering with labor organization Plaintiffs' ability to organize and represent workers *in the poultry or fast food sec*tor.

- The use of incarcerated labor depresses wages and working conditions for all workers in the sector.

- Expending money on resources to improve their sectors working conditions.

- Preventing the incarcerated persons from being granted parole and could freely become members of their respective labor organizations.

(*See* Doc 1 at ¶¶ 155-56.) These alleged injuries are insufficient to prove standing against the Automotive Defendants.

To establish associational standing, an organization must prove that its members "would otherwise have standing to sue in their own right." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1249 (11th Cir. 2020) (citation omitted). The labor organization Plaintiffs fail to allege, and cannot allege, that any of their members work for the Automotive Defendants or even that their members work in the same industry as the Automotive Defendants. There is no allegation in the Complaint that the Automotive Defendants are involved in the poultry or fast food sectors, as there cannot be. Indeed Plaintiffs own sparse allegations that reference the Automotive Defendants are that the Automotive Defendants are involved in manufacturing. (Doc. 1 at ¶¶ 170-72.) The labor organization Plaintiffs do not allege they represent employees of the Automotive Defendants, they do not claim to seek to represent the Automotive Defendants' employees, they do not allege they represent employees in the Automotive Defendants' business sector and they make no allegations that their alleged injuries are traceable to the Automotive Defendants' participation in the work release program (*Id*. at 155-56). Labor organization Plaintiffs fail to identify any of its members that would have standing against the Automotive Defendants, much less one who would be injured by the Automotive Defendants' participation in the State's work release program. This failure is fatal to their associational standing. *See Jacobson,* 974 F.3d at 1249.

Labor organization Plaintiffs cannot establish standing in their own right. To assert injury based on the diversion of resources or impediment to the organization's purpose, labor organization Plaintiffs must show that the Automotive Defendants' "illegal acts impair its ability to engage in its projects by forcing the organization to divert resources to counteract those legal acts." *Jacobson*, 974 F.3d at 1250 (citation omitted). Plaintiffs must allege "what activities the [labor organization Plaintiffs] would divert resources *from* in order to spend additional resources combatting the [alleged illegal activity.]" *Id.* There are not allegations of what activities, if any, might be impaired by the labor organizations' decisions to allocate resources to combatting the alleged illegal conduct. They fail to establish an injury based on diverted resources. Labor organization Plaintiffs cannot establish any grounds for standing against the Automotive Defendants. These claims must be dismissed.

## C.    The Woods Foundation Lacks Article III Standing.

Plaintiff The Woods Foundation alleges that it has been harmed by "Defendants' unlawful actions [because] Woods Foundation has had to devote increased resources, including money and staff time, towards addressing the unfair and unlawful functioning *of the parole sys*tem. For example, Woods Foundation has had to redirect resources from other projects such as investigations of wrongful convictions to address the Governor, Attorney General, and Parole Board's racially discriminatory abuse of the parole system and their rejection of the JRA's objective

standards." (Doc. 1 at ¶ 157) (emphasis added.) However, these allegations provide no support that Woods Foundation has been injured by the Automotive Defendants' alleged unlawful conduct.

As further explained in *Section VII*, Plaintiffs' allegations fail to give rise to a reasonable inference that the Automotive Defendants had any control, power or involvement in the State's parole processes and system. There is no allegation that the Automotive Defendants participation in the State sponsored work release program has any effect whatsoever on the alleged "unlawful functioning of the parole system." The Woods Foundation fails to allege facts that would give rise to a reasonable inference that it has suffered injury or its members have suffered injury and that injury is in any way traceable to the Automotive Defendants and can be redressed by this Court.

The facts Plaintiffs allege fail to support an actionable causal and traceable relationship between the Automotive Defendants' alleged conduct and any of the Plaintiffs' alleged injuries. Plaintiffs injuries cannot reasonably be said to have resulted, in any concretely demonstrable way, from the Automotive Defendants' alleged constitutional and statutory violations. As a result, Plaintiffs' claims against the Automotive Defendants must be dismissed for lack of standing.

### III.    THE COMPLAINT IS AN IMPERMISSIBLE SHOTGUN PLEADING

Plaintiffs' Complaint is due to be dismissed as an impermissible shotgun pleading. Federal Rule of Civil Procedure 8(a)(2) provides that to state a claim for relief, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to attribute specific factual allegations to a specific defendant fails to state a claim under Rule 12(b)(6). *Se*e *Weiland v. Palm Beach Cty. Sheriff's Offic*e, 792 F.3d 1313, 1321-23 (11th Cir. 2015) (explaining a complaint is a shotgun pleading when it commits the "sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions"); *see, e.g., Zola H. v. Snyder,* No. 12-14073, 2013 WL 4718343, at *7 (E.D. Mich. Sept. 3, 2013) (stating that "when [the complaint] fails to impute concrete acts to specific litigants, [it] fails to state a plausible claim") (citations omitted); *Del Castillo v. PMI Holdings N. Am. Inc*., No. 4:14-CV-3435, 2015 WL 3833447, at *6 (S.D. Tex. June 22, 2015) (noting that the complaint's failure to distinguish between defendants was fatal). Dismissal on shotgun-pleading grounds is appropriate when "it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief." *Weiland*, 792 F.3d at 1325 (citation omitted).

By impermissibly grouping all Defendants together, including all "private employer defendants," no Defendant can discern whether Plaintiffs intend to hold

them liable as the principal or the agent, or on some theory of liability and based on what allegations. For example, Plaintiffs plead that "[b]lack forced laborers, including some Plaintiffs and class members, also report that **some private employers** are enhancing their profits by charging those forced laborers fees and costs that the employers are prohibited from charging to free workers." (Doc. 1 ¶ 23) (emphasis added); *see e.g.*, ("private employers that have also contracted with the ADOC in recent years to obtain work from forced laborers, paid their profits by: **sometimes** setting and paying wage rates to those incarcerated workers below the rates required by law") (Doc. 1 at ¶ 12) (emphasis added). These allegations are attributable to "some private employers" but leave all private employer Defendants guessing whether the alleged conduct is asserted against them. Plaintiffs may not hold each private employer responsible for the acts of others without a legal basis to do so. As illustratively stated in *Zola H. v. Snyder*:

> It is not the defendant's task to guess at which, if any, of an enormous complaint's allegations address her; it is not for her, either by herself or in concert with other defendants, to piece disordered allegations into a functioning case; she need not do the work. It is the plaintiff who must show that he is not guessing when he names a defendant, that he has designed his action, that he has not been careless about suing people.

2013 WL 4718343, at *7. Simply put, notice pleading requires Plaintiffs to allege who committed what act and, if attempting to hold another entity liability, the basis of that entity liability.

In the same vein, Plaintiffs assert that each private employer "contracted with," had "knowledge," "participated," or "directed," yet the Complaint fails to allege how these actions were taken separately by each of the Defendants. Collective references to "Defendants" are particularly problematic in that the employer Defendants are distinct entities, each with their own contractual agreement with the State, who employed different incarcerated workers under individualized terms and conditions of employment, at different times, and had different circumstances and engagement levels with the work release program. Plaintiffs' vague allegations against all Defendants are not enough to plausibly plead each private employer Defendant engaged in federal violations—let alone federal racketeering and forced labor violations.

Plaintiffs' Complaint is an impermissible shotgun pleading. The Complaint contains few if any pertinent specific allegations against the Automotive Defendants. The omission is unsurprising given the severe legal deficiencies of their claims and the limited, if any, factual averments Plaintiffs have to support their claims. The Complaint must be dismissed as an impermissible shotgun pleading.

## IV.     PLAINTIFFS CANNOT ESTABLISH COGNIZABLE CLAIMS AGAINST THE AUTOMOTIVE DEFENDANTS UNDER COUNT I THE TRAFFICKING VICTIMS PROTECTION ACT.

Plaintiffs incorrectly cite the statute giving rise to their private cause of action. Enacted as part of the Trafficking Victims Protection Act of 2000 ("TVPA"), 18

U.S.C. § 1589(b) holds criminally liable "[w]hoever knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means." 18 U.S.C. § 1595(a) provides a private cause of action for any victim of a violation of § 1589. Plaintiffs' Complaint makes clear they assert a "private cause of action" for the alleged § 1589 violations which must be brought under § 1595.[2]

Plaintiffs' claims against the Automotive Defendants are premised on alleged violations of Sections 1589(b) and 1595. (Doc. 1 at ¶ 210.) More specifically, Plaintiffs in their Complaint assert that the Automotive Defendants "knowingly benefitted, financially and otherwise, from the participation in ADOC's work-release and work-center programs, knowing or in reckless disregard of the fact that their lucrative joint venture with ADOC has engaged in the providing or obtaining of labor or services from Plaintiffs" by means of force, physical restraint, serious harm, abuse of law or legal process, and/or threats. (*Id.*)

The Eleventh Circuit holds that in order to state a "beneficiary claim" under 18 U.S.C. § 1595(a), "a plaintiff must plausibly allege that the defendant (1)

---

[2] This distinction is critical as § 1589 carries criminal penalties whereas § 1595 does not. (*See e.g*., 18 U.S.C. §§ 1589(d) and 1595.)

knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726 (11th Cir. 2021). For the reasons set forth below, the Complaint fails to state any claim against the Automotive Defendants and should therefore be dismissed as a matter of law.

### A.    Plaintiffs' Conclusory Shotgun Pleading Allegations Are Insufficient To State a Claim Against the Automotive Defendants.

In addition to the shotgun pleading deficiencies previously discussed, Plaintiffs' claims must fail because Plaintiffs fail to allege non-conclusory allegations that the Automotive Defendants knew or should have known the alleged "venture" was engaged in forced labor unlawful under the TVPA, 18 U.S.C. § 1589(b) and the pleading rules require more than threadbare allegations that Defendants "knew or should have known" the State was engaged in forced labor unlawful under the TVPA. In the scant allegations actually alleged against the private employer Defendants, Plaintiffs allege:

- "Each work-release and work-center employer knew or recklessly disregarded that the incarcerated labor provided through its contracts with the ADOC was coerced."

- "The private and public employers that willing participate in these programs have agreed to collaborate with ADOC to enforce its

explicitly coercive disciplinary rules as a condition of gaining access to cheap coerced labor …."

- "These employer defendants have played and continue to play an active role in the forced-labor enterprise, and they knowingly receive substantial financial and other benefits because of their participation."

(Doc. 1 at ¶¶ 137-38, 133.) Completely absent from these allegations are sufficient facts to create a reasonable inference that the Automotive Defendants "knew or should have known" of the alleged forced labor scheme. For example, there are no allegations supporting who at each of the private employers had knowledge of the alleged scheme, what these individuals knew, or that these individuals personally witnessed any alleged misconduct. Further, the Complaint fails to allege any facts supporting that the private employers in any way enforced coercive disciplinary measures or "collaborated" to enforce disciplinary measures. Plaintiffs never allege any detail behind the private employer Defendants' alleged knowledge, such as who, where, when, or how, aside from their general statements of knowledge. Plaintiffs make several conclusory allegations about the private employer Defendants' alleged involvement in the State's alleged coercive practices and parole denials, yet they fail to supply factual content that draws the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). What is required here, and what is missing, are factual allegations of knowledge and participation that render a violation of Section 1595 by the Automotive Defendants plausible on its

face. Without any supporting facts, Plaintiffs' claims remain conclusory, generalized, and unsupported. And, the Court cannot rely on such conclusory allegations.

### B. Plaintiffs Fail to Establish that the Automotive Defendants "Participated" In Any "Venture."

A beneficiary claim requires Plaintiffs to allege and prove that the Automotive Defendants "participated in a venture that violated the [TVPA]." *Red Roof Inns*, 21 F.4th at 726. "'[P]articipation in a venture' requires that the [plaintiff] allege that the franchisors took part in a common undertaking or enterprise involving risk and potential profit." *Id.* at 725. "[T]he relevant case law requires more than receipt of a passive benefit to satisfy the TVPA's participation in a venture element." *Ratha v. Phatthana Seafood Co.*, No. CV 16-4271, 2017 WL 8293174, at *4 (C.D. Cal. Dec. 21, 2017), *aff'd*, 35 F.4th 1159 (9th Cir. 2022)

Plaintiffs have made no such allegations here as to the Automotive Defendants, nor can they. As to the Automotive Defendants, Plaintiffs only allegations summarily state that the Automotive Defendants "knowingly benefitted, financially and otherwise, from the participation in ADOC's work release and work center programs" (Doc. 1 at ¶ 210.) These vague and conclusory allegations are insufficient to state a claim under a plain reading of the statutory text. They do not describe any participation in which the Automotive Defendants allegedly engaged. The simple receipt of labor services for which the Automotive Defendants paid the

prevailing wage rates as agreed upon under the work release agreement does not rise to the level of "participation in a venture" contemplated by the TVPA.

The Eleventh Circuit's holding in *Red Roof Inns* is instructive. In *Red Roof Inns*, the plaintiffs alleged that they were trafficked at the hotels that the franchisors licensed to franchisees, and that the franchisors knowingly benefitted from the percentage of rental revenue that they received from the rooms rented by the traffickers. *Red Roof Inns*, 21 F.4th at 726-27. The Eleventh Circuit held that the plaintiffs had not plausibly alleged that the franchisors took part in a common sex trafficking undertaking or enterprise. *Id.* at 727. While the franchisors managed and "were inextricably connected to the renting of rooms," financially benefitted from renting those rooms to traffickers, and trained the managers who served as police lookouts, these allegations were insufficient to allege a common sex trafficking undertaking or enterprise. *Id.* at 726-27. The Eleventh Circuit found insufficient the allegations that the franchisors investigated the hotels and read online reviews describing prostitution and crime at the hotels. *Id.* at 727*; see also K.H. v. Riti, Inc.,* No. 23-11682, 2024 WL 505063, at *4 (11th Cir. Feb. 9, 2024) (relying on *Red Roof Inns* and holding that plaintiff failed to state a § 1595 claim because even if franchisee directly rented the rooms to the sex traffickers there were no allegations that support a finding that the franchise "participated in the *sex trafficking* venture") (emphasis added).

Like the franchisor and franchisee in *Red Roof Inns* and *Riti*, the Automotive Defendants simply received labor services through a State sponsored program and paid the prevailing wage rate. While the Automotive Defendants are "inextricably connected" to participating in the State sponsored program and receiving labor services, there are no allegations that would support a finding that Automotive Defendants participated in a *forced labor* venture. Plaintiffs do not allege that the Automotive Defendants engaged in any express or implied threats of force or serious harm. The Automotive Defendants were not involved in any manner in parole decisions. The Automotive Defendants had no control over how incarcerated workers were treated and disciplined in the prisons. As the Eleventh Circuit makes clear, "allegations of financial benefit alone are not sufficient to establish that the defendant participated in a [forced labor] venture and observing signs of [forced labor] 'is not the same as participating in it.'" *Riti,* 2024 WL 505063, at *4 (quoting *Red Roof Inns*, 21 F.4th at 726).

Plaintiffs assert that private employer Defendants participated in a venture because pursuant to the ADOC work release agreement employers must "'comply with … all ADOC rules and regulations,' and if an incarcerated person 'fails to follow any rule, or refuses to work as requested, notice shall be given in writing to the [ADOC] J[ob] P[lacement] O[fficer]/Designee.'" (Doc. 1 at ¶ 49.) However, this "written notice" when an employee refuses to work—which could be for any reason

not just because the worker believes they are being forced to do so—is a normal criteria that any run-of-the-mill staffing arrangement may require. This provision in no way establishes that Plaintiffs "participated" in a venture of forced labor in violation of federal law. *Salem v. Mich. State Univ.*, No. 1:19-cv-220, 2021 WL 1381149, at *6 (W.D. Mich. April 13, 2021) (noting "there is a difference between harm that arises as a natural consequence of the employee's decision to cease work and harm that would not arise as a natural consequence but is intentionally inflicted or threatened by the employer if the victim refuses to continue working").

Further, Plaintiffs' allegations of "participation" in the forced labor scheme are directly refuted by their allegations that private employers have written letters to the Parole Board "specifically recommending [workers] for parole in light of … strong work performance." (Doc. 1 at ¶ 149.) In fact, private employers have written such letters advocating for parole even though Plaintiffs have refused to perform work. (*Id*. ("In fact, he declined to work for KFC in 2019 ….  His manager who supervised his work at that KFC wrote a letter to the Parole Board specifically recommending him for parole in light of his strong work performance.").) There is simply no evidence that the Automotive Defendants participated in the venture of *forced labor*.

There are no factual allegations that the Automotive Defendants participated in anything more than a State sponsored program that offered a staffing arrangement.

Thus, Plaintiffs' TVPA claims against the Automotive Defendants are due to be dismissed.

> **C.    Plaintiffs fail to plead facts that create a reasonable inference that the Automotive Defendants "knew or should have known" they were participating in conduct that violated the TVPA.**

The Complaint fails to set forth any factual averments suggesting the Automotive Defendants knew or should have known they were participating in an illegal venture of forced labor. "Knowledge requires '[a]n awareness or understanding of a fact or circumstance.'" *Red Roof Inns*, 21 F.4th 714 at 725 (quoting *Knowledge*, Black's Law Dictionary (11th ed. 2019)). "Constructive knowledge, on the other hand, is that knowledge which 'one using reasonable care or diligence should have.'" *Id.* (quoting *Constructive Knowledge*, Black's Law Dictionary (11th ed. 2019)).

Summarily, Plaintiffs allege the Automotive Defendants knew or should have known of the alleged forced labor because: (1) Plaintiffs were subject to force and threats of violence by the ADOC and its agents if they did not participate in the program, (2) "private and public employer Defendants also knew or should have known that Chair Gwathney and the other Parole Board members were conspiring with Governor Ivey and Attorney General Marshall to discriminatorily deny parole" (Doc. 1 at ¶ 142); (3) the "exceptionally violent" prison conditions are widely publicized placing Defendants on notice that "by virtue of the incarceration status"

any such labor outside the facilities is forced (*id.* at ¶¶ 139-40); and (4) the ADOC deducts significant money from the payments made by the private employers. Here, dismissal is grounded in Plaintiffs' failure to establish allege facts giving rise to a reasonable inference of knowledge or constructive knowledge.

Taking each in turn, nowhere in the Complaint do Plaintiffs ever set forth any factual allegations that would suggest the Automotive Defendants had direct knowledge that the labor services they were receiving were unlawful forced labor. Plaintiffs have made no allegations that the Automotive Defendants were aware of or witnessed the alleged threats of force, physical restraint or economic duress. There are no allegations as to who was aware, when they were aware and of what they were aware.

Next, Plaintiffs have made no allegations that the Automotive Defendants participated in or were involved in any way in the parole process. There are no allegations who at the Automotive Defendants conspired with the Parole Board, what was agreed to, when the agreement was made or any other factual allegations to support that the Automotive Defendants were in any way involved in the parole process and thereby, had knowledge of the alleged forced labor scheme.

Next, Plaintiffs assert that knowledge is established because "[t]he exceptionally violent conditions in ADOC's medium and maximum security facilities," the DOJ reports regarding and subsequent lawsuits regarding the

"extreme levels of guard-on prisoner and prisoner-on-prisoner violence in the ADOC," and the media reports regarding prisoner strikes are "public knowledge." (Doc. 1 at ¶¶ 140-41.) Plaintiffs' arguments are unpersuasive. First, these allegations establish, if at all, that the Automotive Defendants knew of questionable prison conditions—not that they were receiving forced labor. It does not necessarily follow that because the Automotive Defendants knew State prison facilities had questionable conditions, that the Automotive Defendants thereby knew or should have known any labor received by a State sponsored program was forced labor.

Further, Plaintiffs' allegations do not establish that the Automotive Defendants knew or should have known that the prisoners they received for work placement came from the facilities subject to the DOJ's report or media coverage. Plaintiffs cannot establish that the Automotive Defendants had a duty to search out whether these incarcerated workers came from the facilities alleged to have questionable conditions in that they "should have known" the labor was forced.

Finally, the alleged deductions from incarcerated workers' wages do not support a reasonable inference that the Automotive Defendants had knowledge of or constructive knowledge of the alleged forced labor scheme. As plead, the Automotive Defendants deduct only the required employer holdings, (Doc. 1 at ¶ 15), the Automotive Defendants provide the paycheck to the ADOC, (*id*.), and the ADOC makes deductions from "the gross earnings paid by the private employers."

(*Id.*) The Complaint identifies no facts whatsoever that the Automotive Defendants know how much is deducted from these paychecks after the checks are provided to the ADOC, who at the Automotive Defendants had such information imputing liability to the Automotive Defendants or any facts whatsoever to support that the Automotive Defendants knew or should have known of the forced labor by way of the deducted wages. Even more, it is not the Automotive Defendants obligation to seek out whether a State may make lawful deductions from prisoners for restitution, family support or other costs to support the workers' incarceration. Thus, Plaintiffs cannot establish that such deductions—even if the Automotive Defendants knew of them—should have placed them on notice of the alleged forced labor scheme.

Plaintiffs have offered no allegations describing the Automotive Defendants awareness of the illegality as contemplated by the TVPA. Plaintiffs Complaint is so lacking in substance that it fails to plausibly demonstrate the knowing participation in a venture to violate the TVPA by each Automotive Defendant. Plaintiffs' TVPA claims in Count I must be dismissed against the Automotive Defendants.

## V.    PLAINTIFFS CANNOT ESTABLISH COGNIZABLE RICO CLAIMS AGAINST THE AUTOMOTIVE DEFENDANTS.

### A.    Standard of Review.

RICO is a unique cause of action concerned with eradicating organized, long-term criminal activity. *U.S. Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 317-18 (4th Cir. 2010) (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 233, 239

(1989)). RICO penalties are "drastic" and courts "must … exercise caution to ensure that RICO's extraordinary remedies do not threaten the ordinary run of commercial transactions; that treble damage suits are not brought against isolated offenders for their harassment and settlement value" *Id.* at 317 (citation omitted).

Defending speculative RICO actions imposes "devastating" costs. *Fuji Photo Film U.S.A., Inc. v McNulty*, 640 F. Supp. 2d 300, 308-09 (S.D.N.Y. 2009) (a RICO claim can exact a "devastating" cost to defendant's reputation and finances). Conclusory allegations, such as those presented here, fail to state actionable claims. *See, e.g.*, *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283 (11th Cir. 2010); *Cruz v. Cinram Int'l, Inc.*, 574 F. Supp. 2d 1227, 1236-37 (N.D. Ala. 2008).

**B.    Plaintiffs Fail to Satisfy the Requisite Pleading Requirements As to Each Automotive Defendant Under the Rule 12(b)(6) Plausibility Standard.**

"In a case involving multiple defendants ... the complaint should inform **each defendant** of the nature of his alleged participation of the fraud." *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1317 (11th Cir. 2007) (emphasis added) (citation omitted) (explaining that the complaint alleging a RICO claim did not meet the Rule 9(b) particularity standard because it was devoid of specific allegations with regards to each defendant and that the plaintiffs "lumped together all of the defendants in their allegations of fraud"). Thus, when charging RICO violations against multiple defendants, it is necessary to plead with enough

specificity to inform each defendant of the facts forming the basis of the conspiracy charge and therefore the allegations must delineate among defendants as to their participation in or responsibilities for acts, which are the subject of the action. *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1316-19 (S.D. Fla. 2014). Plaintiffs' RICO claim must be dismissed because the Complaint pleads allegations against the private employer Defendants collectively without any attempt to set forth what each particular Defendant is alleged to have done to violate RICO's provisions. This grouping together of Defendants by Plaintiffs fails to satisfy notice pleading rules and does not place Defendants on notice of the claims against each of them. *See Section III.*

### C.    Plaintiffs Cannot Establish a Violation of Section 1962(c).

A claim under Section 1962(c) requires proof that defendants: (1) conducted or participated in (2) the activities of an enterprise (3) through a pattern (4) of racketeering activity. *See, e.g., Reves v. Ernst & Young*, 507 U.S. 177 (1993). "An act of racketeering is commonly referred to as a predicate act . . . [and] is shown when a racketeer commits at least two distinct but related predicate acts." *Boyd v. TTI Floorcare N. Am.*, 230 F. Supp. 3d 1266, 1280 (N.D. Ala. 2011) (citation omitted), *aff'd sub nom. Green v. Bissell Homecare Inc.,* 476 F. App'x 238 (11th Cir. 2012) (per curiam).

1.   *Plaintiffs Fail to Plead Facts Showing the Automotive Defendants were Part of the Alleged Enterprise.*

The Supreme Court has instructed that an association-in-fact enterprise must possess three qualities: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). Although "the very concept of an association in fact is expansive," *id.* at 944, these requirements make pleading an association-in-fact enterprise "more challenging." *Almanza v. United Airlines, Inc.,* 851 F.3d 1060, 1067 (11th Cir. 2017). Even more, Plaintiffs must not just allege that the purported enterprise shared a common purpose, but that purported enterprise shared a ***fraudulent purpose*** giving rise to a RICO claim. *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1212 (11th Cir. 2020) (emphasis added). Here, Plaintiffs have failed to plausibly allege that the Automotive Defendants shared a qualifying, fraudulent purpose with the purported RICO enterprise and that the Automotive Defendants were associated in fact as to that enterprise.

The Complaint charges that the RICO enterprise had "the common purpose of extracting profit through a pattern of daily forced labor from incarcerated Alabamians." (Doc. 1 at ¶ 134.) However, the Eleventh Circuit has made clear: "[a]n abstract common purpose, such as a generally shared interest in making money, will not suffice. Rather, where the participants' ultimate purpose is to make money for

themselves, a RICO plaintiff must plausibly allege that the participants shared the purpose of enriching themselves *through a particular criminal course of conduct.*" *Cisneros,* 972 F.3d at 1211 (emphasis added) (citations omitted).

Plaintiffs allege no facts that plausibly support an inference that the Automotive Defendants shared a criminal purpose with the alleged State Defendants to secure cheap labor through forced labor, as opposed to the obvious alternative explanation that the Automotive Defendants were trying to participate in a State proffered program to secure labor to staff its facilities to make profit — a purpose insufficient to establish a RICO violation. Plaintiffs' allegations offer no basis for inferring that the Automotive Defendants shared a fraudulent purpose with the State Defendants and Plaintiffs' allegations go no further than suggesting that the Automotive Defendants participated in a State offered program that mirrored a run of the mill staffing, contractual relationship modeled like that of many legitimate staffing agreements.

Plaintiffs allege that the Automotive Defendants' fraudulent purpose is evidenced by the Automotive Defendants gaining access "to workers who are compelled to work for them at substantially lower costs to the employer than free-world employers performing the same work." (Doc. 1 at ¶ 134.) But this wholly conclusory allegation is not supported by Plaintiffs' own allegations. Plaintiffs offer no factual averments from which this court can infer that *the Automotive Defendants*

decided on this purpose with the other defendants or that the Automotive Defendants' typical participation in a State sponsored program went beyond the bounds of a legitimate business relationship into the realm of a purpose to engage in forced labor violations. Absent from the Complaint are non-conclusory allegations showing that the Automotive Defendants saved money by using workers in the work release program or that workers in the work release program were cheaper than other laborers recruited from the "free world." Indeed, the Complaint acknowledges that the Automotive Defendants agreed to pay the prevailing wage rate and this rate was "legally required condition for participation in the work-release program." (Doc. 1 at ¶ 20.)[3] Even more, the Complaint acknowledges that private employers in fact, paid more than the state employers. (*Id*. at ¶ 34 ("ADOC's array of forced labor-leasing operations reveals that Black people with minimum security classifications are disproportionately assigned to lower-paid work-center jobs for public employers **instead of being assigned to higher-paid work-release jobs for private employers**") (emphasis added)).

---

[3] Plaintiffs allege this prevailing wage "appears regularly flouted" (*see id.*), but Plaintiffs fail to allege the Automotive Defendants "regularly flout" this prevailing wage nor can they since the named Plaintiffs never worked for the Automotive Defendants. Therefore, they cannot establish a common fraudulent purpose by the Automotive Defendants.

Thus, passing over the Complaint's wholly conclusory and speculative allegations, there is no plausible allegation that the Automotive Defendants knowingly associated with the purported enterprise for the common purpose of profiting from cheap labor by *forced labor*, an alleged common purpose sufficient to find a RICO enterprise, as opposed to the "obvious alternative explanation," *Twombly*, 550 U.S. at 567, that the Automotive Defendants sough to act lawfully by participating in a State offered program. *See Ray v. Spirit Airlines*, 836 F.3d 1340, 1352-53 (11th Cir. 2016). Resultantly, Plaintiffs' RICO claim should be dismissed for failure to establish an enterprise.

2.    *Plaintiffs Fail to Plead Facts Showing the Automotive Defendants Participated in the Operation or Management of the Enterprise's Affairs.*

Plaintiffs' allegations are insufficient to demonstrate that the Automotive Defendants "participated in the operation or management" of the alleged forced labor scheme, as required under RICO Section 1962(c). In *Reves*, 507 U.S. at 180-86, the Supreme Court clearly set forth the type of facts a plaintiff must allege to support the "conduct" element of a RICO charge. The Court held that, in order to satisfy the "conduct" element of § 1962(c), a plaintiff must allege that the defendant "participated in the operation or management of the enterprise itself," and that the defendant played "some part in directing the enterprise's affairs." *Id.* at 179, 183. "[L]iability depends on showing that the defendants conducted or participated in the

conduct of the 'enterprise's affairs,' not just their own affairs." Id. at 185. In short, mere participation in the activities of the enterprise is insufficient; the defendant must participate in the operation or management of the enterprise. In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 370 (3d Cir. 2010). "This test is a very difficult test to satisfy." Parm v. Nat'l Bank of Cal., N.A., 242 F. Supp. 3d 1321, 1348 (N.D. Ga. 2017) (citation omitted). "[S]imply performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to subject a defendant to RICO liability under § 1962(c)….") Id. at 1349 (citation omitted).

Here, Plaintiffs assert that the private employer Defendants "participated" by "commit[ing] multiple related acts of unlawful coercing" and "knowingly benefit[ed] from such forced labor." (Doc. 1 at ¶ 218.) First, Plaintiffs' factual averments do not support their conclusory allegations. Plaintiffs' Complaint is devoid of any facts identifying how each of the Automotive Defendants engaged in coercive acts, who engaged in such acts, when such action was taken or any other details of each Automotive Defendants coercive actions. Indeed, the Complaint does not plausibly allege that the Automotive Defendants were aware of coercive pressures to perform work. The alleged coercive threats, violence and other conduct occurred primarily within the prison system and there are no plausible allegations imputing knowledge to the Automotive Defendants.

The Complaint does not contain factual allegations that would lead to any conclusion that the Automotive Defendants participated in the parole process, made decisions in the parole process, determined who was eligible and permitted to participate in the work release program, knew of the wages received by the incarcerated workers after the Automotive Defendants provided the money to the ADOC or any other allegations of how the Automotive Defendant directed or managed the alleged forced labor scheme.

Further, solely obtaining a benefit from alleged forced labor is insufficient to meet the *Reve*s "operation or management test." The conclusory allegations, at most, simply indicate that the Automotive Defendants accepted for placement workers in accordance with a State sponsored program and staffing business relationship. The averments in the Complaint do not allege the Automotive Defendants took some part in directing or participating in the State's alleged forced labor scheme. *See Goren v. New Vision Int'l, Inc*., 156 F.3d 721, 728 (7th Cir. 1998) ("[S]imply performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to subject [a defendant] to RICO liability under § 1962(c); instead, the individual must have participated in the operation and management of the enterprise itself."); *Montoya v. PNC Bank*, N.A., No. 14-20474, 2014 WL 4248208, at *20 (S.D. Fla. Aug. 27, 2014) (finding that, where the plaintiffs alleged that another defendant paid kickbacks to a bank defendant, "Plaintiffs have only alleged that [the

other defendant and the bank] are participating in an enterprise," and "have not sufficiently pled who is directing the affairs of the enterprise"). Conclusory allegations that because the Automotive Defendants participated in a State work release program they then "participated" in the management of the Enterprise's affairs of forced labor are insufficient. Plaintiffs' allegations fail to show that private employers, in carrying out ordinary staffing contractual functions with the State, played some part in the directing the alleged forced labor. Absent a showing of the Automotive Defendants, management, or even involvement in *forced la*bor, Plaintiffs claim must fail.

### 3.    *Plaintiffs Fail to Allege Racketeering Activity.*

In order to establish a claim for an alleged RICO violation, Plaintiffs must not only plead adequate facts supporting their § 1962(c) RICO claim, but they also must plead the elements required to establish a violation of the alleged predicate acts. *See, e.g. Trollinger v. Tyson Foods, Inc.* 543 F. Supp. 2d 842, 845 (E.D. Tenn. 2008). Plaintiffs allege a pattern of racketeering activity through forced labor in violation of the TVPA. For the reasons discussed above in *Section V*, Plaintiffs cannot assert a viable forced labor claim under 18 U.S.C. § 1589(b) (Count I) against the Automotive Defendants. For that reason, Plaintiffs' racketeering claim, which is predicated on alleged forced labor, should be dismissed as to the Automotive Defendants.

### D.    Plaintiffs Cannot Establish Standing to Bring a Cause of Action Under 18 U.S.C. § 1962(c).

Plaintiffs' RICO claim fails for the second and independent reason: it fails to satisfy civil RICO's statutory standing requirements under § 1964.[4] To bring a private cause of action under § 1962(c), a plaintiff must show he was "injured in his business or property <u>by reason of</u> a violation of section 1962." *Spirit Airlines*, 836 F.3d at 1349 (quoting 18 U.S.C. § 1964(c)). "There is no ambiguity in Supreme Court or Eleventh Circuit precedent about the requirement that a civil RICO claim must sufficiently plead proximate cause." *Spirit Airlines,* 836 F.3d at 1351. This standing requirement comes directly from Section 1964(c) of the RICO statute requiring plaintiffs establish (1) requisite injury to "business or property" and (2) that the injury was "by reason of" the predicate RICO violation. *Id.* at 1348 (citing 18 U.S.C § 1964(c)).

Proximate cause requires "some direct relation between the injury asserted and the injurious conduct alleged;" a link that is "too remote," "purely contingent," or "indirec[t]" is insufficient. *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 269-

---

[4] Because RICO injury and RICO violation are independent requirements for private plaintiff recovery, a court need not consider whether there has been sufficient injury when a plaintiff fails to show that a predicate act has been committed. *See Am. Dental Ass'n*, 605 F.3d at 1293. Conversely, a court may dispose of a civil RICO claim solely on the basis of the plaintiff's failure to show cognizable injury. *See e.g. Doe v. Roe*, 958 F.2d 763, 770 (7th Cir. 1992); *Geiss v. Weinstein Co. Holdings, LLC,* 383 F. Supp. 3d 156, 171 (2019).

71, 274 (1992). Courts should scrutinize proximate causation at the pleading stage and carefully evaluate whether the injury pled was proximately caused by the claimed RICO violations. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 460-61 (2006); *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 708-09 (11th Cir. 2014); *Liquidation Comm'n of Banco Intercontinental*, *S.A. v. Renta*, 530 F.3d 1339, 1350 n.14 (11th Cir. 2008) (noting that "RICO standing is really just a heightened proximate causation standard, as it requires a claimant to prove that he was injured in his business or property 'by reason of' the RICO violation" (citing 18 U.S.C. § 1964(c))). "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza*, 547 U.S. at 461. "The fact that an injury is reasonably foreseeable is not sufficient to establish proximate cause in a RICO action -- the injury must be direct." *Spirit Airlines,* 836 F.3d at 1349 (citations omitted); *see also Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 145 (2d Cir. 2018) ("[F]oreseeability and intention have little to no import for RICO's proximate cause test.").

Here, Plaintiffs argue that through the forced labor scheme of Defendants, they suffered the following injuries: (a) named individual Plaintiffs and the Forced Labor Class "lost past, current, and prospective wages and benefits" and (b) Plaintiffs USSW and RWDSU lost "the diversion of financial resources that they

could have otherwise used to further their missions." (Doc. 1 at ¶ 219.) Plaintiffs' allegations do not amount to a showing of direct harm sufficient to support a cause of action.

First, as to named individual Plaintiffs and the forced labor class, Plaintiff's baseless pleading of "loss past, current and prospective wages" do not enable them to avoid dismissal under *Twombly* and *Iqbal*. Plaintiffs' assertions that they received less wages by virtue of the forced labor scheme is wholly speculative. Indeed, Plaintiffs fail to allege the amount they received, the alleged hourly rate they received or any other allegations supporting their assertion that they received less than they would have been provided if Defendants did not allegedly engage in "unlawfully coercing Plaintiffs" to perform work. To the contrary, if Plaintiffs did not perform the work they would have received no wages or benefits. Plaintiffs fail to establish that they would have not incurred such "injuries" "but for" the Defendants' alleged unlawful coercion *i.e.* plaintiffs fail to allege they would have received more wages and benefits absent the unlawful coercing. *See also Walters v. McMahen*, 684 F.3d 435, 444 (4th Cir. 2012) (affirming dismissal of complaint where "the alleged injury suffered by the plaintiffs would be the same" even without the fraudulent documentation at issue). Thus, Plaintiffs' cannot establish "but for" causation as to their alleged loss wages and benefits.

Next, the labor organization Plaintiffs USSW and RWDSU allege damages of "diversion of financial resources that they could have otherwise used to further their missions." (Doc. 1 at ¶ 219.) More specifically, labor organization Plaintiffs allege that they were harmed because:

- The employment of incarcerated workers makes it more difficult to improve wages and working condition;

- The labor organization has "expended time and resources on addressing the impact" of incarcerated workers; and

- If granted parole, incarcerated works "**could** be free workers and **could** freely become members of RWDSU."

(*Id.* at ¶¶ 155-56) (emphasis added.) These alleged damages are highly speculative, indirect and purely contingent and therefore, cannot confer RICO standing. First, the chain of causation from alleged coercive labor to the incarcerated worker one day receiving parole and potentially working for an entity represented by labor organization Plaintiffs contains several presumptions and indefinite links that can in no way establish the Supreme Court's 'but for' standard. Next, Plaintiffs fail to establish *how* the forced labor makes it difficult to represent its members or how if such labor was not forced they would otherwise have legal entitlement to represent these workers. In summary, even if Plaintiffs can prove forced labor occurred, the damages attributable to the RICO violation would be difficult to determine because factors aside from Defendants' misconduct could account for labor organizations difficulty in improving wages and working conditions and their ability to represent

incarcerated workers. Ultimately, Plaintiff's lack of supporting allegations do not enable this Court "to draw reasonable inference" that direct injury of lost wages, benefits and loss representation opportunities resulted from the alleged racketeering activities. *See, e.g., Hall v. Thomas*, 753 F. Supp. 2d 1113, 1155 (N.D. Ala. 2010) ("failure to causally link any wage depression that may have occurred to the RICO predicate acts"); *Trollinger*, 543 F. Supp. 2d at 859 (failure to show direct injury between the alleged illegal hiring scheme and depressed wages).

Plaintiff s do not and cannot establish statutory standing under § 1964 due to their failure to allege any direct link between the alleged racketeering activities and the alleged harm suffered. Their RICO claim must be dismissed.

## VI.    PLAINTIFFS' ARTICLE 1, SECTION 32 OF THE ALABAMA CONSTITUTION CLAIM, IS DUE TO BE DISMISSED.

Alabama Constitution Article I, Section 32 states, in full, "[t]hat no form of slavery shall exist in this state; and there shall not be any involuntary servitude." Plaintiffs allege Article I, Section 32 claim is premised on the allegation that:

> Defendants have subjected Plaintiffs and the members of the Forced Labor Class to involuntary servitude by forcing them to work, whether they want to or not, through the use or threatened use of extended incarceration, increased physical restraint and confinement, physical injury, law or legal process, and/or physical, psychological, and economic coercion.

(Doc. 1 at ¶ 223.) Fatal to Plaintiffs' constitutional claim is the simple fact that Plaintiffs plead no factual averments supporting that the Automotive Defendants

subjected them to involuntary servitude.[5] Plaintiffs do not allege they worked for the Automotive Defendants. Intrinsically, Plaintiffs do not allege that the Automotive Defendants forced Plaintiffs to work, threatened Plaintiffs, physically or legally confined Plaintiffs or otherwise subjected them to economic duress. There are no allegations whatsoever that the Automotive Defendants engaged in conduct that would amount to a constitutional violation under Article I, Section 32. Thus, Plaintiffs' claims must be dismissed.

## VII. PLAINTIFFS' CONSPIRACY CLAIM IN VIOLATION OF THE KKK ACT CLAIM IS DUE TO BE DISMISSED.

Section 1985(3) provides a cause of action for victims of a conspiracy to deprive a person of the equal protection of the laws or equal privileges and immunities under the laws. 42 U.S.C. § 1985(3); *Childree v. UAP/GA CHEM, Inc.*, 92 F.3d 1140, 1146-47 (11th Cir. 1996). Section 1986 provides a cause of action against anyone who has "knowledge that any of the wrongs conspired to be done" under § 1985 "are about to be committed," fails to prevent the commission of those wrongs, despite having the power to do so. 42 U.S.C. § 1986. Plaintiffs' Complaint alleges a § 1985(3) violation against State Defendants, (*see* Doc. 1, Count IX & X),

---

[5] It appears Plaintiffs only seek equitable relief under Count III. To the extent Plaintiffs seek any monetary damages based on the alleged constitutional violation, their claim must fail. Alabama does not recognize a private cause of action "for monetary damages based on violations of the provision of the Constitution of Alabama." *See Mathews v. Ala. A&M Univ.*, 787 So. 2d 691, 698 (Ala. 2000) (collecting cases).

and a § 1986 violation against all Defendants, including the Automotive Defendants, (*see id.* at Count XI). For the reasons set forth below, Plaintiffs' § 1986 claims against the Automotive Defendants are due to be dismissed.

### A. Plaintiffs' claims must fail because they cannot allege a plausible conspiracy claim under § 1985.

To find liability under § 1986 there must be a violation of §1985. Failure to establish any right to relief under § 1985 justifies dismissal of interrelated and dependent cause of action under § 1986. *Dowsey v. Wilkins*, 467 F.2d 1022 (5th Cir. 1972); *Morast v. Lance*, 631 F. Supp. 474 (N.D. Ga. 1986), *aff'd*, 807 F.2d 926 (11th Cir. 1987), *abrogated on other grounds by Haddle v. Garrison,* 525 U.S. 121 (1998). Thus, to the extent this Court dismisses Plaintiffs' § 1985(3) claims against the State Defendants, Plaintiffs § 1986 claim against the Automotive Defendants must be dismissed.

### B. Plaintiffs' § 1986 claims are time barred.

Plaintiffs' claims must fail because they are time barred. Section 1986 claims must be brought within one year after the cause of action accrues. 42 U.S.C. § 1986. Plaintiffs alleged that State Defendants formed and implemented a conspiracy for the purpose of denying parole to Plaintiffs based on their race to the consequence of remaining imprisoned and subject to involuntary servitude. (Doc. 1 at ¶ 266.) Plaintiffs allege that "in June of 2019 … the Attorney General introduced, and Alabama passed, a law to give to give the Governor more oversight of the Parole

Board and the power" to achieve the alleged conspiracy. (*Id.* at ¶ 93.) The Complaint then alleges, "[w]hen parole hearings resumed—and in the years since then—the Parole Board's own records make abundantly clear that the Governor, Attorney General, and Parole Board members agreed to, and did in fact, abandon the objective, evidence-based framework required by the JRA." (*Id.* at ¶ 98.) Thus, as alleged, Defendants and Plaintiffs "had knowledge of the wrongs that Defendants Ivey, Marshall, Gwathney, Littleton and Simmons conspired to … committ[]" for the past three years and Plaintiffs waited over three years to bring their action. (*See e.g.*, *id.* at ¶ 277.) As a result, Plaintiffs § 1986 claims are time barred by the one year statute of limitation and must be dismissed.

### C.    Plaintiffs cannot establish a § 1985 claim.

A § 1986 plaintiff must show that: (1) the defendant had actual knowledge of a § 1985 conspiracy, (2) the defendant had the power to prevent or aid in preventing the commission of a § 1985 violation, (3) the defendant neglected or refused to prevent a § 1985 conspiracy, and (4) a wrongful act was committed. See *Perez v. Cucci*, 725 F. Supp. 209, 254 (D.N.J. 1989) (citations omitted), *aff'd*, 898 F.2d 142 (3d Cir. 1990).

A critical element of Plaintiffs' claim is that the Automotive Defendants have actual knowledge of the § 1985 conspiracy. *Id*. Plaintiffs plead no factual averments showing knowledge of a conspiracy between Defendants Ivey and Marshall, (Doc.

1, Count X), or the conspiracy between State Defendants, (*id.* at Count IX). Plaintiffs do not allege how the Automotive Defendants have such knowledge or that the Automotive Defendants participated in any manner in the alleged legislative changes, selection of Parole Board members, subsequent Parole Hearings, denials of parole or any other conduct that supports Defendants had the requisite "knowledge" of a conspiracy.

Further, Plaintiffs have not plausibly alleged that the Automotive Defendants had the power to prevent or aid in preventing the commission of the conspiracy. "To give meaning to the full text of the statute … to hold a private individual responsible under § 1986, the person must be someone with actual authority to compel others to act or refrain from acting." *Smith v. Trump*, No. 21-cv-02265, 2023 WL 417952, at *7 (D.C. Dist. Jan. 26, 2023), *aff'd,* 2023 WL 9016458 (D.C. Cir. Dec. 29, 2023). Here, Plaintiffs do not allege sufficient facts to plausibly establish that the Automotive Defendants had power over Governor Ivey and Attorney General Steve Marshall or any other State Defendants. More specifically, Plaintiffs do not allege that the Automotive Defendants have any power over State Defendants with regarding to granting or denying parole or the methods they use to make such decisions. The Complaint makes no allegations that would explain the power private employer Automotive Defendants have over the State Defendants' inherent law making powers and parole oversight powers.

Nor have Plaintiffs alleged sufficient facts to establish the Automotive Defendants had the power to prevent or aid in the preventing of alleged misconduct. To the contrary, Plaintiffs' own allegations show that the private employers have no control over whether an individual is paroled.  (Doc. 1 at ¶ 149 ("Mr. Ptomey had a parole hearing in September 2022 at which the Parole Board denied him parole and set him off for three years…. His manager who supervised his work at that KFC wrote a letter to the Parole Board specifically recommending him for parole in light of his strong work performance.").) Thus, none of the Automotive Defendants are alleged to have had the requisite "power" to be held liable under § 1986 and accordingly, Plaintiffs' claim should be dismissed as to each of them.

## VIII.    PLAINTIFFS' UNJUST ENRICHMENT CLAIM IS DUE TO BE DISMISSED.

To establish an unjust enrichment claim, Plaintiffs are required to prove the Automotive Defendants "hold[] money which, in *equity and good conscience*, belongs to [Plaintiffs] or holds money which was improperly paid to [Automotive Defendants] because of mistake or fraud." *See Avis Rent A Car Sys., Inc. v. Heilman*, 876 So. 2d 1111, 1123 (Ala. 2003) (quoting *Dickinson v. Cosmos Broad. Co*., 782 So. 2d 260, 266 (Ala. 2000)). A plaintiff is unjustly enriched if his retention of a benefit would be unjust. *Mantiply v. Mantiply,* 951 So. 2d 638, 654 (Ala. 2006). "Retention of a benefit is unjust if …. the recipient of the benefit (here, allegedly [Automotive Defendants]) engaged in some unconscionable conduct, such as fraud,

coercion, or abuse of a confidential relationship." *Jordan v. Mitchell*, 705 So. 2d 453, 458 (Ala. Civ. App. 1997). "In the absence of mistake or misreliance by the donor, or wrongful conduct by the recipient, the recipient may have been enriched, but he is not deemed to have been *unjustly* enriched." *Id.* (citing *Restatement of Restitution: Quasi Contracts and Constructive Trusts* § 2 at 16 (1937)).

Plaintiffs' claim of unjust enrichment is premised on the allegations that Plaintiffs received lower wages and benefits compared to wages that would have been received by non-incarcerated workers had forced labor not been available to the Defendants. (Doc. 1 at ¶ 282.) Plaintiffs' unjust enrichment claim is insufficient as pled. Aside from these conclusory allegations, Plaintiffs fail to allege any facts showing that incarcerated Plaintiffs received lower wages than non-incarcerated workers.

Further, there are no identifiable criteria from which Plaintiffs can assert that the Automotive Defendants have been unjustly enriched at Plaintiffs' expense. As discussed above, Plaintiffs have failed to establish that the Automotive Defendants engaged in any alleged wrongful conduct or any coercive labor practices. There are no facts establishing that absent the alleged coercive practices by the State Defendants, Plaintiffs would have received higher wages. The Automotive Defendants contracted with the State Defendants and were required to pay the prevailing wage. There are no allegations that the Automotive Defendants failed to

pay the prevailing wages. Thus, there is no wrongful conduct on the part of the Automotive Defendants to support that they have been unjustly enriched.

Further, Plaintiffs knew they would receive the prevailing wage rate from the Automotive Defendants by virtue of the contract with the State. At most, Plaintiffs now assert they should have received more money but they do not plead any facts showing a reasonable expectation of compensation as required under an unjust enrichment claim. *See Leigh King Norton & Underwood, LLC v. Regions Fin. Corp*., 497 F. Supp. 3d 1098, 1113 (N.D. Ala. 2020) (granting a motion to dismiss when the defendant's action "foreclose[d] any argument that [plaintiff] could have reasonably expected compensation for its work"). Therefore, the court should dismiss Plaintiffs' unjust enrichment claims.

## IX.    CONCLUSION

For the reasons stated above, this Court should dismiss with prejudice Plaintiffs' Complaint as to the Automotive Defendants.

s/ Michael L. Lucas
Michael L Lucas
Allison Hawkins
Ingu Hwang
BURR & FORMAN LLP
420 North 20th Street, Suite 3400
Birmingham, Alabama 35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100
mlucas@burr.com
ahawkins@burr.com
ihwang@burr.com

*Attorneys for Defendants SL Alabama, LLC, Hwaseung Automotive and Ju-Young Manufacturing, LLC*

## CERTIFICATE OF SERVICE

I certify that on March 29, 2024, I electronically filed the foregoing with the Clerk of the Court through the CM/ECF system, which will automatically generate notice of such filing to the attorneys of record.

s/ Michael L. Lucas
Michael L. Lucas

*One of the Attorneys for Defendants SL Alabama, LLC, Hwaseung Automotive and Ju-Young Manufacturing, LLC*