# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **ROBERT EARL COUNCIL AKA** | ) | |
| **KINETIK JUSTICE, et. al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **CASE NO.: 2:23-CV-00712-CLM-JTA** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **KAY IVEY, et. al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANT KOCH FOODS, LLC'S
## <u>MOTION TO DISMISS PLAINTIFFS' COMPLAINT</u>
## <u>AND SUPPORTING MEMORANDUM OF LAW</u>

RACHEL V. BARLOTTA
KAYLA M. WUNDERLICH
Attorneys for Defendants
Koch Foods, Inc.

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
1901 Sixth Avenue North, Suite 2600
Birmingham, AL 35203
(205)328-0480 Telephone
(205)322-8007 Facsimile

# **TABLE OF CONTENTS**

I.     **INTRODUCTION** ...................................................................1

II.    **FACTS** ...................................................................................1

III.   **STANDARD OF REVIEW**...................................................7

IV.   **ARGUMENT**........................................................................8

      A.    All Plaintiffs lack standing to bring their claims
            against Koch Foods. ....................................................9

           1.    The Organizational Plaintiffs fail to establish
                 standing because they have not alleged a concrete injury..........11

           2.    Even if the Plaintiffs could establish a concrete injury,
                none of the Plaintiffs can establish standing because
                they did not suffer any injury traceable to Koch Foods. ............15

      B.    Plaintiffs' Complaint is an impermissible shotgun pleading. .............17

      C.    Even if Plaintiffs could get past the threshold question
            of standing, which they cannot, they fail to state a claim
            for each of their asserted causes of action...........................19

           1.    Count I under the TVPA is due to be dismissed
                because the Organizational Plaintiffs lack a cause
                of action under the TVPA, and Plaintiffs fail to
                plausibly allege Koch Foods violated the TVPA. .......................19

           2.    Plaintiffs fail to state a RICO claim because they fail
                to show the requisite enterprise and predicate acts. ...................24

           3.    Plaintiffs fail to state a claim under the
                42 U.S.C. 1986 ("KKK Act").....................................27

           4.    Plaintiffs do not have a cause of action under § 32
                of the Alabama Constitution.....................................30

           5.    Plaintiffs fail to state a claim for unjust enrichment. .................31

V.    **CONCLUSION** ........................................................................33

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure Defendant Koch Foods, LLC ("Koch Foods") moves this Court to enter an order dismissing all Plaintiffs' claims against it for the reasons set forth below.

## I.    INTRODUCTION

Koch Foods is not a proper defendant in this case. Specifically, this is a case about coerced prison labor, but none of the ten (10) individual plaintiffs allege they "labored" at Koch Foods.  The only Plaintiff with any connection to Koch Foods is the Retail, Wholesale and Department Store Union, Mid-South Council (RWDSU), in that some of the workers at various Koch Foods entities are represented by the RWDSU. However, the RWDSU fails to plead any facts that, if true, show Koch Foods harmed it or any of its members. Koch Foods is due to be dismissed as Plaintiffs lack standing and fail to state a plausible claim against it.

## II.    FACTS

This suit consists of two groups of Plaintiffs: Individual Plaintiffs and Organizational Plaintiffs. The Individual Plaintiffs are Robert Earl Council, Lee Edward Moore, Lakiera Walker, Jerame Apprentice Cole, Arthur Charles Ptomey, Frederick Denard McDole, Michael Campbell, Lanair Pritchett, Alimireo English, and Toni Cartwright. (Doc. 1 ¶¶ 144-54.) These Plaintiffs all allege they have been denied parole, and that they have performed jobs either in ADOC facilities or while in ADOC custody working for outside employers on work release. *Id.*

Retail, Wholesale and Department Store Union, Mid-South Council (RWDSU) is a labor organization for employees in "various industries, including the poultry processing industry." (Doc. 1 ¶ 155) The Union of Southern Service Workers, Service Employees International Union (USSW) is another labor organization for "the service industry." (*Id.* ¶ 156) The Woods Foundation is a non-profit organization "dedicated to aiding people with wrongful convictions and excessive sentences, particularly in Alabama." (*Id.* ¶ 157) These entities comprise the Organizational Plaintiffs.

There are also two group of Defendants: State Defendants and Employer Defendants. Plaintiffs' claims against State Defendants concern their alleged creation and administration of the ADOC work release program and operation of the parole system. The State Defendants include Alabama Governor Kay Ivey, Alabama Attorney General Steve Marshall, the board members of the Alabama Board of Pardons and Paroles as, the ADOC under Commissioner John Hamm, and John Cooper of the Alabama Department of Transportation.

Plaintiffs' claims against the Employer Defendants are based on the employers' alleged contracting with the ADOC and use of inmate labor. Employer Defendants are the City of Montgomery, City of Troy, Jefferson County, Gemstone Foods, Ju-Young Manufacturing America, Inc., SL Alabama, LLC, Hwaseung Automotive USA LLC, Progressive Finishes, Inc., C.B.A.K., Southeastern

Restaurant Group-Wen LLC, Pell City Kentucky Fried Chicken, Masonite Corporation, Cast Products, Inc., Southeastern Meats, Inc., Koch Foods, LLC, Paramount Services, Inc., and Bama Budweiser of Montgomery, Inc. (*Id.* ¶¶ 166-174; 176-183) Koch Foods is one of the "Employer Defendants," and Plaintiffs' allegations against Koch Foods concern its alleged participation in ADOC's work-release program.

ADOC only permits individuals with the lowest custody level, "Minimum-Community" to participate in its work-release program. (*Id.* ¶¶ 11, 114) A Minimum-Community inmate is "allowed gainful employment in the community on a full-time basis and [is] supervised in community-based facilities when not working." (*Id.* ¶ 114) Therefore, based on the allegations in the Complaint, only four of the ten Individual Plaintiffs are currently eligible for work-release. (*Id.* ¶¶ 144-54.)

Work release is governed by Alabama statutory law that places four limitations on securing employment for inmates: (1) wages must be at the prevailing wage for similar work in the area; (2) the employment of inmate cannot displace already employed workers; (3) inmates are not employed as strikebreakers or an impairment to an existing contract; and (4) no exploitation of eligible inmates. *See* ALA. CODE § 14-8-4. Employers sign an agreement that they "must pay for inmate labor in the same manner as for any other employee and must comply with the requirements established by the Fair Labor Standards Act."

(ADOC Administrative Regulation 410, p. 10) The work release inmates are not employed "under adverse or unacceptable working conditions. (*Id.* p. 13) Employers are aware of the rules and regulations that govern inmate and employer conduct and when the employer should notify ADOC. (Doc. 1 ¶ 49)

Alabama law authorizes ADOC to deduct portions of work release inmates' wages to cover its costs, specifically:

> The employer of an inmate involved in work release shall pay the inmate's wages directly to the Department of Corrections. The department may adopt regulations concerning the disbursement of any earnings of the inmates involved in work release. The department is authorized to withhold from an inmate's earnings the cost incident to the inmate's confinement as the department shall deem appropriate and reasonable. In no event shall the withheld earnings exceed 40 percent of the earnings of the inmate. After all expenses have been deducted by the department, the remainder of the inmate's earnings shall be credited to his or her account with the department. Upon his or her release all moneys being held by the department shall be paid over to the inmate.

ALA. CODE § 14-8-6; *see also* Doc. 1 ¶ 15. The Supreme Court of Alabama has held that the ADOC is authorized pursuant to § 14-8-6 to withhold 40 percent of work release inmates' earnings and to charge for transportation, laundry, and medical co-pays. *See Thomas v. Merritt*, 167 So. 3d 283, 292-93 (Ala. 2013).

Individual Plaintiffs allege their labor was coerced by ADOC. Several of the Plaintiffs only allege they performed work for ADOC, not private employers

through the work-release program. Specifically, Plaintiffs Council, Moore, and English only allege they performed work for ADOC. (Doc. 1 ¶¶ 145, 146, 153). None of these three plaintiffs are currently eligible for work-release. (*Id.*) Plaintiff Walker is no longer an inmate but alleges she performed work for ADOC and Employer Defendants Jefferson County, Burger King,[1] and Southeastern Meats. (*Id.* ¶ 147) Plaintiff Cole alleges he has previously worked for Employer Defendants Gemstone Foods and Masonite. (*Id.* ¶ 148) Plaintiff Cole also alleged he worked for the City of Elmore, not a defendant, which paid him less than minimum wage. (*Id.*) Plaintiff Ptomey alleged he currently works at Employer Defendant Progressive Finishes and has previously worked at KFC in Pell City where his starting wage was minimum wage. (*Id.* ¶ 149) Plaintiff Ptomey alleges he previously worked for Arby's and Metalplate, not defendants, and performed work for public employers making less than minimum wage. (*Id.*) Plaintiff Ptomey alleges his private employers KFC and Progressive Finishes recommended him for parole. (*Id.*) Plaintiff McDole alleges he worked for Royal Foods, Hawks, and Progressive Finishes. (*Id.* ¶ 150) Only Progressive Finishes is an Employer Defendant. He alleges "he worked alongside free workers who were paid more for performing the same work." (*Id.*) Plaintiff McDole also alleges he performed unpaid work for the state. (*Id.*) Plaintiff Campbell alleges he worked at Progressive

---

[1] Burger King has been voluntarily dismissed.

Finishes and was not compensated as he should have been based on his title. (*Id.* ¶ 151) Plaintiff Campbell alleges he also worked at KFC in Pell City as a cook. Plaintiff Pritchett alleges he worked for Talladega, City of Troy, and ADOT for less than minimum wage and was not paid for the work he performed in the correctional facilities. (*Id.* ¶ 152) Plaintiff Pritchett alleges he also worked for Smith Company, not a defendant. (*Id.*) Plaintiff Cartwright alleges she worked at McDonald's, Southeastern Meats, Paramount, Bud's Best Cookies, ad Hager's, and she is currently employed at Wendy's. (*Id.* ¶ 154) Only Southeastern Meats and Paramount are Employer Defendants. <u>Critically, none of the Individual Plaintiffs allege they ever worked for Koch Foods</u>.

RWDSU alleges it and its members have been harmed by "Defendants' coerced labor scheme" because the conduct interferes with its ability to organize and represent workers in the poultry industry and undermines RWDSU's ability to improve wages and working conditions. (*Id.* ¶ 155) RWDSU concludes "not being able to represent all workers in the union's bargaining unit at Koch Foods harms RWDSUs interests and the interests of its members." (*Id.*) The Woods Foundation alleges it is a local nonprofit dedicated to "aiding persons with wrongful convictions and excessive sentences, particularly in Alabama." (*Id.* ¶ 157) The Woods Foundation contends that its ability to fulfil that mission has been "frustrated" by the supposedly discriminatory "practices of the Parole Board and the scheme

alleged herein to undermine Alabama's parole system" and that it "has had to devote increased resources, including money and staff time, towards addressing the unfair and unlawful functioning of the parole system." (*Id.*) USSW alleges employment of incarcerated workers undermines its ability to improve working conditions and depresses wages and working conditions. (*Id.* ¶ 156) Only RWDSU makes any allegations against Koch Foods.

## III.   STANDARD OF REVIEW

Only a complaint that states a plausible claim for relief can survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To avoid dismissal, a complaint must contain sufficient factual allegations to "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Stated differently, the factual allegations in the complaint must possess enough heft to set forth a plausible entitlement to relief." *Fin. Sec. Assurance Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. A plaintiff must plausibly allege all the elements of the claim for relief. *Id.* Conclusory factual allegations and legal conclusions are not sufficient to state a claim for relief that is plausible on its face. *Twombly*, 550 U.S. at 557. Although detailed factual allegations

are not required, the standard requires more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Doe v. Samford Univ.*, 29 F.4th 675, 685–86 (11th Cir. 2022). When determining whether the complaint crosses "the line between possibility and plausibility of entitlement to relief," "courts may infer from the factual allegations in the complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id.*; *see also Twombly*, 550 U.S. at 554 (holding that allegations of wrongdoing were not plausible because the facts alleged were "consistent with [liability], but just as much in line with a wide swath of" lawful conduct). Legal conclusions are not entitled to a presumption of truth. *Franklin v. Curry*, 738 F.3d 1246, 1248 n.1 (11th Cir. 2013).

## IV.   ARGUMENT

At least some of the Plaintiffs[2] allege 5 of the 12 counts in the Complaint against Koch Food: Count I - violation of the TVPA, Count II - RICO, Count III - violation of section 32 of the Alabama Constitution, Count XI – violation of 42 U.S.C. § 1986, and Count XII - Unjust Enrichment.  These claims fail on their face.

---

[2] The Organizational Defendants do not assert Count XII – Unjust Enrichment. The Woods Foundation also does not assert Counts I – TVPA and Count II – RICO.

Several of the asserted claims fail for want of a cause of action: Count III as to all Plaintiffs and Counts I and XI as to the Organizational Defendants. Additionally, none of the Plaintiffs can establish the requisite plausibility to survive a motion to dismiss. However, the Court need not even reach these deficiencies to dismiss Plaintiffs' Complaint because Plaintiffs fail to establish the threshold requirement of standing.

### A. All Plaintiffs lack standing to bring their claims against Koch Foods.

A plaintiff is required to establish standing "for each claim he seeks to press and for each form of relief that is sought," *Davis v. FEC*, 554 U.S. 724, 734 (2008) (quotations omitted). "[T]he irreducible constitutional minimum of standing contains three elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "For a party to have standing to bring a lawsuit, it must have '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Muransky v. Godiva Chocolatier, Inc.,* 979 F.3d 917, 924 (11th Cir. 2020) (en banc) (quoting *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547 (2016)). "Because standing to sue implicates jurisdiction, a court must satisfy itself that the plaintiff has standing before proceeding to consider the merits of her claim, no matter how weighty or interesting." *Lewis v. Gov. of Ala.*, 944 F.3d 1287, 1296 (11th Cir. 2019) (en banc). "The standing inquiry requires careful judicial examination of a complaint's

allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (quotation omitted) "We have insisted, for instance, that 'a plaintiff must demonstrate standing separately for each form of relief sought.'" *Id.*

Standing requires the alleged injuries to be "fairly traceable to the *challenged action of the defendant*." *Doe v. Pryor*, 344 F.3d 1282, 1285 (11th Cir. 2003) (citing *Lujan*, 504 U.S. at 560) (emphasis in original). That is, the plaintiff's injuries must be redressable by an action against a particular defendant. *See id.* ("Even if we assume that all of those alleged injuries meet the *Lujan* injury-in-fact requirement, [plaintiff] still does not have standing to bring this claim because her injuries are not fairly traceable to the [defendant], and they cannot be redressed through this action against him."); *Collins v. Yellen*, 141 S. Ct. 1761, 1779 (2021) ("[F]or purposes of traceability, the relevant inquiry is whether the plaintiffs' injury can be traced to 'allegedly unlawful conduct' of the defendant, not to the provision of law that is challenged."); *Coubaly v. Cargill, Inc.*, 610 F. Supp. 3d 173, 180 (D.D.C. 2022) (explaining the plaintiffs must show defendant was the cause of their injuries and must establish this causation as to each defendant); *Doe I v. Apple Inc.*, No. 1:19-CV-03737 (CJN), 2021 WL 5774224, at *7 (D.D.C. Nov. 2, 2021), *aff'd sub nom. Doe 1 v. Apple Inc.*, 96 F.4th 403 (D.C. Cir. 2024) (holding plaintiffs lacked standing

10

because their attempts to trace their injuries to the action of defendants relied on a "chain of contingencies" and were based on mere speculation).[3]

### 1.   The Organizational Plaintiffs fail to establish standing because they have not alleged a concrete injury.

"There are two ways that an association can have standing. First, it can have direct standing to bring a claim on behalf of itself. Second, it can have standing to represent its members. In order for an association to have standing to bring a claim on behalf of itself, it must demonstrate: (1) an injury in fact; (2) causation; and (3) redressability." *Doe v. Islamic Salvation Front (FIS)*, 993 F. Supp. 3, 10 (D.D.C. 1998) (citing *United Food and Commercial Workers Union Local 751 v. Brown Group. Inc*., 517 U.S. 544 (1996). An organization may establish injury based on diversion of its resources if it alleges that the defendant's "illegal acts impair its ability to engage in its projects by forcing the organization to divert resources to counteract those illegal acts." *Jacobson v. Fla. Sec. of State*, 974 F.3d 1236, 1250 (11th Cir. 2020) (citing caselaw). Resource diversion is recognized as a concrete injury only when there are sufficient allegations of the activities an organization is diverting resources "away from" to spend more of them combatting the allegedly

---

[3] Plaintiffs have standing to represent a class of only those members who suffered the same personal injury as themselves. *See Griffin v. Dugger*, 823 F.2d 1476, 1482–83 (1987) (holding that "it is not enough that a named plaintiff … ha[s] standing as to just one of many claims he wishes to assert;" instead, "a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gave rise to the claim").

illegal action. *Id.* at 1250. A plaintiff must show "what activities, if any, might be impaired" by the allocation elsewhere. *Id.* Allegations of diverted resources alone is not enough. *La. Fair Housing Action Ctr. v. Azalea Garden Props., LLC*, 82 F.4th 345, 353 (5th Cir. 2023). The plaintiff must also plead "how its diversion of resources impaired its ability to achieve its mission." *Id.* A threadbare allegation of impairment is insufficient to plead injury. *Id.* (*citing Iqbal*, 556 U.S. at 678–81) If a plaintiff does not allege the specifics of how curtailment of some activity or project "perceptibly impaired its mission," standing is not properly pleaded. *Id.* at 354.

To establish associational standing to sue on behalf of its members, the association must establish three elements: its members must otherwise have standing to sue, the interests the lawsuit seeks to protect must be germane to the association's purpose, and the claim can be resolved and the requested relief granted without the participation of individual members. *Baughcum v. Jackson*, 92 F.4th 1024, 1031 (11th Cir. 2024) (citation omitted).

The Woods Foundation alleges it is a local nonprofit dedicated to "aiding persons with wrongful convictions and excessive sentences, particularly in Alabama." (Doc. 1 ¶ 157) The Woods Foundation contends that its ability to fulfil that mission has been "frustrated" by the supposedly discriminatory "practices of the Parole Board and the scheme alleged herein to undermine Alabama's parole system" and that it "has had to devote increased resources, including money and staff time,

towards addressing the unfair and unlawful functioning of the parole system." (*Id.*) It further contends it has "redirect[ed] resources from other projects such as investigations of wrongful convictions to address the Governor, Attorney General, and Parole Board's racially discrimination abuse of the parole system…" (*Id.*)

The Woods Foundation cannot establish concrete injury under its proposed theory of diversion of resources. It provides no facts regarding how it has been forced to "address" the alleged unfair and unlawful parole system. The Woods Foundation alleges its mission has been impaired because it has had to "redirect resources" from of "investigation wrongful convictions" to address the State Defendants' alleged abuse of the parole system. (*Id.*) This single sentence is insufficient to establish the Woods Foundation has suffered a concrete injury. The Complaint contains no allegations of any investigations were canceled or postponed. Moreover, there are no allegations of the impact of the Woods Foundation's alleged impairment had on its mission. The Woods Foundation does not even state clearly what its mission is, but rather states that it "aids people with wrongful convictions and excessive sentences." (*Id.)* The Woods Foundation cannot establish a concrete injury for standing.

RWDSU alleges it and its members have been harmed by "Defendants' coerced labor scheme" because the conduct interferes with its ability to organize and represent workers in the poultry industry and undermines RWDSU's ability to

improve wages and working conditions. (Doc. 1 ¶ 155) RWDSU concludes "not being able to represent all workers in the union's bargaining unit at Koch Foods harms RWDSUs interests and the interests of its members." (*Id.*) RWDSU contends "employment of incarcerated workers undermines RWDSU's ability to improve wages and working conditions…" (*Id.*) RWDSU further states "This action pertains to the purposes for which RWDSU's members are associated together and is germane to the union's interests. Defendants' actions as alleged herein directly conflict with RWDSU's mission and goal of improving the wages and working conditions of its members, and ensuring safe, racially just, equitable, and fair workplaces and pay for its members." (*Id.*)

RWDSU's alleged harms are entirely speculative. It concludes without factual support that the State's work release program has impacted its mission of improving wages and working conditions and environments for its members. RWSDU's contention it's goal would have been furthered but for the existence of the work-release program lacks factual support. As for its allegations of associational standing, it does not contend any of its members would have standing to sue. Like standing for the union itself, there are insufficient allegations of any injury to one of its members that would bestow standing on any member to bring suit.[4]

---

[4] RWSDU does not allege it has been forced to divert resources to Defendants' alleged unlawful acts.

USSW provides even less support for its alleged injury. Like RWDSU, USSW alleges employment of incarcerated workers undermines its ability to improve working conditions and depresses wages and working conditions. (Doc. 1 ¶ 156) USSW's allegations are entirely speculative and conclusory. Accordingly, none of the Organizational Plaintiffs have establish concrete injury.

> ## 2. Even if the Plaintiffs could establish a concrete injury, none of the Plaintiffs can establish standing because they did not suffer any injury traceable to Koch Foods.

First, the Woods Foundation and USSW do not have any allegations against Koch Foods. The Woods Foundation alleges the source of its harm is the allegedly discriminatory practices of the Parole Board. (Doc. 1 ¶ 157) While Plaintiffs attempt to connect Koch Foods to parole denials by state officials, their allegations are far too attenuated to establish standing against Koch Foods. There are no factual allegations Koch Foods had any power or influence over parole decisions. USSW does not connect its alleged harm in any way to Koch Foods.

RWDSU alleges Koch Foods is one of four companies at which it has members. [5]  (*Id.* ¶ 155) RWDSU alleges that is has sought and been unable to represent work-release employees at Koch Foods, and that Koch Foods' hiring of incarcerated workers has harmed it and its members by undermining RWDSU's

---

[5] RWDSU alleges it also has members at Wayne Farms and Pilgrim's Pride, business that also employ or have employed "persons incarcerated ADOC as part of the coerced labor scheme at issue in this complaint." (Doc. 1 ¶ 155) RWSDU has not named either entity as a defendant.

ability to improve wages and working conditions. (*Id.*) The Complaint alleges RWDSU represents 1,800 workers at Koch Foods, and Koch Foods has employed at least 30 work-release employees in the years 2018-2023. (*Id.* ¶¶ 155, 181) Thus, according to the RWDSU, work-release employees vastly outnumber RWDSU'S members at Koch Foods.

RWDSU cannot trace any of its nor its members harm to Koch Foods. Critically, it does not allege Koch Foods took any action or prohibited any work-release employee from joining the union. The only hinderance to joining the union, it contends, is that "because the employees could not enter into binding contracts without the permission of the warden." There are no allegations the Koch Foods had any power to allow work-release employees to join the RWDSU. RWSDU's contention Koch Foods' employment of 30 work-release inmates over five years, particularly in light of RWDSU's membership at Koch Foods, lacks any factual support and is attenuated at best. Ultimately, RWDSU cannot trace any of its highly speculative harm to Koch Foods.

And finally, the Individual Plaintiffs cannot trace any of their alleged harm to Koch Foods. None of them contend they were worked for Koch Foods. In fact, the Individual Plaintiffs make no allegations against Koch Foods. They do not allege Koch Foods ever forced them to work, paid them unfairly, or subjected them to unjust or unlawful working conditions. There is no support Koch Foods had any

involvement whatsoever in their paroles being denied. The Individual Plaintiffs cannot establish standing against Koch Foods. Because no Plaintiff can trace any of their alleged harm to Koch Foods, no judgment against Koch Foods could redress Plaintiffs' injuries. *See Pryor*, 344 F.3d 1285 (citing *Lujan*, 504 U.S. at 560).

**B.      Plaintiffs' Complaint is an impermissible shotgun pleading.**

"Courts in the Eleventh Circuit have little tolerance for shotgun pleadings." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018).  "We have had much to say about shotgun pleadings," the Eleventh Circuit has cautioned, "none of which is favorable."  *Cook v. Randolph Cty.*, 573 F.3d 1143, 1151 (11th Cir. 2009). Courts have dismissed shotgun pleadings where "no obvious explanation" exists for how portions of the complaint relate to stated causes of action.  *Davis v. Infinity Ins. Co.*, 2016 WL 4507122, at *20 (N.D. Ala. Aug. 29, 2016) (England, J.).  Courts have also dismissed complaints as shotgun pleadings that lump claims against multiple defendants together.  *See e.g.*, *Zuanich v. Hankook Tire Am. Corp.*, 2018 WL 6709466, at *4 (M.D. Ala. Dec. 20, 2018); *Hamilton v. Judicial Corr. Servs. LLC*, 2019 WL 5964977, at *3 (N.D. Ala. Nov. 13, 2019) (Proctor, J.) (opining a complaint that, "rather than specifying which Defendant took which actions against which Plaintiffs," lumps defendants together "is an impermissible shotgun pleading and is due to be dismissed . . . ."); *see also Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (holding complaint "replete with allegations that 'the defendants'

engaged in certain conduct, making no distinction among the fourteen defendants charged" was shotgun pleading); *Mathis v. City of Lakewood*, No. 22-12426, 2023 WL 2568814, at \*4 (11th Cir. Mar. 20, 2023) ("The lumping of defendants does not give any defendant fair notice of the allegations brought against that defendant.") *Mathis v. City of Lakeland*, No. 22-12426, 2023 WL 2568814, at \*4 (11th Cir. Mar. 20, 2023). Shotgun pleadings "waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts." *Davis*, 2016 WL 4507122, at \*20; *Cramer v. Florida*, 117 F.3d 1258, 1263 (11th Cir. 1997).

Plaintiffs indiscriminately lump together Koch Foods and the 17 other Employer Defendants in every count asserted against Koch Foods. (*See* Doc. 1 ¶¶ 159, 210, 217-218, 223, 278, 279, 282). Plaintiffs add to the confusion by making allegations about entities that are not before the court. (*See, e.g., id.* ¶¶ 149, 150, 152, 155)  None of Plaintiffs' causes of actions specify Koch Foods' conduct, but rather, Plaintiffs incorporate nearly 200 paragraphs of factual allegations into each court. Therefore, the Compliant fails to provide Koch Foods fair notice of their allegations against it and which facts support which causes of action. Plaintiffs' complaint is classic example of a shotgun pleading and should be dismissed.

**C.     Even if Plaintiffs could get past the threshold question of standing, which they cannot, they fail to state a claim for each of their asserted causes of action.**

**1.     Count I under the TVPA is due to be dismissed because the Organizational Plaintiffs lack a cause of action under the TVPA, and Plaintiffs fail to plausibly allege Koch Foods violated the TVPA.**

*a. The Organizational Plaintiffs do not have a cause of action under the TVPA.*

The TVPA provides a civil remedy for "[a]n individual who is a victim of a violation of this chapter" who seeks to "recover damages and reasonable attorney's fees." 18 U.S.C. § 1595(a). The statute also permits the Attorney General to seek an injunction when it appears that a person "is engaged or is about to engage in any act that constitutes or will constitute a violation of [the TVPA] ..." *Id.* at 1595A(a). "Looking at the plain language of the statute, it does not explicitly list a union representative as a party that can seek a civil remedy for violations of the TVPA." *New York State Nurses Ass'n v. Albany Med. Ctr.*, 473 F. Supp. 3d 63, 71–72 (N.D.N.Y. 2020) (dismissing complaint brought by union under TVPA because the plain language of the statute only permitted individual victims to civilly enforce the TVPA).

Because the Organizational Plaintiffs are not "individual[s]" or "victim[s]" as defined in the statute, they have no cause of action under the TVPA. Even if it was possible for the Organizational Plaintiffs to bring a cause of action under the TVPA,

the allegations in the Complaint fail to properly do so. Neither the unions nor the Woods Foundation allege they, or any of their members, have been victims under the TVPA. Nor is there any allegation that Koch Foods was the perpetrator or participated in a joint venture with a perpetrator against the Organizational Plaintiffs in violation of the TVPA. The Organizational Defendants have no claim under the TVPA.

### b. *All Plaintiffs fail to state a claim under the TVPA*.

Plaintiffs bring a "beneficiary" claim against Koch Foods under the TVPA. [6] To state a claim for beneficiary liability under the TVPA, Plaintiffs must plausibly allege that Koch Foods: "(1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726 (11th Cir. 2021). A defendant's general awareness is insufficient. *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020) (holding general awareness of sex trafficking on defendants' franchisees' properties did not satisfy knowledge requirement). Benefit alone is but one required element of Plaintiffs' claim and also

---

[6] "[A] claim against a primary offender…is a necessary element for venture liability." *Bistline v. Parker*, 918 F.3d 849, 871 (10th Cir. 2019). Therefore, if Plaintiffs' primary liability claim fails, so does their beneficiary claim.

insufficient standing alone. *Red Roof Inns, Inc*., 21 F.4th at 726; K. *H. v. Riti, Inc*., No. 23-11682, 2024 WL 505063, at *4 (11th Cir. Feb. 9, 2024) (upholding district court's dismissal of complaint for failure to allege participation in a venture).

The Individual Plaintiffs provide nothing more than conclusory allegations in attempt to support their TVPA claim: "Each work-release and work-center employer Defendant knew or recklessly disregarded that the incarcerated labor provided through its contracts with ADOC was coerced." (Doc. 1 ¶ 137) "Employer Defendants knowingly benefited, financially and otherwise, from participation in ADOC's work-release and work-center programs, knowingly or in reckless disregard of the fact that their lucrative joint venture with ADOC has engaged in the providing or obtaining of labor or services from Plaintiffs and the Forced Labor Class by each of the unlawful means alleged in paragraphs 1 through 143 above." (*Id*. ¶ 210.) They state that employers are required to pay the prevailing wage to work-release employees, but state without any factual support that "Black forced laborers leased out for profit by Alabama report working side-by-side with white free workers who are performing less skilled or less difficult jobs while earning a markedly higher hourly rate." (*Id*. ¶ 20)

Plaintiffs do not allege facts to support the idea that, by mere participation in the work-release program, was a venture that involved "risk" to Koch Foods nor does the Complaint say what "potential profit" Koch Foods expected. There are no

allegations that Plaintiffs worked at Koch Foods for less pay than free employees did. In fact, there are no allegations of what Koch Foods paid any work-release employee or what positions said employees were assigned.

Even if Plaintiffs alleged that Koch Foods actually observed unlawful coercive methods by the State Defendants or others, which they do not, their Complaint would still fail to allege the requisite venture under the TVPA. The Complaint provides no facts to support that Koch Foods knew or should have known that State Defendants were allegedly wrongfully coercing anyone to work for Koch Foods through the work-release program. The Plaintiffs merely allege that "violent conditions" in Alabama prisons were "broad public knowledge," and that the employer defendants "know or should know of these conditions." (*Id.* ¶¶ 140-43, 183, 210) But even if such "public knowledge" was sufficient, Plaintiffs do not allege any public knowledge that labor though the work-release program was coerced.

Plaintiff further contend, as one of the Employer Defendants, Koch Foods "knew or should have known that" the State Defendants "were conspiring" to deny parole along racial lines. (*Id.* ¶ 142) Plaintiffs' mere legal conclusion does not go further to provide any factual support. Absent from Plaintiffs' Complaint are any concrete, specific facts that would make it plausible for Koch Foods to have known that these Plaintiffs were being discriminated against or coerced to work. At most,

Plaintiffs are alleging Koch Foods had a general awareness of problem with the Alabama prison and parole system, which is wholly insufficient.

There are no concrete, specific facts in the Complaint that would make it plausible for Koch Foods to have known that Plaintiffs were being discriminated against or coerced to work or benefited from or knew Plaintiffs were unlawfully being denied parole. Plaintiffs offer only speculative legal conclusion to support their claim. Plaintiffs fail to state a plausible claim for a TVPA violation against Koch Foods.

> ### c. To the extent the TVPA applies to state work-release programs, it is an unconstitutional usurpation of state power.

"Under our federal system, the States possess primary authority for defining and enforcing the criminal law." *United States v. Lopez*, 514 U.S. 549, 561 (1995); *Bond v. United States*, 572 U.S. 844, 857 (2014) (refusing to read a statute to intrude on "traditional state criminal jurisdiction"). "Perhaps the clearest example of traditional state authority is the punishment of local criminal activity." *Bond*, 572 U.S. at 858. Courts should not conclude acts of Congress seek to displace historic police powers of the state "in the absence of an unambiguous congressional mandate to that effect." *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 146-47 (1963).

Plaintiffs seek to use the TVPA to interfere with the state authority over its criminal justice system.  Despite the TVPA's lack of any explicit reference to states' penal systems and their use of work-release or forced-labor programs as a form of punishment or leniency, Plaintiffs assert the TVPA effectively abolished "coerced" labor in state work-release programs.  The TVPA would thus eliminate a longstanding exercise of states' criminal-justice powers, and furthermore, essentially re-write the language of the Thirteenth Amendment which expressly excludes situations of servitude as punishment for duly convicted crimes. Congress of course cannot amend the Constitution through mere legislation. *See* ART. V, U.S. CONSTITUTION. Therefore, 18 U.S.C.A. §§ 1589 and 1595 infringe on the State of Alabama's "primary authority for defining and enforcing the criminal law" to the extent the statutes prevent the State of Alabama from being able to authorize and operate its Temporary Work Release Programs.

### 2. Plaintiffs fail to state a RICO claim because they fail to show the requisite enterprise and predicate acts.

RICO prohibits racketeering activity connected to interstate commerce and creates a civil cause of action for "[a]ny person injured in his business or property by reason of a violation of section 1962." *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1210-11 (11th Cir. 2020) (quoting 18 U.S.C. § 1964(c)). "A private plaintiff suing under the civil provisions of RICO must plausibly allege six elements: that the defendants (1) operated or managed (2) an enterprise (3) through a pattern (4) of

24

racketeering activity that included at least two predicate acts of racketeering, which (5) caused (6) injury to the business or property of the plaintiff." *Id.* at 1211. "If a plaintiff fails to adequately plead any one of these elements, she has failed to state a claim upon which relief may be granted, and her complaint must be dismissed." *Id.* Beyond the establishment of a RICO enterprise, a plaintiff must allege that each defendant participated in the affairs of the enterprise through a 'pattern of racketeering activity,' which requires 'at least two acts of racketeering activity'" listed in 18 U.S.C. § 1961(1). *Cisneros*, 972 F.3d at 1215. "A plaintiff must put forward enough facts with respect to each predicate act to make it independently indictable as a crime." *Id.* The plaintiff is required to establish facts that plausibly support the interference defendants were collectively trying to make money from illegal activity as opposed to an "obvious alternative explanation." *Id.* at 1212 (citing *Twombly*, 550 U.S. at 567).

Plaintiffs allege violations of the TVPA as the predicate acts. (Doc. 1 ¶ 218) But, for the reasons argued with respect to Count I, Plaintiffs fail to state a TVPA claim against Koch Foods and so their RICO claim necessarily fails. *See Fletcher*, 2023 WL 6307494, at *3 ("Because the amended complaint did not state a claim for relief under the TVPA, the magistrate judge determined that the RICO claims, which were predicated on violations of §§ 1584 or 1589, must also fail."). But even if the TVPA claim is not dismissed, the RICO claim

nevertheless fails because Plaintiffs do not allege facts to support each required element.

Plaintiffs allege an "association-in-fact enterprise"[7] among all Defendants, which requires them to set out several additional sub-elements to satisfy the enterprise element of a RICO claim: "To plead an association-in-fact enterprise, the Supreme Court has held that a plaintiff must allege that a group of persons shares three structural features: '(1) a 'purpose,' (2) 'relationships among those associated with the enterprise,' and (3) 'longevity sufficient to permit these associates to pursue the enterprise's purpose.'" *Cisneros*, 972 F.3d at 1211 (quoting caselaw). For the "purpose prong" of this test, a RICO plaintiff must plausibly allege "that the participants shared the purpose of enriching themselves through a particular criminal course of conduct." *Id.* An "abstract common purpose" like a "generally shared interest in making money," court noted, "will not suffice." *Id.* Instead the enterprise's purpose must specifically be to benefit from a wrongful course of conduct. *See id.* at 1211-12. And a complaint must have "concrete facts" to give rise to that inference. *Id.* at 1212. Plaintiffs do not clear that hurdle.

Plaintiffs have not alleged that Koch Foods formed an association-in-fact enterprise with the State Defendants for the mutual purpose of enrichment from unlawfully coerced labor by work-release employees. Again, Plaintiffs do not

---

[7] Doc. 1 ¶ 215.

allege they ever worked for Koch Foods let alone were coerced to do so. Plaintiffs contend they were unlawfully coerced into performing labor —but they never allege the specific facts that would make it plausible to suppose that Koch Foods participated in the work-release system was to benefit from labor that the State Defendants unlawfully coerced. (*See* Doc. 1 ¶ 216)

The Complaint alleges only that Koch Foods was one of the employer defendants who gave gainful employment work-release prisoners. That does not state a RICO claim. Plaintiffs also fail to establish the pattern prong and the "predicate acts" prong of the RICO cause of action, which require Plaintiffs to allege a pattern of conduct that includes at least two acts of racketeering. *Cisneros*, 972 F.3d at 1211. Again, Plaintiffs do not allege they ever worked for Koch Foods. They have not pled any act of racketeering against Koch Foods. Plaintiffs' RICO claim fails.

### 3. Plaintiffs fail to state a claim under the 42 U.S.C. 1986 ("KKK Act").

#### a. Organizational Plaintiffs do not have a cause of action under the KKK Act.

The KKK Act or § 1986 allows a civil remedy only on the part of "the party injured, or his legal representatives." 42 U.S.C. § 1986. The Organizational Plaintiffs join the claims under 42 U.S.C § 1985 alleging an illegal conspiracy of deprive the Plaintiffs of their constitutional rights. (*See* Doc. 1 pp.119-20) However, none of the

Organization Plaintiffs support how they themselves are a "party injured" under 42 U.S.C § 1986 nor that they are the legal representatives of an individual Plaintiff. Therefore, the Organizational Plaintiffs do not have a cause of action under the KKK Act.

> **b. All Plaintiffs fail to establish their claim against Koch Foods because under the KKK Act because they offer only legal conclusions to support their claim.**

The Complaint's Count XI asserts a claim against all Defendants under 42 U.S.C. § 1986, which provides:[8]

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented…

42 U.S.C.A. § 1986 (emphasis added). To "aid in preventing" a conspiracy requires more than action that might reduce a third party's "incentive" to conspire. There must be some allegation of power to prevent or help prevent the wrong, and it is not sufficient to articulate an economics argument of incentive. *Park*, 120 F.3d at 160; *see also Nassar v. Fla. Dept. of Agriculture*, 754 F. App'x 903, 907 (11th Cir. 2018); *Santiago v. City of Philadelphia*, 435 F. Supp. 136, 156 (E.D. Pa. 1977).

---

[8] A claim under § 1986 is derivative of a § 1985 claim, so if the Court dismisses that claim against the State Defendants, this claim necessarily fails. *Park v. City of Atlanta*, 120 F.3d 1157, 1160 (11th Cir. 1997).

Plaintiffs contend Koch Foods is liable for failing to prevent State Defendants' alleged unconstitutional denial of paroles. (Doc. 1 ¶¶ 277-78) The Plaintiffs summarily attribute vast knowledge and power to Koch Foods – that it knew the Plaintiffs were being denied parole because of their race and had the power to stop the Governor, Attorney General, and State Parole Board from denying Plaintiffs' parole. According to Plaintiffs, had Koch Food withdrawn from the work-release program, thereby eliminating one work release prisoner in 2023[9], then it would have reduced State Defendants' "incentive to deny parole and maintain a larger, predominately Black, captive and coerced work force." (*Id.* ¶ 278)

Plaintiffs' claim is untenable. There are no allegations Koch Foods had any knowledge whatsoever about any of the Plaintiffs. There are no allegations Koch Foods ever employed the Plaintiffs, knew they were prisoners, or were eligible for parole. Further, Plaintiffs cannot support their conclusory opinion that Koch Foods' withdrawal from the work release program would have had any impact on Plaintiffs' parole determinations when they allege Koch Foods only had 1 work-release employee during the limitations period.

To support their bold claims at to Koch Foods' knowledge, Plaintiffs point to articles published in November 2021 and March 2022 regarding "racial bias

---

[9] *See* Doc 1 ¶ 181 (stating Koch Foods had at least one work-release prisoner in 2023). The statute of limitations for this claim is one year. 42 U.S.C. 1986.

infecting the Parole Board's decision." (*Id.* ¶ 142). But the Complaint provides no explanation as to what that has to do with Koch Foods or the work-release program. Plaintiffs' Count XI is wholly conclusory and fails to state a claim.

### 4.   Plaintiffs do not have a cause of action under § 32 of the Alabama Constitution.

There is no cause of action for monetary damages under the Alabama Constitution. *See Matthews v. Alabama Agric & Mech. Univ.*, 787 So. 2d 691, 698 (Ala. 2000) ("However, Matthews presented no authority to the trial court, and he has presented no authority to this Court, that recognizes a private cause of action for monetary damages based on violations of the provisions of the Constitution of Alabama of 1901, and we have found none."); *Roberts v. City of Geneva*, 114 F. Supp. 2d 1199, 1215 (M.D. Ala. 2000) ("The Supreme Court of Alabama has held that there is no authority that 'recognizes a private right of action for monetary damages based on violations of provisions of the Constitution of Alabama.'" (quoting *Matthews*, 787 So. 2d at 698)).

Plaintiffs' Count III alleges violation of the Alabama Constitution, Article 1, Section 32 against "All Defendants," which Plaintiffs plead is a ban on "slavery and involuntary servitude under all circumstances." (Doc. 1 ¶ 222) Plaintiffs contend all defendants, including Koch Foods, "subjected Plaintiffs" to involuntary servitude by "forcing them" to work through coercion and force. *Id.* ¶ 223. However, absent from the Complaint is any allegation Koch Foods forced the individual Plaintiffs to do

anything. The Organizational Plaintiffs do not even state their factual basis for asserting Count III against all defendants.

And lastly, Plaintiffs' claim necessarily implies the Alabama State legislature unknowingly amended to Constitution to outlaw the State's work-release program. But "repeal by implication is not favored. It is only when two laws are so repugnant to or in conflict with each other that it must be presumed that the Legislature intended that the latter should repeal the former." *Fletcher v. Tuscaloosa Fed. Sav. & Loan Ass'n*, 314 So. 2d 51, 54-55 (Ala. 1975) (cleaned up) (citation omitted). Plaintiffs do not have a claim under Section 32.

### 5.     Plaintiffs fail to state a claim for unjust enrichment.[10]

An unjust enrichment claim sounds in the nature of quasi-contract, as the law equitably implies a contract between the parties to prevent the unjust enrichment of a defendant at the expense of a plaintiff. *White v. Microsoft Corp.*, 454 F. Supp. 2d 1118, 1132 (S.D. Ala. 2006) (citing *American Family Care, Inc. v. Fox,* 642 So.2d 486, 488 (Ala.Civ.App.1994) ("Under the doctrine of quasi-contract, the law implies a contract, based upon the principles of equity, to prevent the unjust enrichment of one who knowingly accepts and retains a benefit provided at the detriment of another...."). The essence of the theory of unjust enrichment "is that a plaintiff can prove facts showing that defendant holds money which, in equity and good

---

[10] This claim is only asserted by the individual Plaintiffs and only against the Employer Defendants.

conscience, belongs to plaintiff or holds money which was improperly paid to defendant because of mistake or fraud." *Hancock-Hazlett Gen. Const. Co. v. Trane Co.*, 499 So. 2d 1385, 1387 (Ala. 1986). Stated differently, "[o]ne is unjustly enriched if his retention of a benefit would be unjust." *Matador Holdings, Inc. v. HoPo Realty Invs., L.L.C.*, 77 So. 3d 139, 145–46 (Ala. 2011). "Retention of a benefit is unjust if (1) the donor of the benefit ... acted under a mistake of fact or in misreliance on a right or duty, or (2) the recipient of the benefit ... engaged in some unconscionable conduct, such as fraud, coercion, or abuse of a confidential relationship. In the absence of mistake or misreliance by the donor or wrongful conduct by the recipient, the recipient may have been enriched, but he is not deemed to have been unjustly enriched." *Id.*

However, "where an express contract exists between two parties, the law generally will not recognize an implied contract regarding the same subject matter." *White v. Microsoft Corp.*, 454 F. Supp. 2d 1118, 1133 (S.D. Ala. 2006); (citing *Vardaman v. Florence City Bd. of Educ.*, 544 So.2d 962, 965 (Ala.1989) ("existence of an express contract generally excludes an implied agreement relative to the same subject matter"). "The reasoning is simple: If the parties' dealings are covered by an express agreement, then there is no need to imply an agreement between them to ward off inequitable results." *Id.*

Plaintiffs' claim fails for at least 2 reasons. First, Plaintiffs do not allege Koch Foods holds money, that in equity and good conscience, belongs to *any Plaintiff*. Plaintiffs do not allege they ever conferred any benefit on Koch Foods for which they should have been compensated. Based on the Complaint, no Plaintiff ever worked for Koch Foods.

Second, by the Plaintiffs' own allegations, they are not asserting the court needs to recognize an implied contract to prevent inequity. Rather, Plaintiffs recognize they performed work for employers, though not Koch Foods, and were paid, but ask the court to alter the terms of those agreements, i.e., Plaintiffs should have been paid more for their work. (*See* Doc. 1 ¶ 123) (alleging work-release employees received lower wages and benefits than free workers). This is not an unjust enrichment claim. The theory of unjust enrichment cannot be used to change the terms of an agreement. *See White*, 454 F. Supp. 2d at 1133.  Rather, unjust enrichment is for prevention of inequity when no agreement existed. Count XI is due to dismissed against Koch Foods.

## V.   CONCLUSION

Plaintiffs attribute vast power and knowledge to Koch Foods, though without any factual support. Plaintiffs attempt to impose liability on Koch Foods through attenuated, highly speculative, and entirely conclusory allegations of harm through Koch Food's alleged participation in the state's work-release program. Plaintiffs

cannot establish standing to bring its claims against Koch Foods nor can they establish any of their claims on the merits. Their Complaint is due to be dismissed.

WHEREFORE, above premises considered, Koch Foods respectfully requests this Court enter an order granting its Motion to Dismiss as to all claims asserted against it and taxing costs against the Plaintiffs.

Respectfully submitted,

*s/ Rachel V. Barlotta*
RACHEL V. BARLOTTA
KAYLA M. WUNDERLICH
*Attorneys for Defendant Koch Foods*

**OF COUNSEL:**
BAKER DONELSON BEARMAN
 CALDWELL & BERKOWITZ, P.C.
1901 Sixth Avenue North, Suite 2600
Birmingham, Alabama 35203
Tel. 205-326-0480
rbarlotta@bakerdonelson.com
kwunderlich@bakerdonelson.com

34

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify a true and correct copy of the foregoing was served upon all counsel of record via the Court's electronic filing system on this the 29th day of April 2024.

| | |
|---|---|
| Amanda C. Lynch<br>Barbara J. Chisolm<br>Connie K. Chan<br>Michael Rubin<br>Altshuler Berzon, LLP<br>117 Post Street, Suite 300<br>San Francisco, CA 94108<br>**Counsel for Plaintiffs** | Janet M. Herold<br>Justice Catalyst Law<br>40 Rector Street, 9th Floor<br>New York, NY 10008<br>**Counsel for Plaintiffs** |
| Lauren E. Faraino<br>Faraino, LLC<br>2647 Rocky Ridge Lane<br>Vestavia Hills, AL  35216<br><br>**Counsel for Plaintiffs** | Richard P. Rouco<br>Quinn, Connor, Weaver, Davies &<br>Rouco Two North 20th Street,<br>Suite 930<br>Birmingham, AL 35203<br>**Counsel for Plaintiffs** |
| Michael Rubin<br>Altshuler Berzon Nussbaum Rubin &<br>Demain<br>177 Post Street, Suite 330<br>San Francisco, CA 94108<br>**Counsel for Plaintiffs** | David Nikolic<br>Josh Chandler Harrison<br>Ogletree Deakins Nash Smook &<br>Stewart, PC<br>420 20th Street North<br>Suite 1900<br>Birmingham, AL 35203<br>**Counsel for Progressive Finishes** |

| | |
|---|---|
| Benjamin M. Seiss<br>Brad A. Chynoweth<br>Alabama Attorney General's Office<br>501 Washington Avenue<br>Montgomery, AL 36104<br>**Counsel for Defendant Kay Ivey, Steve Marshall** | Gary L. Willford, Jr.<br>Alabama Bureau of Pardons and Paroles<br>Legal Division<br>301 S. Ripley Street<br>Montgomery, AL 36104<br>**Counsel for Defendant Leigh Gwathney, Darryl Littleton, and Gabrelle Simmons** |

| | |
|---|---|
| Cameron W. Elkins<br>Tara S. Hetzel<br>State of State of Alabama Office of the<br>Attorney General, Civil Division<br>501 Washington Avenue<br>Montgomery, AL 36104<br>**Counsel for Defendant John Hamm** | Steven Higgin<br>William Patty<br>Al Dept of Transportation<br>1409 Coliseum Blvd.,<br>Legal Bureau<br>Montgomery, AL 36110<br>**Counsel for Defendant John Cooper** |
| Robert D. Segall<br>Shannon L. Holliday<br>Copeland Franco Screws & Gill<br>P.O. Box 347<br>Montgomery, AL 36101<br>**Counsel for Defendant City of Montgomery** | Stacy L. Bellinger<br>P.O. Box 1111<br>Montgomery, AL 36101<br>**Counsel for Defendant City of Montgomery** |
| Brad A. Everhardt<br>Randall Morgan<br>Hill, Hill, Carter, Franco, Cole & Black,<br>P.C.<br>425 South Perry Street<br>P.O. Box 116<br>Montgomery, AL 36101<br>**Counsel for Defendant City of Troy** | Shawnna H. Smith<br>Office of the Jefferson<br>County Attorney<br>280 Jefferson County<br>Courthouse<br>716 Richard Arrington Jr. Blvd.<br>North Birmingham, AL 35203<br>**Counsel for Jefferson County** |
| Rachel V. Barlotta<br>Baker, Donelson, Bearman, Caldwell &<br>Berkowitz, P.C.<br>1901 6th Avenue N., Suite 2600<br>Birmingham, AL 35203<br>**Counsel for Defendant Koch Foods, LLC** | Kayla M. Wunderlich<br>Baker, Donelson, Bearman,<br>Caldwell & Berkowitz, P.C.<br>1901 Sixth Ave North, Ste 2600<br>Birmingham, AL 35203<br>**Counsel for Defendant Koch Foods, LLC** |

| | |
|---|---|
| Allison Hawkins<br>Michael L. Lucas<br>Burr & Forman LLP<br>420 North 20th Street, Suite 3400<br>Birmingham, AL 35203<br>**Counsel for Defendant Ju-Young**<br>**Manufacturing America, Inc., SL**<br>**Alabama, LLC, and Hwaseung**<br>**Automotive USA, LLC** | MorganL.  Allred  Holland<br>& Knight LLP<br>1901 6th Avenue North,<br>Ste 1400<br>Birmingham, AL 35203<br>**Counsel for Defendant**<br>**Premier Kings, Inc.** |
| Melisa C. Zwilling<br>Carr Allison<br>100 Vestavia Parkway<br>Birmingham, AL 35216<br>**Counsel for Defendant Southeast**<br>**Restaurant Group-Wen LLC** | George R. Parker<br>W. Chadwick Lamar, Jr.<br>Bradley Arant Boult<br>Cummings<br>LLP 445 Dexter Ave.,<br>Suite 9075<br>Montgomery, AL 36104<br>**Counsel for Defendant**<br>**Masonite Corporation** |
| John T. Richie<br>Bradley Arant Boult Cummings<br>LLP One Federal Place<br>1819 5th Avenue North<br>Birmingham, AL 35203<br>**Counsel for Defendant Masonite**<br>**Corporation** | Taffiny S. Stewart<br>Elliot B. Monroe<br>Sarah G. Redmond<br>Lloyd, Gray, Whitehead &<br>Monroe,<br>P.C. 880 Montclair Road<br>Suite 100<br>Birmingham, AL 35213<br>**Counsel for Defendant**<br>**Southeastern** |

| | |
|---|---|
| Aaron G. McLeod<br>Jonathan B. Metz<br>Adams and Reese LLP<br>1901 6th Avenue North, Suite 1110<br>Birmingham, AL 35203<br>**Counsel for Defendant Bama**<br>**Budweiser of Montgomery, Inc.** | Kyle T. Smith<br>DENTONS SIROTE PC<br>2311 Highland Ave S<br>Post Office Box 55727<br>Birmingham, AL 35255<br>**Counsel for Paramount**<br>**Services, Inc.** |
| The undersigned hereby certifies that a true and correct copy of the above and foregoing was served by U.S. Mail to pro se parties:<br><br>C.B.A.K., Inc. d/b/a<br>McDonald's<br>1010 South McKenzie Street<br>Foley, AL 36535<br>Pro se<br><br>Pell City Kentucky Fried Chicken, Inc.<br>703 23rd Street N<br>Pell City, AL 35215<br>Pro se | |

*s/ Rachel V. Barlotta*
OF COUNSEL