# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

**COUNCIL, et al, Plaintiff,**

**v.**                                    **Case No.: 2:23-cv-00712-CLM-JTA**

**IVEY, et al, Defendant.**

## RCF, LLC'S MOTION TO DISMISS
## PLAINTIFF'S COMPLAINT AND MEMORANDUM OF LAW

Defendant RCF, LLC d/b/a Gemstone Foods, LLC ("Gemstone") moves this Court to enter an order dismissing all Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6), as follows:

### INTRODUCTION

Plaintiffs' Complaint attacks the Alabama Department of Corrections' work release program authorized by Alabama statutory law and the administrative regulations established and administered by ADOC as well as the parole board. Plaintiffs contend in part that the conditions of Alabama prisons coerce inmates to accept work assignments with private employers, and if these inmates refuse to work or disrupt work by protesting working conditions, the inmates are disciplined. Through an impermissible shotgun pleading, Plaintiffs assert that Gemstone, as a private employer, who contracts with ADOC under the work release program has been unjustly enriched and is in violation of the Trafficking Victims Protection Act

(TVPA), the Racketeer Influenced and Corrupt Organizations Act (RICO), Article I, Section 32 of Alabama Constitution, and the KKK Conspiracy Act, 42 U.S.C. Section 1986, for its alleged knowing receipt of benefits through the ADOC's work release program that allegedly unlawfully coerces inmates to work.

All of Plaintiffs' claims as to Gemstone, however, are based on speculation and threadbare allegations and should be dismissed for failure to state a claim. Plaintiffs have failed to plausibly allege that the work release program violates the TVPA or that Gemstone knew or should have known that the work release program violates the TVPA. Because the TVPA claim fails, the RICO claim must be dismissed due to the absence of a racketeering predicate act. Plaintiffs' RICO claim also fails to plausibly set forth facts showing that Gemstone acted with a common purpose; associated with an enterprise; or participated in or conducted the enterprise's affairs in violation of RICO.

Plaintiffs have also failed to plead facts sufficient to state a claim for involuntary servitude in violation of Alabama's Constitution. There is no civil cause of action against Gemstone for violation of the Alabama Constitution. In addition, Gemstone did not subject any Plaintiff to involuntary servitude, including Plaintiff Cole who alleges that he worked long shifts, sometimes six (6) days a week for Gemstone. This does not constitute involuntary servitude.

The KKK Conspiracy Act claim also fails to state a claim because the Complaint fails to allege that Gemstone had knowledge of a conspiracy to violate the KKK Conspiracy Act or its withdrawal from the conspiracy would have aided in halting the conspiracy.

The unjust enrichment claim is likewise deficient. The Complaint fails to allege with plausibility that Gemstone was enriched at the expense of the alleged forced labor scheme. The Complaint does not even plausibly allege that Gemstone did not pay fair wages to the Plaintiffs. Rather, Plaintiff Cole allegedly worked for Gemstone for a few months from late 2016 to early2017, and he does not allege receiving less than his fair wage.

In addition, the Union of Southern Service Workers (USSW), the Retail, Wholesale and Department Store Union (RWDSU), and the Woods Foundation lack standing. These organizational Plaintiffs have not alleged any facts sufficient to establish diversion of resources, much less any particularized injury due to the alleged acts or omissions of Gemstone. These organizational claims should also be dismissed as they all rest upon the allegations that Gemstone had knowledge of the alleged coerced labor scheme, which is wholly conclusory and threadbare.

For the reasons set forth herein, Gemstone respectfully requests that this Court grant its Motion to Dismiss.

**STANDARD OF REVIEW**

A complaint must state a plausible claim for relief to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The complaint must contain factual allegations sufficient to "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Factual allegations that are conclusory fail to to state a claim for relief that is plausible on its face. *Twombly*, 550 U.S. at 557.

A motion to dismiss mainly tests the legal sufficiency of a complaint. Fed. R. Civ. P. 12(b)(6). It "does not delve into disputes over the proof of the facts alleged." *Blake v. Bank of Am., N.A.*, 845 F. Supp. 2d 1206, 1208 (M.D. Ala. 2012). District courts accept as true all well-pleaded factual allegations in the complaint, viewing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). "And while a court typically keeps its motion to dismiss inquiry within the four corners of the complaint, the Court may nonetheless consider an outside document when it is undisputed and central to the plaintiff's claims." *Galloway v. City of Abbeville*, 871 F. Supp. 2d 1298, 1301 (M.D. Ala. 2012) (Fuller, J.) (internal citation omitted). A court should grant a motion to dismiss "when, on the basis of a dispositive issue of law, no construction

of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Ed. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

Rule 8(a)(2) generally sets the benchmark for determining whether a complaint's allegations are sufficient to survive a Rule 12(b)(6) motion. *Lewis v. State Farm Fire and Casualty Co.*, 2011 U.S. Dist. LEXIS 47443 at *15 (S.D. Ala. Apr. 13, 2011). Dismissal is appropriate when a plaintiff fails to comply with some minimal pleading standards. In *Twombly*, the Supreme Court held that, although Rule 8 does not require detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." 550 U.S. 544, 555 (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id. See also Iqbal*, 556 U.S. 662, 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). So, although a claim need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," the plaintiff must still allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Allegations that merely leave

"open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery" are insufficient. *Twombly*, 550 U.S. at 561.

## FACTS

The Plaintiffs have presented broad, sweeping allegations with little factual support against the Employer Defendants, including Gemstone. Plaintiffs allege that the Employer Defendants contract with ADOC and pad profits "by sometimes setting and paying wage rates to those incarcerated workers below the rates required by law" and requiring the employees to work long hours in unsafe conditions with the "understanding" that these inmates laborers "cannot refuse to work or raise concerns about workplace conditions without risking significant discipline and return to more violent and life-threatening facilities."[1]

Plaintiffs contend that ADOC regulations require the inmates to comply with their work assignment, and if they fail to work or encourage a work-stoppage, these inmates are subject to disciplinary actions, including being placed in "higher-security ultra-violent facilities that are currently the subject of the DOJ's Civil Rights of Institutionalized Persons Act ("CRIPA") enforcement action challenging the ADOC facilities' pervasive and systemic cruel and inhumane conditions."[2]

---

[1] Doc. 1 at ¶ 12.
[2] Doc. 1 at ¶ 15. (citing Complaint, *United States v. State of Alabama*, Case No. 2:20-cv-01971-JHE (N.D. Ala. Dec. 9, 2020); Doc. 1 at ¶¶ 25, 45; Complaint at Par. 46-50 (addressing Governor Ivey's Executive Order).

According to Plaintiffs, because the prison conditions are so dangerous and life-threatening, the inmates are coerced to work for the Employers Defendants to avoid being in prison, and if they stop working, they will be disciplined and subject to solitary confinement in prison or other punishments.[3]  Plaintiffs allege that by participating in the work release program, the private employers are acting with the "common purpose of extracting profit through a pattern of daily forced labor on incarcerated Alabamians."[4]

In an attempt to establish knowledge as required by the Plaintiffs' claims, Plaintiffs cite newspaper articles and a DOJ Complaint.  Based on this general information, Plaintiffs plead that the Employer Defendants know or should know that the inmates are being forced to work because "[t]he exceptionally violent conditions in ADOC's medium-and maximum-security facilities that coerce incarcerated people to accept work release and work-center jobs away from those facilities are a matter of broad public knowledge…"[5] Plaintiffs further allege that "[t]he private and public employer Defendants also knew or should have known that Chair Gwathney and the other Parole Board members were conspiring with Governor Ivey and Attorney General Marshall to discriminatorily deny parole."[6]

---

[3]  Doc. 1 at ¶¶ 25, 45.
[4]  Doc. 1 at ¶¶ 134, 138, 139.
[5]  Doc. 1 at ¶ 140 (citing news articles covering DOJ Complaint against Alabama).
[6]  Doc. 1 at ¶ 142 (citing news articles addressing racial disparities on parole releases).

As to Gemstone, specifically, the Complaint alleges that Plaintiff Cole worked for Gemstone from November 2016 to February 2017 and "knowingly benefits, financially and otherwise, from its exploitation of this coerced workforce: incarcerated persons are forced to perform difficult and dangerous poultry processing work and engage in other coerced labor to benefit the company."[7] The Complaint later inconsistently alleges that Gemstone did not contract with ADOC until at least as far back as 2018.

RWDSU, an organizational plaintiff, alleges that Defendants' scheme to coerce labor has harmed RWDSU because the scheme interferes with RWDSU's ability to organize and represent workers in the poultry industry and undermines RWDSU's ability to improve wages and working conditions.[8] RWDSU alleges that it "has committed resources … to represent workers at Gemstone Foods' Decatur poultry processing plant… [but] [t]he employment of incarcerated workers by poultry plant workers undermines RWDSU's ability to improve the wages and working conditions of poultry plant workers…"[9]

The Woods Foundation, an organizational Plaintiff, contends it "aid[s] persons with wrongful convictions and excessive sentences, particularly in Alabama."[10] The Woods Foundation alleges that its ability to fulfill that mission

---

[7] Doc. 1 at ¶ 169.
[8] Doc. 1 at ¶ 155.
[9] Doc 1 at ¶ 155.
[10] Doc. 1 at ¶ 157.

has been "frustrated" by the supposedly discriminatory "practices of the Parole Board and the scheme alleged herein to undermine Alabama's parole system" and that it "has had to devote increased resources, including money and staff time, towards addressing the unfair and unlawful functioning of the parole system."[11]

USSW, an organizational Plaintiff, alleges employment of incarcerated workers undermines its ability to improve working conditions and depresses wages and working conditions.[12]

## ARGUMENT

### I.    The Complaint is an impermissible shotgun pleading.

Plaintiffs broadly allege without distinguishing between the multiple Employer Defendants on all claims.  For the TVAP claim, for instance, Plaintiffs incorporate by reference 143 paragraphs allegedly establishing a TVPA claim:

> Employer Defendants knowingly benefitted, financially and otherwise, from participation in ADOC's work release and work-center programs, knowing or in reckless disregard of the fact that their lucrative joint venture with ADOC has engaged in the providing or obtaining of labor or services from Plaintiffs and the Forced Labor Class by each of the unlawful means alleged in paragraph 1 through 143 above.[13]

For each claim, the Defendants lump the Defendants together and incorporate by reference prior paragraphs. This is an impermissible shotgun pleading and should

---

[11] Doc. 1 at ¶ 157.
[12] Doc. 1 at ¶ 156.
[13] Doc. 1 at ¶ 210.

be dismissed. *See Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018); *Cook v. Randolph Cty.*, 573 F.3d 1143, 1151 (11th Cir. 2009); *Davis v. Infinity Ins. Co.*, 2016 WL 4507122, at *20 (N.D. Ala. Aug. 29, 2016); *Zuanich v. Hankook Tire Am. Corp.*, 2018 WL 6709466, at *4 (M.D. Ala. Dec. 20, 2018).

## II.    RWDSU, USSW, and the Woods Foundation have no standing.

The organizational Plaintiffs have no standing. "An organizational plaintiff may establish standing in one of two ways. First, an organization's 'diversion-of-resources' injury is sufficient to confer standing under this theory." *Greater Birmingham Ministries v. Merrill*, 250 F. Supp. 3d 1238, 1242 (N.D. Ala. 2017) (citing *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1341 (11th Cir. 2014)).

"Second, an organization may enjoy standing as the representative of its members 'when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.' " *Merrill*, 250 F. Supp. 3d at 1242 (citing *Arcia*, 772 F.3d at 1341 (11th Cir. 2014) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181, 120 S.Ct. 693, 145 L. Ed. 2d 610 (2000))).

RWDSU asserts violations of the TVPA, Civil RICO, the Alabama Constitution, and the KKK Conspiracy Act against Gemstone and alleges that Defendants' scheme with ADOC to coerce labor has harmed RWDSU because the

scheme interferes with RWDSU's ability to organize and represent workers in the poultry industry and undermines RWDSU's ability to improve wages and working conditions.[14]   RWDSU alleges that it "has committed resources … to represent workers at Gemstone Foods' Decatur poultry processing plant… [and] [t]he employment of incarcerated workers by poultry plant workers undermines RWDSU's ability to improve the wages and working conditions of poultry plant workers…"[15]

RWDSU has failed to plausibly plead standing based on a diversion of resources injury. "To show a concrete injury, the organization must identify the specific activities from which it diverted or is diverting resources. *Fair Fight Action, Inc. v. Raffensperger*, 634 F. Supp. 3d 1128, 1178 (N.D. Ga. 2022) (citing *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1250 (11th Cir. 2020); *Ga. Ass'n of Latino Elected Offs., Inc.*, 36 F. 4th at 1114 (an organization establishes diversion-of -resources standing by showing what it would have to divert resources away from to address the effects of the defendant's alleged conduct))).   RWDSU simply alleges the ADOC's program undermines its mission.   RWDSU fails to plead factual support to show that RWDSU's mission would have been advanced without the existence of the ADOC work release program and Gemstone's

---

[14] Doc. 1 at ¶ 155.
[15] Doc. 1 at ¶ 155.

involvement. It has not identified the specific activities from which it diverted or is diverting resources. *See Raffensperger*, 634 F. Supp. 3d at 1178.

The Woods Foundation has sued Gemstone for violation of the KKK Conspiracy Act and the Alabama Constitution. The Woods Foundation alleges that "aid[s] persons with wrongful convictions and excessive sentences, particularly in Alabama."[16] The Woods Foundation alleges that its ability to fulfill that mission has been "frustrated" by the supposedly discriminatory "practices of the Parole Board and the scheme alleged herein to undermine Alabama's parole system" and that it "has had to devote increased resources, including money and staff time, towards addressing the unfair and unlawful functioning of the parole system." The Woods Foundation's conclusory allegations fail to assert a concrete injury through diversion of resources. There is no allegation that Gemstone caused the diversion of resources and no allegation that resources have been diverted because of Gemstone's actions.

USSW asserts violations of the TVPA, RICO, Alabama Constitution, and the KKK Conspiracy Act against Gemstone. USSW alleges employment of incarcerated workers undermines its ability to improve working conditions and depresses wages and working conditions. USSW also fails to assert a concrete injury through diversion of resources.

---

[16] Doc. 1 at ¶ 157.

Finally, these Plaintiffs have failed to plead associational standing through its members as the Complaint does not allege that any of its members have been injured. "To establish associational standing, an organization must prove that its members 'would otherwise have standing to sue in their own right.' " *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1249 (11th Cir. 2020) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000)).

The Court should dismiss all claims brought by the organizational Plaintiffs as they have no standing.

## III.    The Plaintiffs have failed to state a claim under the TVPA.

No matter how construed, Plaintiff's Complaint fails to make any allegation that plausibly satisfies that Gemstone had actual or constructive knowledge that Plaintiffs' labor was obtained through unlawful means or that Gemstone knowingly benefitted from a common undertaking involving risk and profit.

The Plaintiffs assert beneficiary liability against Gemstone and the other Employer Defendants under Section 1589 based on their alleged knowingly benefitting or receiving anything of value from participation in the ADOC work release and work-center program. Section 1589(b) provides: "(b) Whoever knowingly benefits, financially or by receiving anything of value, from

participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a)..." 18 U.S.C. § 1589.

Plaintiffs have brought a "beneficiary" claim against Gemstone under Section 1595 based on Gemstone's alleged benefitting from coercion prohibited by Section 1589. To state a beneficiary claim under Section 1589, Plaintiffs must plausibly allege that Gemstone (1) knowingly benefited (2) from participation in a common undertaking involving risk and profit (3) that violated the TVPRA as to the plaintiff, and (4) that Gemstone had constructive or actual knowledge of the violation as to the Plaintiff. *Doe #1 Red Roof Inns, Inc.*, 21 F.4th 714, 719 (11th Cir. 2021).

Plaintiffs have failed to plausibly plead facts sufficient to show that Gemstone had actual or constructive knowledge that ADOC was using "force, threats of force, physical restraint, or threats of physical restraint" or was using "serious harm or threats of serious harm" to coerce inmates to work. *See* Section 1589(a). The ADOC regulations do not require inmates to participate in the work-release program. *See Ex parte Alabama Dep't of Corr.*, 74 So. 3d 25, 27 (Ala. 2011) ("Inmates who are qualified to take part in the program have the option of whether to participate."). Plaintiffs have pleaded no facts that Gemstone had actual or constructive knowledge that ADOC forced inmates to participate in the work-release program itself.

Rather, Plaintiffs contend that the heinous conditions in the Alabama prisons caused the inmates to participate in the work-release program so that they could escape the prison violence, including taking an undesirable work assignment at Gemstone Foods, LLC, a poultry processing plant:

> The exceptionally violent conditions in ADOC's medium-and maximum-security facilities that coerce incarcerated people to accept work release and work-center jobs away from those facilities are a matter of broad public knowledge and Alabama employers who contract with ADOC to provide incarcerated workers know or should know of these conditions.[17]

This allegation is wholly conclusory, failing to support a plausible TVPA claim under *Iqbal* and *Twombly* as to the knowledge elements. First, it is wholly conclusory to opine that the sole reason an inmate would seek work release is to avoid the violent conditions of prison, as opposed to prison itself or to receive good time credits or to prepare him or herself for life after prison. It is further unreasonable to infer that because a newspaper article has been written discussing violence in the prisons that the Employer Defendants, including Gemstone, knew or should have known that the inmates in the work release program had been coerced to participate in the program. The articles and DOJ Complaint do not state that the inmates are being coerced to work. "[G]eneral knowledge" is insufficient. *See S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020) (holding that "abstract awareness" fails to meet the requirements of the TVPRA).

---

[17] Doc. 1 at ¶ 140 (citing news articles covering DOJ Complaint against Ala).

Here there is no awareness of compulsion to work through the media. The Plaintiffs allege that Defendants should have inferred that the Plaintiffs were being forced to work, but this inference is unreasonable and speculative.

Plaintiff also feebly attempts to create the inference of knowledge on Gemstone's behalf through the alleged dangerous conditions of working at a poultry plant.  According to the Plaintiffs, no reasonable person would work at Gemstone unless he or she was being coerced. The Complaint, however, fails to plausibly allege that the working conditions at Gemstone were intolerable. Plaintiff's Complaint asserts,

> Mr. Cole has worked … at Defendant Gemstone Food, where he worked long shifts sometimes past midnight, and sometimes six days a week…[18]

> Gemstone Foods knowingly benefits, financially and otherwise, from its exploitation of this coerced workforce: incarcerated persons are forced to perform difficult and dangerous poultry processing work and engage in other coerced labor to benefit the company.[19]

Hard working people in the United States work night shifts and oftentimes have to work six days per week to meet production demands.  Baldly claiming these conditions make the employment "involuntary" is insufficient and fails to support a reasonable inference that Gemstone knew or should have known that the inmates were being forced to work there, alongside free laborers.

---

[18] Doc. 1 at ¶ 148.
[19] Doc. 1 at ¶ 169.

Plaintiffs further allege that Gemstone Foods, LLC, knew of a conspiracy between Chair Gwathney and Alabama's Governor and Attorney General: "The private and public employer Defendants also knew or should have known that Chair Gwathney and the other Parole Board members were conspiring with Governor Ivey and Attorney General Marshall to discriminatorily deny parole."[20] This is likewise a wholly conclusory allegation and fails to plausibly allege that Gemstone was aware of an intra-government conspiracy seeking to keep prisoners in jail. The nature of Plaintiff's allegations are simply too thin to support a reasonable inference, even when viewed in the light most favorable to the Complaint.

Citing Governor Ivey's Executive Order, Plaintiffs have further failed to plead facts sufficient to show that Gemstone knew or should have known that ADOC was using "the abuse or threatened abuse of law or legal process" or "any scheme, plan, or pattern" to coerce labor. The ADOC regulations and the Governor's Executive Order set forth the legal process by which prisoners in the custody of ADOC will be maintained. Claiming that Gemstone should know that these regulations and statutes are unlawful, leading to involuntary servitude, is wholly conclusory and speculative. *See Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 918 ("[P]laintiffs must prove that an unlawful means of coercion caused them to

---

[20] Doc. 1 at ¶ 142.

render labor."). Alabama statutes provide ADOC with the authority to make regulations to operate the prisons, including the 40% take from the prisoner's pay and discipline for causing a work stoppage.[21] These regulations existed years before ADOC contracted with Gemstone in 2018.

Next, the RWDSU, USSW, and the Woods Foundations's claims under Section 1589(b) should be dismissed as they are based on the conclusory allegations supporting the inmate Plaintiffs' TVPA claim. In addition, the TVPA covers "[a]n individual who is a victim of a violation of this chapter" who seeks to "recover damages and reasonable attorney's fees." 18 U.S.C. § 1595(a). "Looking at the plain language of the statute, it does not explicitly list a union representative as a party that can seek a civil remedy for violations of the TVPA." *New York State Nurses Ass'n v. Albany Med. Ctr.*, 473 F. Supp. 3d 63, 71–72 (N.D.N.Y. 2020) (dismissing complaint brought by union under TVPA because the plain language of the statute only permitted individual victims to civilly enforce the TVPA). Thus, the organizational Plaintiffs are not proper Plaintiffs under the statute.

Finally, the TVPA violates the 10th Amendment of the United States Constitution and the states' authority to define and enforce criminal law, as applied. *See United States v. Lopez*, 514 U.S. 549, 561 (1995).

---

[21] Doc. 1 at ¶15 (citing ADOC Admin Reg. 410).

This Court should dismiss the TVPA claim against Gemstone with prejudice for failure to state a claim for which relief may be granted as to all Plaintiffs.

## IV.    Plaintiffs have failed to state a claim against Gemstone under Civil RICO (Count II).

Section 1962(c), the provision relied upon by Plaintiffs here, states as follows:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.

18 U.S.C. § 1962 (emphasis added). To state a claim under Section 1962(c), Plaintiff must allege with plausibility that Gemstone "(1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two predicate acts of racketeering, which (5) caused (6) injury to the business or property of the plaintiff(s). *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020 (citing *Ray v. Sprint Airlines, Inc.*, 836 F.3d 1340, 1348 (11th Cir. 2016)).

First, the statute of limitations bars the RICO claim. The Complaint states that Gemstone contracted with ADOC in 2018 and that Plaintiff Cole worked for Gemstone in 2016-2017. The four-year statute of limitations for a RICO claim begins to run on the date the Plaintiffs discovered or should have discovered the purported racketeering. *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 117 S. Ct. 1984

(1997).  Because Plaintiffs' Complaint alleges violations of 18 U.S.C. § 1962 as far back as 2016, Plaintiffs' Rico claim is barred by the statute of limitations.

Second, because the Plaintiffs' TVPA claim fails for the reasons set forth above, Plaintiff's RICO claim also fails to state a claim, including the absence of a predicate act of racketeering.  *See Am. United Life Ins. Co., v. Martinez*, 480 F.3d 1043, 1068 (11th Cir. 2007.

Third, to plausibly allege that Gemstone was "associated with any enterprise" under 18 U.S.C. Section 1962(c), the Plaintiffs must allege three structural features with a group of persons, including (1) purpose, (2) relationship, and (3) longevity. *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211-12 (11th Cir. 2020).  "An abstract common purpose, such as a generally shared interest in making money, will not suffice." *Id*.  If the "ultimate purpose" is to make money, the Plaintiff must plausibly allege "that the participants shared the purpose of enriching themselves through a particular criminal course of conduct." *Id*. "A separate purpose or objective that does not involve illegal conduct will not do." *See, e.g.*, *Moss v. BMO Harris Bank, N.A.*, 258 F. Supp. 3d 289, 299 (E.D.N.Y. 2017) ("[F]ailing to allege that members of an association-in-fact enterprise shared a wrongful intent to violate RICO is fatal to an 18 U.S.C. § 1962(c) claim.") (citing *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 121 (2d Cir. 2013)).

Plaintiffs have not plausibly alleged that Gemstone made any profit from its participation in ADOC's work release program. The controlling statutes and regulations require Gemstone to pay the inmates a fair wage, and as set forth above, the Complaint fails to plausibly allege that Gemstone knew or should have known that the inmates were even being forced to work, as opposed to believing that it was simply operating with a state sanctioned work release program that allowed inmates the benefit of working while still in state custody. Plaintiffs have not and cannot allege that Gemstone participated in the work program with the common purpose of forcing inmates to labor in the work release program.

For these same reasons, Plaintiffs have failed to allege facts to plausibly allege that Gemstone conducted or participated in the enterprise under Section 1962(c). RICO liability only attaches to a defendant who "conduct[s] or participate[s] . . . in the conduct of [the] enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). The Supreme Court has held that "participate," as used in RICO, has a narrower meaning than "aid and abet," because the verb "conduct" means "to lead, run, manage, or direct" the enterprise's affairs. *Reves v. Ernst & Young*, 507 U.S. 170, 178, 113 S. Ct. 1163, 1169, 122 L. Ed. 2d 525 (1993). Here, Plaintiffs' allegations fail to even plausibly allege that the Defendants aided and abetted the alleged criminal enterprise. This runs afoul of *Reves*.

To participate in conducting the affairs of a RICO enterprise "one must have some part in directing those affairs," and one cannot incur liability under § 1962(c) without participating, to a substantial degree, in the "operation or management of the enterprise itself." Id. at 185. There is nothing in the complaint to suggest that Gemstone had any control over any of the alleged RICO persons and entities other than itself. *Stone v. Kirk*, 8 F.3d 1079, 1092 (6th Cir. 1993) (holding individual defendant could not be liable under RICO because he did not operate or manage the enterprise's affairs); *In re Mastercard Int'l Inc.*, 132 F. Supp. 2d 468, 487 (E.D. La. 2001), *aff'd*, 313 F.3d 257 (5th Cir. 2002);

At most, Plaintiffs have alleged that Gemstone contracted with ADOC to employ inmates for hourly wages. All other allegations are wholly conclusory and fail to establish that Gemstone was associated with an enterprise or operated/ managed a criminal enterprise.

## V.    Plaintiffs have failed to state a claim against Gemstone for violation of Alabama's Constitution (Count III).

Plaintiffs cannot bring constitutional claim against Gemstone Foods, LLC, a private corporation for monetary damages. *See Williams v. Town of Morris*, 2019 WL 2058716, at *4 (N.D. Ala. May 9, 2019).

Until January 1, 2023, the former version of Section 32 specifically exempted criminal punishments from the ban on involuntary servitude. Ala Const.

art. I sec. 32 (Constitution of 1901). The Complaint alleges that Plaintiffs are convicted criminals, so any alleged claims for "forced labor" would not have been in violation of the Alabama Constitution before January 1, 2023. And the Plaintiffs fail to allege that any specific employee worked for Gemstone, except for Mr. Cole from 2016-2017.[22]

In addition, Plaintiff's have failed to plausibly plead that Gemstone subjected inmates to involuntary servitude. Involuntary servitude is defined as "an action by the master causing the servant to have, or to believe he has, no way to avoid continued service or confinement." *Watson v. Graves*, 909 F.2d 1549, 1552 (5th Cir. 1990) (citing *United States v. Shackney,* 333 F.2d 475, 486 (2d Cir. 1964)). Gemstone did not detain the inmates who at all times remained in the custody of ADOC. "When the employee has a choice, even though it is a painful one, there is no involuntary servitude." *Id*. (citing *Shackney* at 487). "'A showing of compulsion is thus a prerequisite to proof of involuntary servitude.'" *Id*. (citing *Flood v. Kuhn,* 316 F. Supp. 271, 281 (D.C.N.Y. 1970), *aff'd,* 443 F.2d 264 (2d Cir.1971), *aff'd on other grds.,* 407 U.S. 258, 92 S.Ct. 2099, 32 L. Ed. 2d 728 (1972)). There is no allegation that Gemstone subjected any inmate to involuntary servitude or made threats to any inmate. Even if the decision to work was "painful," the inmates made

---

[22] Doc. 1 at ¶ 169.

the choice to participate in the work-release program, and Gemstone has no control over the running of Alabama prisons and their alleged dangerous environment.

Plaintiffs' claims under the Alabama Constitution are due to be dismissed.

## VI. Plaintiffs fail to state a claim for violation of the KKK Act Conspiracy Claim.

First, this claim is barred by limitations. The law explicitly states, "But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued." 42 U.S.C. §1986. Plaintiffs' Complaint alleges violations of 42 U.S.C. §1986 as far back as 2018 and as to Plaintiff Cole, November 2016 to February 2017, at Gemstone.[23]

Next, under Section 42 U.S.C. Section 1986, Plaintiffs must plausibly allege that Gemstone had actual knowledge of a Section 1985 conspiracy, had the power to prevent or aid in preventing those wrongs, and neglected or failed to do so. *See* 42 U.S.C. Section 1986. As stated above, the Plaintiffs have failed to allege that Gemstone had knowledge of a forced labor scheme, much less a conspiracy to engage in "racially discriminatory denials of parole" as part of the forced labor scheme. The allegations of knowledge are conclusory and based on conjecture.

Finally, Plaintiffs have not alleged that Gemstone had "power to prevent or aid in preventing the commission of" such wrongful acts. While Plaintiffs allege generally that Gemstone could have withdrawn from its contract under the work

---

[23] Doc. 1 at ¶ 169.

release program, the Plaintiffs do not plead that Gemstone's withdrawal would have prevented or aided in the prevention of the alleged conspiracy. The KKK conspiracy claim fails for this reason as well.

## VII.    Plaintiffs have failed to state a claim for unjust enrichment.

"To prevail on a claim of unjust enrichment under Alabama law, a plaintiff must show that: (1) the defendant knowingly accepted and retained a benefit, (2) provided by another, (3) who has a reasonable expectation of compensation." *Bartlett v. Preston*, 2013 WL 6531030, at *11 (N.D. Ala. 2013) (citing *Metador Holdings, Inc. v. HoPo Realty Invs., LLC*, 77 So. 3d 139, 145–46 (Ala. 2011)). "In the absence of mistake or misreliance by the donor or wrongful conduct by the recipient, the recipient may have been enriched, but he is not deemed to have been unjustly enriched." *Id*. Defendants plead no subsidiary facts to support the elements of unjust enrichment.

The Complaint fails to allege that Gemstone did not pay fair wages to any Plaintiff, including Mr. Cole - the only employee alleged to have worked for Gemstone in 2016-2017. The Complaint thus fails to allege that Gemstone has been unjustly enriched or that the Plaintiffs had a reasonable expectation of receiving compensation from Gemstone, as prisoners in the custody of ADOC.

In addition, to the extent the Plaintiffs allege that the ADOC took 40% of the Plaintiffs' wages, Gemstone has not been unjustly enriched. If anybody was unjustly enriched, it was ADOC, not Gemstone.

Gemstone further incorporates by reference additional arguments raised by the other Defendants to this action as a basis for dismissal of the claims asserted by Plaintiff.

## CONCLUSION

For the reasons stated above, the claims asserted against Gemstone should be dismissed with prejudice.

Respectfully submitted, this the 3rd day of May, 2024.

*/s/ Michael A. Heilman*

Michael A. Heilman
RCF, LLC D/B/A GEMSTONE FOODS, LLC

OF COUNSEL:
Michael A. Heilman (admitted *pro hac vice*)
Heilman Nisbett Polk, P. A.
Meadowbrook Office Park
4266 I-55 North, Suite 106
Jackson, Mississippi 39211
Telephone: (601) 914.1025
Facsimile: (601) 944-2915
mheilman@hnplawyers.com

## **CERTIFICATE OF SERVICE**

I certify that I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification to all counsel of record.

This the 3rd day of May, 2024.

*/s/ Michael A. Heilman*

Michael A. Heilman